## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

New Hampshire Youth Movement,

    *Plaintiff*,

v.

David M. Scanlan, in his official capacity as New Hampshire Secretary of State,

    *Defendant*.

Case No. 1:24-cv-00291-SE-TSM

### PLAINTIFF'S OPPOSITION TO REPUBLICAN NATIONAL COMMITTEE AND NEW HAMPSHIRE REPUBLICAN STATE COMMITTEE'S MOTION TO INTERVENE

The Court should deny the Motion to Intervene as Defendants filed by the Republican National Committee ("RNC") and the New Hampshire Republican State Committee ("NHRSC"). ECF No. 15 ("Motion" or "Mot."); ECF No. 15-1 ("Mem.").

### INTRODUCTION

This is a constitutional challenge to H.B. 1569, which will make it more difficult for many entirely eligible and lawful New Hampshire voters to register to vote by requiring all new registrants to provide documentary proof of citizenship when registering, with no exceptions. Under prior law, including that which applied in the November 2024 election held just a few weeks ago, voters who lacked such proof or did not have it with them could swear an affidavit attesting to their citizenship. Under H.B. 1569, those voters will now be entirely unable to vote. The New Hampshire General Court passed H.B. 1569 even though there is no evidence that any ineligible voters have ever used a citizenship affidavit to falsely affirm their citizenship and vote—evidence that would exist if such votes were being cast, as the names of voters affirming their citizenship are available to state officials. The New Hampshire Youth Movement promptly filed this action

on behalf of itself and its members and constituents whose voting rights are threatened by H.B. 1569. They seek an order declaring that the documentary proof of citizenship requirement violates the First and Fourteenth Amendments to the U.S. Constitution and enjoining its enforcement.

The RNC and NHRSC ("Proposed Intervenors") now seek to intervene as defendants to join the state's defense, but their motion is deficient in nearly every sense. As to their application to intervene as a matter of right under Federal Rule of Civil Procedure 24(a), Proposed Intervenors do not identify any specific legally protectible interest that may be impaired by the disposition of this case. They assert only a generalized interest in *all* New Hampshire election procedures, and say nothing about their interest in the elimination of the citizenship affidavit specifically—the sole subject of this case. And while Proposed Intervenors acknowledge that they must overcome a strong presumption that the Secretary of State adequately represents their interests, they make no showing that he does not in this case.

For each of these reasons, Proposed Intervenors' motion to intervene as a matter of right under Rule 24(a) should be denied. And because Proposed Intervenors have further failed to show that their participation will meaningfully benefit the litigation and will not delay its prompt resolution, the Court should exercise its discretion to deny their request for permissive intervention under Rule 24(b).

**BACKGROUND**

Voters are eligible to vote in New Hampshire elections if they are (a) 18 years of age, (b) domiciled in the town or city where the individual is registering, and (c) a citizen of the United States. *See* RSA 654:7, I. Voters must register before they vote, but they may register at the polling place on election day. *See* Act of May 23, 1994, Ch. 154:1, I, 1994 N.H. Laws (HB 1506). First-

time voters routinely access the franchise this way, with thousands registering to vote on election day in every election.[1]

Under New Hampshire law before H.B. 1569, voters seeking to register could prove their citizenship either by showing documentary proof of citizenship or by signing a qualified voter affidavit attesting under oath that they are a U.S. citizen. Act of July 18, 2003, Ch. 289, 2003 N.H. Laws (HB 627); *see also* Act of July 29, 2009, Ch. 278, 2009 N.H. Laws (HB 265). In recent elections, many New Hampshire voters relied on such affidavits to prove their citizenship, and there is no evidence that the system served as a vector for fraud. Just before the recent November 5th election, Secretary Scanlan reiterated that voters "should be confident that the voters on the checklist are United States citizens."[2] And, indeed, Plaintiffs are not aware of any evidence to the contrary.

Despite this successful track record, a deeply divided General Court passed H.B. 1569 on May 23, 2024. The bill revised the state's voter qualification statute by eliminating the ability to use a qualified voter affidavit to meet the citizenship requirement, instead requiring all first-time registrants to produce a birth certificate, passport, naturalization papers, or other documentation deemed "reasonable" by an election official. RSA 659:12, I(a). As a result, qualified voters who are unable to produce compliant citizenship documents at the time of registration will now be entirely prevented from voting under H.B. 1569.

---

[1] *See, e.g.*, Margie Cullen, *Voter Scrutiny in Durham Doesn't Change Consensus: NH Elections Are Secure*, Portsmouth Herald (Nov. 1, 2024), https://www.seacoastonline.com/story/news/politics/elections/2024/11/01/durham-voter-information-nh-elections-secure/75915374007/ (reporting that, in Durham alone, 3,000 residents typically register on election day in presidential election years, driven largely by college-student registration).

[2] Cullen, *supra* n.1.

After Governor Sununu expressed doubt about the necessity of H.B. 1569, legislative leaders waited nearly four months to finalize the enrolled bill, ensuring that the legislation would not take effect until after the November 5th general election if the Governor signed it into law. Governor Sununu ultimately signed H.B. 1569 on September 12, 2024, and the law went into effect 60 days later on November 11, 2024.

The Youth Movement filed its Complaint on September 17, five days after the Governor signed the bill into law. *See* ECF No. 1. The Youth Movement asserts that H.B. 1569's documentary proof of citizenship requirement violates the First and Fourteenth Amendments of the U.S. Constitution, and seeks an order declaring it unconstitutional and enjoining its enforcement. *See generally id.* On November 19, Proposed Intervenors filed their Motion, in which they claim they are entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a) and alternatively request permissive intervention under Rule 24(b). ECF Nos. 15, 15-1

## LEGAL STANDARD

To intervene as a matter of right under Federal Rule of Civil Procedure 24(a), the movant bears the burden of showing each of the following: (1) its application is timely; (2) it has a cognizable interest relating to the property or transaction that is the subject of the action; (3) it is so situated that disposition of the action, as a practical matter, may impede or impair its ability to protect that interest; and (4) its interests are inadequately represented by the existing parties to the suit. *Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011). An applicant for intervention as of right "must run the table and fulfill all four of these preconditions." *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998). Failure to satisfy any one of them "dooms intervention." *Id.*

Under Rule 24(b), a district court has broad discretion to deny or allow the intervention of a party who "has a claim or defense that shares with the main action a common question of law or

fact." Fed. R. Civ. P. 24(b)(1)(B); *see, e.g.*, *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 42 (1st Cir. 2020).

## ARGUMENT

**I.     Proposed Intervenors are not entitled to intervene as a matter of right.**

Proposed Intervenors have failed to satisfy their burden to show that they are entitled to intervene as of right under Rule 24(a). They claim general interests in (1) accurate voting procedures, (2) integrity of election procedures, (3) complying with the rules that govern elections, and (4) safeguarding their resources, but their Motion does not differentiate their interests in the disposition of *this case* from the interests of any other participant in New Hampshire's elections. *See* Mem. 6–8. Proposed Intervenors further fail to explain how the specific relief sought by the Youth Movement threatens to impair those asserted interests, relying instead on unsupported assumptions that this Court should not credit. *See id.* at 9–10. Proposed Intervenors have likewise failed to rebut the strong presumption that the Secretary adequately represents their interests in this matter. *See id.* at 10–12. Each of these failures is alone sufficient to defeat their effort to intervene as a matter of right under Rule 24(a).

> **a.   Proposed Intervenors fail to identify any legally protectable interest that would entitle them to intervention.**

An aspiring intervenor-by-right must demonstrate that their asserted interests in the outcome of the litigation are "direct" and "significantly protectable." *Ungar*, 634 F.3d at 51 (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). The First Circuit, unlike some other federal courts of appeals, has rejected an "expansive notion of the interest" test and instead requires courts to reject asserted "interests that are 'speculative, indirect, or contingent.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 308 F.R.D. 39, 49 (D. Mass.) (quoting *Conservation Law Found. of N.E. v. Mosbacher*, 966 F.2d 39, 42 (1st Cir. 1992)), *aff'd*,

807 F.3d 472 (1st Cir. 2015). Under this rubric, courts in this Circuit must refuse to grant intervention where proposed intervenors' asserted interests "in the outcome of [the] action" are "generalized" or "operate at too high a level of generality." *Patch*, 136 F.3d at 205 (cleaned up).[3] That is the case here.

Proposed Intervenors claim that they are interested in "accurate voting procedures," maintaining the "integrity of the election process," and "rules that govern the elections in which they participate," Mem. at 6–7, but each of these interests belongs to anyone who participates in the state's elections. As a result, even setting aside their speculative concerns regarding their "predicted impact of this case," *Canadian Nat. Ry. Co.*, 272 F.R.D. at 46; *see infra* § I.b, their interests fail at the outset because "undifferentiated generalized" interests simply cannot support intervention as a matter of right under Rule 24(a) in this Circuit, *Canadian Nat. Ry. Co.*, 272 F.R.D. at 46 (quoting *Walgreen Co. v. Feliciano de Melecio*, 194 F.R.D. 23, 26 (D.P.R. 2000)); *see also Mass. Food Ass'n*, 184 F.R.D. at 221 (similar).

While Proposed Intervenors assert that "[e]lection rules affect political parties most of all," Mem. at 7, such a sweeping assertion—without more—does not demonstrate a direct interest in the disposition of *this* case. In arguing to the contrary, Proposed Intervenors rely heavily on the Fifth Circuit's decision in *La Union del Pueblo Entero v. Abbott* ("*LUPE*"). Mem. at 6 (citing 29 F.4th 299, 306 (5th Cir. 2022)). But even assuming the First Circuit followed the Fifth Circuit's rubric in assessing asserted interests under Rule 24(a), which it does not, that case is inapposite. There, the Fifth Circuit held that Republican committees' expenditures on a poll watcher program

---

[3] *See also, e.g.*, *Mass. Food Ass'n v. Sullivan*, 184 F.R.D. 217, 221 (D. Mass.), *aff'd sub nom. Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560 (1st Cir. 1999); *Canadian Nat. Ry. Co. v. Montreal, Me. & Atl. Ry., Inc.*, 272 F.R.D. 44, 46 (D. Me. 2010).

sufficed to confer a cognizable interest for purposes of intervention in a lawsuit challenging a Texas law, S.B. 1, which had enhanced the role of partisan poll watchers in the state's elections. *See LUPE*, 29 F.4th at 305. In other words, the court's decision turned on the Republican committees' showing that they invested in programs that were specifically governed by the laws challenged in that case. *See id.* at 305–06. In contrast, Proposed Intervenors have not even attempted to draw such a direct connection between their interests in complying with New Hampshire's "election rules" and "election integrity" generally and the specific documentary proof of citizenship provision challenged in this case. *See* Mem. at 6–8.

To be sure, in their fourth asserted interest, Proposed Intervenors aver that they "expend significant resources' on the election process—a process that the challenged laws 'unquestionably regulate.'" Mem. at 8 (quoting *LUPE*, 29 F.4th at 305). But the assertion that a party (political or otherwise) spends money on the "election process" generally does not create a cognizable interest in the operation of every aspect of the election system, and *LUPE* does not hold or even suggest otherwise. *See* 29 F.4th at 305–06. Stated differently, Proposed Intervenors' "theory of economic interest [in this case] operates at too high a level of generality." *Patch*, 136 F.3d at 205. Indeed, under the Proposed Intervenors' reasoning, any entity that spends resources on any aspect of the election process would possess a direct interest in any action challenging any aspect of the state's election system.

Nor does *Issa v. Newsom*, an unpublished decision from the Eastern District of California, help the Proposed Intervenors on this point. *See* Mem. at 8. In that case, the district court concluded that proposed-intervenor party committees had demonstrated an interest in preserving existing "efforts to promote the franchise and ensure the election" of their candidates in the middle of the COVID-19 pandemic that involved helping voters use mail voting procedures—efforts the relief

sought in that case threatened to "disrupt." *Issa v. Newsom*, No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (plaintiffs sought invalidation of an executive order requiring use of all-mail elections). Much like in *LUPE*, then, the proposed intervenors in *Issa* identified interests in specific activities that stood to be undermined or eliminated by the relief requested. *See* 2020 WL 3074351, at *3. Proposed Intervenors fail to do so here. *See* Mem. at 8.

Proposed Intervenors' reliance on *Chiles v. Thornburgh*, where the Eleventh Circuit observed that, "in cases challenging various statutory schemes as unconstitutional . . . the courts have recognized that the interests of those who are governed by those schemes are sufficient to support intervention," is similarly misplaced. 865 F.2d 1197, 1214 (11th Cir. 1989) (quoting 7C C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1908, at 285 (2d ed. 1986)); *see* Mem. at 7. In that case, the proposed intervenors were "detainees . . . confined in the institution whose operation is being challenged," and were therefore directly governed by the laws at issue, which purported to authorize the operation of the institution in question. *Chiles*, 865 F.2d at 1214. Here, while *some* of the Proposed Intervenors' activities might be governed by *some* election laws in New Hampshire, they simply have not explained how the documentary proof of citizenship requirement challenged by Plaintiff governs any of their activities or even affects their asserted interests in any way that is distinguishable from "anyone else involved in" the state's election processes. *Mass. Food Ass'n*, 184 F.R.D. at 221 (citing *Patch*, 136 F.3d at 205–06).

The other out-of-circuit cases involving political-party intervention that Proposed Intervenors cite did not involve a dispute over the impaired interest requirement at all. Specifically, they cite *Citizens United v. Gessler* for the proposition that "usually no one disputes that political parties meet the impaired interest requirement for intervention as of right," Mem. at 7 (quoting No. 14-CV-002266-RBJ, 2014 WL 4549001, at *2 (D. Colo. Sept. 15, 2014)) (cleaned up), and

similarly cite *Ohio Democratic Party v. Blackwell* for the proposition that "where changes in voting procedures could affect candidates running as Republicans and voters who are members of the Republican Party, there is no dispute that the Republican Party has an interest in the subject matter of this case," Mem. at 7–8 (quoting No. 2:04-CV-1055, 2005 WL 8162665, at *2 (S.D. Ohio Aug. 26, 2005)) (cleaned up). While it is true that "[n]o one" *in the circumstances of those cases* disputed that the proposed intervenors met "the impaired interest requirement," the cases say no more on the matter. *Gessler*, 2014 WL 4549001, at *2; *see also Blackwell*, 2005 WL 8162665, at *2. And where, as here, the issue is in dispute and the movants fail to identify direct and significant interests, courts have denied intervention. Indeed, even in circuits that apply less stringent interest tests under Rule 24(a), courts have rejected the kind of "highly generalized" interests in upholding election rules that Proposed Intervenors rely upon as sufficient to support intervention. *E.g.*, *Miracle v. Hobbs*, 333 F.R.D. 151, 155 (D. Ariz. 2019) (denying intervention to Republican legislators).

Because Proposed Intervenors have failed to identify any "direct" and "significantly protectable" interest in the outcome of this litigation, their motion to intervene as a matter of right under Rule 24(a) should be denied.[4]

### b. Proposed Intervenors fail to show that disposition of this action, as a practical matter, may impede or impair their ability to protect their interests.

---

[4] Proposed Intervenors' perfunctory suggestion that, "if Plaintiff has standing to bring this lawsuit, then Movants have an interest in defending against" it, Mem. at 9, also misses the mark. As the Youth Movement's allegations in the Complaint show, the organization has suffered an Article III injury because its mission of uplifting the influence of its members and constituents in their communities and throughout the state is undermined by disenfranchisement and the other significant burdens imposed by the documentary proof of citizenship requirement, and the organization is accordingly being forced to divert its limited resources to combat those and other specific harms. Compl. ¶¶ 14, 16–18. The Youth Movement further represents the interests of those members and constituents who are or will be unable to satisfy the new requirement. *See id.* ¶¶ 15, 18–19. Proposed Intervenors, as explained, have done no more than identify generalized interests in the state's elections that lack any direct connection to the challenged provision.

Because Proposed Intervenors have failed to demonstrate any cognizable interest in this lawsuit, "there can be no impairment of the[ir] ability to protect" them. *Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 252 (D.N.M. 2008); *see also, e.g.*, *Students for Fair Admissions*, 308 F.R.D. at 49 (declining to address impairment prong where aspiring and current students failed to demonstrate interest in outcome of action concerning affirmative action program). Even assuming Proposed Intervenors had substantiated any such interests, however, their Motion fails to demonstrate that this case may impair their ability to protect them. They instead rely on generalized, speculative, and unsupported assumptions about what might happen if Plaintiff succeeds. *See, e.g.*, *Canadian Nat. Ry. Co.*, 272 F.R.D. at 46 (explaining that arguments that rely on assumptions "requir[ing] a series of events, any one of which might not happen" do not satisfy Rule 24(a)'s impairment of interest requirement).

Proposed Intervenors primarily argue that, if the Youth Movement succeeds, their ability to protect their interests will suffer because such a result would "undercut" a law that "protect[s] voters and candidates." Mot. at 9. This assumes, however, that non-citizens will begin voting in New Hampshire elections absent the documentary proof of citizenship requirement. *See id.* (stating that "granting Plaintiff's requested relief will harm New Hampshire's expressed interest in ensuring that its elections are decided by . . . United States citizens in particular"). Yet Proposed Intervenors provide no reason to think that would be true. The relief Plaintiff seeks would only preserve the status quo, and Proposed Intervenors provide no evidence that non-citizens have been using the affidavit option to vote in recent New Hampshire elections. The Court of course does not prejudge or assume the "ultimate merits" of the case at this stage, Mot. at 9 (quoting *Pavek v. Simon*, No. 19-CV-3000 (SRN/DTS), 2020 WL 3960252, at *3 (D. Minn. July 12, 2020)), but the

Court also may not accept as true speculative assumptions underlying a non-party's claim of interest impairment, *see, e.g.*, *Canadian Nat. Ry. Co.*, 272 F.R.D. at 46.

Proposed Intervenors further suggest that their interests are threatened because an unfavorable decision would "change the entire election landscape for [their] members and volunteers," thereby "chang[ing] what [they] must do to prepare for upcoming elections," Mem. at 9 (quoting *LUPE*, 29 F.4th at 307), but they again do not even explain what they might have to "change." *See id.* In fact, Proposed Intervenors would not need to change anything at all, as this lawsuit would merely preserve the rules that governed the most recent election in New Hampshire, which took place mere weeks ago. And *LUPE* gets them nowhere because, as already explained, that decision relied on a showing that specific poll watcher programs governed by the statutes at issue there were implicated by the relief requested. 29 F.4th at 305–06. No such circumstances are present here. In short, because Proposed Intervenors have not made a showing that they have cognizable interests that may be impaired by the relief Plaintiff seeks, their Motion should be denied.[5]

### c. Proposed Intervenors fail to show that they are not adequately represented.

Proposed Intervenors' Motion must also be denied because they have not shown that they are inadequately represented by the existing parties. To the contrary, "two converging presumptions" of adequate representation are "triggered because the Attorney General is prepared

---

[5] Proposed Intervenors assert that, "as a practical matter," this proceeding "might be the only time that [they] can litigate Plaintiff's claims" because "[t]his Court's decision could be the final word on the laws governing the next election." Mem. at 10 (citing *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014) and *Hodgson v. UMWA*, 473 F.2d 118, 130 (D.C. Cir. 1972)). But this argument puts the cart before the horse: to have any right to participate in the litigation of "Plaintiff's claims," *id.*, Proposed Intervenors must first satisfy the requirements of Rule 24(a), which they have failed to do. *See Brumfield*, 749 F.3d at 344 (concluding that proposed intervenors had "established that their interests might be impaired by this action" before assessing "practical" timing considerations); *Hodgson*, 473 F.2d at 130 (similar).

to defend the statute in its entirety." *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 111 (1st Cir. 1999). First, "adequate representation is presumed" because "the goals of the applicants are the same as those of the . . . defendant." *Id*. Specifically, Proposed Intervenors, like the Secretary, aim to defeat Plaintiff's claims and fend off relief. Second, "adequate representation is presumed" because "the government in defending the validity of the statute is presumed to be representing adequately the interests of all citizens who support the statute." *Id.*; *see also Patch*, 136 F.3d at 207. Proposed Intervenors are no exception.

Proposed Intervenors acknowledge that the First Circuit applies these presumptions and concede that, as movants, they bear the burden to rebut them. *See* Mem. at 10 (quoting *Daggett*, 172 F.3d at 111–14); *see also, e.g.*, *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 39 (1st Cir. 2020). Such "rebuttal requires 'a strong affirmative showing' that the [Secretary] is not fairly representing the applicants' interests." *Patch*, 136 F.3d at 207 (quoting *United States v. Hooker Chemical & Plastics Corp*, 749 F.2d 968, 985 (2d Cir. 1984)); *see also T-Mobile Ne.*, 963 F.3d at 39. In particular, a "petitioner ordinarily must demonstrate adversity of interest, collusion, or nonfeasance" to "overcome [these] presumption[s]." *Moosehead Sanitary Dis. v. S.G. Phillips Corp*, 610 F.2d 49, 54 (1st Cir. 1979).

Yet Proposed Intervenors do not even attempt to show anything of the sort. They do not allege that their interests are *adverse* to the Secretary—just that they are, in some respects, different. *See* Mem. at 11. Nor do they allege that Plaintiff and the Secretary are colluding. *See id*. And they do not argue that the Attorney General "is refusing to present" meritorious arguments against relief that Proposed Intervenors would raise if permitted to intervene. *Daggett*, 172 F.3d at 112. It does not suffice to rebut the presumptions that the Secretary represents "the public interest." *See* Mem. at 10–11. In *Daggett*, the First Circuit expressly held that "the general notion that the

Attorney General represents 'broader' interests at some abstract level is not enough" to rebut the presumption of adequate representation. 172 F.3d at 112. In short, because both presumptions plainly apply, and because Proposed Intervenors fail to rebut either of them—indeed, fail even to try—intervention of right must be denied.

**II.       Proposed Intervenors' request for permissive intervention should be denied.**

The Court should also deny Proposed Intervenors' alternative request for permissive intervention under Rule 24(b). The Court has broad discretion to deny the request for permissive intervention. *T-Mobile Ne.*, 969 F.3d at 42 ("The short of it is that a district court's discretion to grant or deny motions for permissive intervention is very broad." (citations omitted)). And the Court can consider a wide variety of factors in denying permissive intervention, including:

> the nature and extent of the intervenor's interest, whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties, whether the applicant will benefit by the intervention, whether the intervenor's interests are adequately represented by the other parties, and whether the intervenors will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*In re Acushnet River & New Bedford Harbor Proc. re Alleged PCB Pollution*, 712 F. Supp. 1019, 1023 (D. Mass. 1989). All factors militate against permissive intervention in this case.

The Court should deny permissive intervention for largely the same reasons that Proposed Intervenors' application for intervention as a matter of right fails—they have no more than undifferentiated, generalized interests that are already adequately represented by the Secretary. *Supra* § I. In fact, the Secretary's adequate representation is alone fatal to Proposed Intervenors' request for permissive intervention: "The case for permissive intervention diminishes or disappears entirely" "where intervention as of right is decided based on the government's adequate representation." *Tutein v. Daley*, 43 F. Supp. 2d 113, 131 (D. Mass. 1999) (cleaned up).

Further, granting intervention to Proposed Intervenors would unduly delay and complicate the adjudication of the rights of the original parties by introducing unnecessary briefing and discovery into the litigation. Far from merely "having to prove a lawsuit [it] chose to initiate," Mem. at 13 (quoting *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995)), Plaintiffs (and the Court) will in fact have to contend with "unnecessary partisan politics in[] an otherwise nonpartisan legal dispute," *Miracle*, 333 F.R.D. at 156 (cleaned up). And Proposed Intervenors notably do not promise that, if granted intervention, they will not seek extensions of time or oppose scheduling orders that are assented to by the principal parties. As such, they stand to delay the adjudication of this time-sensitive case. Because Proposed Intervenors have not made a persuasive case that this Court should exercise its discretion to grant intervention, the Motion should be denied.

## CONCLUSION

For these reasons, the Court should deny RNC and NHRSC's Motion to Intervene.

Dated: December 3, 2024

Respectfully submitted,

/s/ Steven J. Dutton
Steven J. Dutton, NH Bar No. 17101
Connor W. Harding, NH Bar No. 276438
McLANE MIDDLETON, P.A.
900 Elm Street Manchester,
New Hampshire 03101
Telephone: (603) 628-1379
steven.dutton@mclane.com
connor.harding@mclane.com

David R. Fox*
Renata O'Donnell*
Samuel T. Ward-Packard*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400

        Washington, D.C. 20001
        Telephone: (202) 968-4490
        dfox@elias.law
        rodonnell@elias.law
        swardpackard@elias.law

        Tyler L. Bishop*
        **ELIAS LAW GROUP LLP**
        1700 Seventh Avenue, Suite 2100
        Seattle, Washington 98101
        (206) 656-0177
        tbishop@elias.law

        *Counsel for Plaintiff*

        *\* Admitted Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on December 3, 2024, I served counsel of record by filing the foregoing document through ECF.

        /s/ Steven J. Dutton
        Steven J. Dutton