IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| NEW HAMPSHIRE YOUTH MOVEMENT,<br><br>*Plaintiff*,<br><br>v.<br><br>DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State,<br><br>*Defendant*. | Case No. 1:24-cv-00291-SE-TSM |

### DEFENDANT SECRETARY OF STATE SCANLAN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT

#### INTRODUCTION

An American citizen's fundamental right to vote, and to do so on equal footing with fellow citizens, is the practical manifestation of the principle of one person, one vote.[1] The United States Supreme Court has warned that voting rights "can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."[2] Accordingly, federal law prohibits noncitizens from voting in elections for federal offices.[3] Likewise, New Hampshire law prohibits noncitizens from voting in state elections.[4]

The purpose of House Bill 1569 ("HB 1569") is to prevent debasement and dilution of New Hampshire citizens' votes.[5] It does so by requiring each prospective voter to present

---

[1] *See Rucho v. Common Cause*, 588 U.S. 684, 731, (2019) (citing *Reynolds v. Sims*, 377 U. S. 533, 566 (1964)).
[2] *See id.* (quoting *Reynolds*, 377 U. S. at 555) (internal quotations omitted).
[3] *See* 18 U.S.C. § 611.
[4] *See* RSA 654:1.
[5] *See* Sen. Election Law & Muni. Affairs Comm. H'rg at 1-2 (Apr. 23, 2024) (Rep. Bob Lynn) (explaining that proof of citizenship is important to election integrity and preventing fraud). The Senate hearing notes are attached as Exhibit A. The Secretary offers Exhibit A for context only.

documentation that he or she satisfies the voting qualifications set forth in long-standing federal and state law.[6] Documentation may include a birth certificate, passport, naturalization papers, "or ***any other reasonable documentation*** which indicates the applicant is a United States citizen."[7] This proof-of-citizenship requirement is far from burdensome, and to Defendant Secretary of State's knowledge, no applicant has been denied voter registration for failure to present citizenship documentation since HB 1569 went into effect.

On behalf of its members and itself, Plaintiff New Hampshire Youth Movement ("Youth Movement" or the "Association") contends that HB 1569 is unconstitutional.[8] The Association's premise is that requiring a prospective voter to prove that he or she is a citizen imposes an undue burden on that person.[9] Youth Movement is wrong. HB 1569's proof-of-citizenship requirement is constitutional for several reasons, not the least of which being the law's direct relation to voter qualifications and its flexibility with respect to accepting any reasonable citizenship documentation.[10]

But the merits of these arguments are not yet before the Court because the Association does not have standing to bring this lawsuit. A plaintiff's standing is a constitutional imperative, and a "threshold question in every federal case, determining the power of the court to entertain the suit."[11] In this case, the Court does not have the power to entertain the suit because Youth Movement has not alleged facts to establish that its members have been injured by HB 1569. If its members are nonvoters who do not have "***any*** … reasonable documentation which indicates

---

[6] RSA 654:12, I.
[7] RSA 654:12, I(a) (emphasis added).
[8] *See* ECF No. 1, ¶¶ 67-69.
[9] *See id.*
[10] *See Crawford v. Marion County Election Bd.*, 553 U.S. 181, 191 (2008).
[11] *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

2

the applicant is a United States citizen[,]" the Association must identify those members.[12] Because the Association has made no such showing, its members do not have individual standing and the Association cannot pursue this lawsuit in a representative capacity.[13]

And like its members, Youth Movement lacks standing on its own accord because it has not demonstrated a legally cognizable injury that HB 1569 caused the organization.[14]  It complains that HB 1569 has diverted the Association's resources from their public policy advocacy, but diverted resources are not concrete injuries for the purposes of Article III standing.[15]  Moreover, "[a] mere interest in an event—no matter how passionate or sincere the interest and no matter how charged with public import the event—will not substitute for an actual injury."[16]  Where, as here, a law does not impose an impediment to an association's advocacy mission, doctrinal standing analysis does not recognize the association's increased costs or diversion of resources as actual injuries.[17]

The Secretary, therefore, challenges the sufficiency of the Complaint's jurisdictional allegations.  Even assuming the Complaint's factual allegations as true for the purposes of this Rule 12(b)(1) Motion to Dismiss, the Court should dismiss the Complaint because Youth Movement has not met its burden to establish this Court's subject-matter jurisdiction. Alternatively, if the Court were to find that the Association has standing, which it does not for the reasons stated below, the Court should nevertheless dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Complaint does not state a claim upon which the Court may grant relief.

---

[12] *See* RSA 654:12, I(a) (emphasis added) *and see Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016).
[13] *See Housatonic River Initiative v. United States EPA*, 175 F.4th 248, 265 (1st Cir. 2023).
[14] *Equal Means Equal v. Ferriero*, 3 F.4th 24, 30 (1st Cir. 2021).
[15] *Compare* ECF No. 1, ¶¶ 17-19 *with FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024).
[16] *AVX Corp.*, 962 F.2d at 114.
[17] *See All. for Hippocratic Med.*, 602 U.S. at 395.

## STANDARD OF REVIEW

Federal courts presume that causes of action lie outside their limited Article III constitutional authority, and plaintiffs have the burden to establish subject-matter jurisdiction by a preponderance of the evidence. *See Spencer v. Doran*, 560 F. Supp. 3d 648, 651 (D.N.H. 2021) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "[S]tanding is a prerequisite to a federal court's subject matter jurisdiction." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016). "[W]here standing is at issue, heightened specificity is obligatory at the pleading stage[.]" *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (quoting *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992)). So, a defendant may assert a facial challenge to the sufficiency of a plaintiff's jurisdictional allegations pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Ives v. Bath & Body Works, LLC*, No. 23-cv-432, 2024 U.S. Dist. LEXIS 70611, *1-2 (D.N.H. Apr. 18, 2024) (citing *Freeman v. City of Keene*, 561 F. Supp. 3d 22, 25 (D.N.H. 2021)). Such motions to dismiss challenge whether a complaint "set[s] forth reasonably definite factual allegations, either direct or inferential, regarding each material element needed to sustain standing." *See Draper*, 827 F.3d at 3 (quoting *AVX Corp.*, 962 F.2d at 115).

In a facial jurisdictional challenge, a defendant raises questions of law without contesting a complaint's alleged jurisdictional facts. *See Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 (1st Cir. 2021). Courts analyze these challenges in the same way they analyze Rule 12(b)(6) assertions that a complaint fails to state claims. *Id.* A court must "accept the well-pleaded facts alleged in the complaint as true and ask whether the plaintiff has stated a plausible claim that the court has subject matter jurisdiction." *Id.* (citing *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15, 23 (1st Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted). A court "need not credit a plaintiff's threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678) (cleaned up).

## RELEVANT FACTUAL BACKGROUND

New Hampshire enacted House Bill 1569 to ensure the integrity of New Hampshire elections. *See* Ex. A at 1-2 (Rep. Bob Lynn) (explaining that proof of citizenship is important to election integrity and preventing fraud). Among other things, the new law requires voter registration applicants to provide proof of United States citizenship through a birth certificate, a United States passport, or naturalization papers. RSA 654:12, I(a). The law also offers applicants alternatives to these self-authenticating proof-of-citizenship documents by allowing other reasonable documentation to establish that they are United States citizens. *Id.* New Hampshire law, therefore, no longer permits applicants to submit affidavits to unilaterally profess their voter qualifications. *See, e.g.*, Ch. 378, HB 1569-FN (Final Version) (redlines to RSA 378:7).[18]

Plaintiff New Hampshire Youth Movement is a nonprofit membership organization with 129 members who "seek to advance policy goals such as increasing wages, decreasing the costs of education, housing and medical care, and combatting the growing effects of climate change." *See* ECF No. 1, ¶ 14. The Association asserts that HB 1569 violates the First and Fourteenth Amendments to the United States Constitution by placing an undue burden on the fundamental right to vote. *Id.* ¶¶ 67-69. It alleges that the Association "will need to divert

---

[18] The final approved version of HB 1569 is attached hereto as Exhibit B.

resources away from direct voter contact" in light of HB 1569. *Id.* ¶ 17. The Complaint does not identify or name any individual member as having a specific personal injury caused by HB 1569, such as the inability to register to vote. *See id.* ¶ 15.

## ARGUMENT

New Hampshire Youth Movement has not satisfied its burden to establish this Court's subject-matter jurisdiction in at least two respects. First, Youth Movement cannot proceed in a representative capacity because (a) its members do not have standing to sue in their own right; (b) the Association's challenge is not germane to its organizational purpose; and (c) the Complaint provides insufficient detail to determine whether the nature of the claim and the relief sought requires individual member participation. Second, Youth Movement does not have standing independent of its members because HB 1569 does not frustrate the Association's organizational purpose.

For the reasons explained below, Youth Movement does not have standing to assert its challenge to HB 1569, but were the Court to conclude differently, it should nevertheless dismiss the Complaint because the Association fails to state a claim upon which the Court may grant relief. The Complaint does not offer any facts from which the Court could reasonably infer that the "character and magnitude" of Plaintiff's alleged injury outweighs New Hampshire's important regulatory interest in ensuring election integrity.

**I.    New Hampshire Youth Movement Does Not Have Associational Standing Because Its Members Do Not Have Standing in Their Own Right, HB 1569 Is Not Germane to Its Organizational Purpose, and the Association's Claims May Require Individual Member Participation**

Standing doctrine mandates that Youth Movement "establish each part of a familiar triad: injury, causation, and redressability." *Equal Means Equal v. Ferriero*, 3 F.4th 24, 27-28 (1st Cir. 2021) (quoting *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012)) (internal quotations and

citations omitted). And because Youth Movement is an association, this Court's subject-matter jurisdiction is governed further by a doctrinal subset, associational standing. *See Council of Ins. Agents & Brokers v. Juarbe-Jimenez*, 443 F.3d 103, 107-08 (1st Cir. 2006). Associational standing requires Youth Movement to demonstrate that (a) its members would otherwise have standing to sue in their own right; (b) its claim is germane to its purpose; and (c) neither its claim nor the relief it seeks requires its members to participate individually. *Id.* (quoting *Hunt* v. *Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)) (internal quotations and citations omitted). Youth Movement does not have standing because it has not sufficiently alleged any of these standing prerequisites.

### A. New Hampshire Youth Movement Has Not Sufficiently Alleged That Any Member Has Standing to Challenge HB 1569 in His or Her Own Right

At least one of Youth Movement's members must have individual standing, to confer subject-matter jurisdiction. *Housatonic River Initiative v. United States EPA*, 175 F.4th 248, 265 (1st Cir. 2023) (quoting *Animal Welfare Inst. v. Martin*, 623 F.3d 19, 25 (1st Cir. 2010)). To establish a member's individual standing, the Association must plausibly allege that a member: (1) has suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury is fairly traceable to the Secretary's challenged action; and (3) that the alleged injury will likely be redressed by a favorable judicial decision. *See id.* (citing *Plazzi v. FedEx Ground Package Sys., Inc.*, 52 F.4th 1, 4 (1st Cir. 2022)). Youth Movement has not named any member who satisfies these elements of individual standing.

The requirement that an association ***specifically*** identify at least one member with standing is well-settled and unambiguous. In *Draper v. Healey*, for example, a Second Amendment advocacy group challenged the constitutionality of a Massachusetts firearms regulation. *Draper v. Healey*, 827 F.3d 1, 2 (1st Cir. 2016). The court explained that "where

7

standing is at issue, heightened specificity is obligatory at the pleading stage." *Id.* at 3 (quoting *AVX Corp.*, 962 F.2d at 115) (internal quotations omitted).  The court held that dismissal for lack of subject-matter jurisdiction was appropriate at the pleading stage because a "complainant must set forth reasonably definite factual allegations, either direct or inferential, regarding each material element needed to sustain standing." *See id.* at 3-4 (1st Cir. 2016) (quoting *AVX Corp.*, 962 F.2d at 115) (internal quotations omitted).

Writing for the *Draper* court while sitting by designation, Justice Souter explained that an "association must, **at the very least**, identify a member who has suffered the requisite harm." *Id.* at 3 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)) (cleaned up) (emphasis added).  Justice Souter held that the firearms association did not have standing because "the complaint did not identify any member of the group whom the regulation prevented from selling or purchasing" a firearm. *Id.*  Also, although "[t]he group submitted an affidavit asserting that many of its members asked it to take legal action challenging the regulation, [] the Supreme Court has said that an affidavit provided by an association to establish standing is insufficient unless it **names** an injured individual." *Id.* (citing *Summers*, 555 U.S. at 498) (emphasis added).

So, to satisfy the prerequisites for standing in this case, Youth Movement must **name** at least one of its members who alleges to be: (1) a New Hampshire citizen; (2) who is not currently registered to vote; (3) who has been denied the right to register to vote or who (at a minimum) will imminently register to vote; and (4) who cannot produce, or will be severely burdened by producing, a birth certificate, passport, naturalization papers, or any other reasonable documentation which indicates that he or she is a United States citizen. *See* ECF No. 1, ¶ 67 ("The proof-of-citizenship requirement inflicts severe burdens, including total disenfranchisement, on otherwise qualified New Hampshire citizens.").  Youth Movement

alleges that it has 129 members, but that is all the Complaint alleges about them. *See, e.g.*, *id.* ¶ 15. It does not reference *any* specific member—much less identify a member's name—who has suffered the alleged injury of which the Association complains.

Even if Youth Movement *had* named a member, or even if a member could be creatively coaxed from the Complaint's penumbra, the Complaint nevertheless offers no facts to support its claim. To be sure, the Complaint is replete with legal conclusions regarding the constitutionality of HB 1569, but legal conclusions may only provide the framework of a complaint. *See Medeiros v. Town of Rindge*, 671 F. Supp. 3d 96, 103 (D.N.H. 2023) (quoting *Iqbal*, 556 U.S. at 679) (internal quotations omitted). Legal conclusions must be supported by plausible factual allegations. *See id.* There are none here. Moreover, the Court should not countenance Plaintiff's "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *See Alston*, 988 F.3d at 571 (quoting *Iqbal*, 556 U.S. at 678) (cleaned up). This is particularly true where, as here, the Association is obligated to provide "heightened specificity" with respect to its members' standing and this Court's subject-matter jurisdiction. *See Draper*, 827 F.3d at 3 (quoting *AVX Corp.*, 962 F.2d at 115).

Statistical probability of harm to an association's membership is not enough to confer subject-matter jurisdiction upon this Court. *Summers*, 555 U.S. at 499. So, since Youth Movement has not plausibly alleged that any specific member has suffered a concrete and particularized harm that is actual or imminent, it follows that the alleged harm cannot be fairly traceable to the Secretary's challenged action, nor can the Court redress the alleged harm by a favorable decision. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (describing the relationship among the three jurisdictional factors). Accordingly, the Complaint does not

9

establish that any Youth Movement member has individual standing as required for associational standing, so it must be dismissed.

  **B. New Hampshire Youth Movement's Organizational Purpose Is Not Germane to House Bill 1569's Proof-of-Citizenship Voter Registration Requirement**

  The interests Youth Movement seeks to protect in this lawsuit must be germane to the organization's purpose, to confer subject-matter jurisdiction. *See Council of Ins. Agents & Brokers*, 443 F.3d at 108 (quoting *Hunt*, 432 U.S. 333, 343 (1977)) (internal quotations and citations omitted). In other words, the lawsuit's objective must align with the Association's core purpose. *See Me. People's All. v. Mallinckrodt, Inc.*, 471 F.3d 277, 283 (1st Cir. 2006) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). This is an inquiry into whether a lawsuit reasonably tends "to further the general interests that individual members sought to vindicate in joining the association and … bears a reasonable connection to the association's knowledge and experience." *Saget v. Trump*, 375 F. Supp. 3d 280, 336 (E.D.N.Y. 2019) (quoting *Bldg. & Constr. at Trades Council & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 149 (2d Cir. 2006)) (internal quotations omitted).

  Youth Movement's core purpose is not voting rights. The Association asserts that its members seek "to advance policy goals such as increasing wages, decreasing the costs of education, housing and medical care, and combatting the growing effects of climate change." *See* ECF No. 1, ¶ 14. Its mission is undeniably broad, but a broad mission of public policy advocacy does not mean that members joined to take on every conceivable issue in the realm of public debate. *Cf. Katz*, 672 F.3d at 72 (explaining that prudential standing requires more than a generalized grievance shared by the public at large). That is why "an organization cannot manufacture standing merely by defining its mission with hydra-like or extremely broad aspirational goals[.]" *Nielsen v. Thornell*, No. 22-15302, 2024 U.S. App. LEXIS 16550, at *9

(9th Cir. July 8, 2024).  Were it otherwise, Article III standing would have little practical purpose, as every public policy advocacy group could contrive an injury in virtually any voting-related case.  *See id.*

To establish germaneness, Youth Movement must allege that New Hampshire's proof-of-citizenship voting registration requirement impeded its mission to advocate for policies increasing wages, decreasing the costs of living, and combatting climate change.  *Cf. All. for Hippocratic Med.*, 602 U.S. at 395 (holding that medical associations did not have standing where the associations failed to allege injury caused by a regulatory impediment to their advocacy).  Youth Movement does not allege that HB 1569 prevents it from advocating for such policies, it merely alleges that the new law requires it to alter its advocacy strategy and tactics.  Accordingly, the Complaint does not establish germaneness as required for associational standing, so it must be dismissed.

    **C.**    **New Hampshire Youth Movement's Challenge to HB 1569 May Require Youth Movement's Members' Participation**

Neither the claim asserted nor the relief requested in this case can require Youth Movement's members to individually participate, to confer subject-matter jurisdiction.  *See Council of Ins. Agents & Brokers*, 443 F.3d at 108 (quoting *Hunt*, 432 U.S. at 343) (internal quotations and citations omitted).  This is a prudential test.  *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 306 (1st Cir. 2005).  Typically, individual member participation is not required in cases that seek only declaratory judgment and prospective injunctive relief.  *See, e.g.*, *Coll. of Dental Surgs. of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 41 (1st Cir. 2009).  But plaintiffs are not entitled to an automatic pass simply because they do not seek damages.  *N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 72 (1st Cir. 2006).  Rather, the question is whether

11

adjudicating the merits of an association's claim requires the court to engage in a "fact-intensive-individual inquiry." *Id.*

Here, Youth Movement failed to allege that any member has individual standing, so it has also failed to provide sufficient information from which this Court could determine whether this case presents a "fact-intensive-individual inquiry" that would preclude associational standing. Accordingly, the Complaint must be dismissed because Youth Movement has not satisfied its burden to demonstrate that its members' individual participation is not required.

## II. New Hampshire Youth Movement Does Not Have Standing Independent of Its Members Because HB 1569 Does Not Frustrate New Hampshire Youth Movement's Organizational Purpose

Youth Movement also has failed to establish that it has standing as an organization, independent of its members. An organization may assert its own standing to sue in federal court, but an organization must "satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *All. for Hippocratic Med.*, 602 U.S. at 393-94 (citing *Havens Realty Corp. v. Coleman*, 455 U. S. 363, 378-79 (1982)). So,

> [l]ike an individual, an organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct, no matter how longstanding the interest and no matter how qualified the organization[.]

*Id.* at 394 (internal quotations and citations omitted). The Complaint does not plausibly allege that HB 1569 has caused or will cause the Association any of the prerequisites for organizational standing in this case.

The Complaint contends that HB 1569 will require it to "divert resources away from direct voter contact," requiring staff time and resources to organize events, draft letters to the editor, and reconfigure and run its new social media campaign. ECF No. 1, ¶ 17. It alleges that HB 1569 will "directly undermin[e] the efficacy of its educational and get out the vote efforts[,]"

12

which will cause the Association to "direct efforts toward educating voters on the harms and risks associated with the proof-of-citizenship requirement." *Id.* ¶ 18. Youth Movement plans to provide "direct assistance to those who are qualified to vote but who lack the documents necessary to register and vote under HB 1569." *Id.* The Association asserts that the net effect of HB 1569's changes to New Hampshire law will "come at a direct cost to its other priorities." *Id.* ¶ 19. Even accepting these allegations as true for the limited purpose of this Motion to Dismiss, these allegations do not plausibly allege injury to Youth Movement.

Time and again, the First Circuit and the United State Supreme Court have explained that injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *See, e.g.*, *Katz*, 672 F.3d at 71 (quoting *Lujan*, 504 U.S. at 560) (internal quotations omitted). Notably, "an organization cannot establish standing if the 'only injury arises from the effect of [a challenged action] on the organizations' lobbying activities, or when the service impaired is pure issue-advocacy.'" *Equal Means Equal*, 3 F.4th at 30 (quoting *People for the Ethical Treatment of Animals v. United States Dep't of Agric.*, 797 F.3d 1087, 1093-94 (D.C. Cir. 2015)).

The Supreme Court specifically addressed injury as it relates to an association's standing in *FDA v. Alliance for Hippocratic Medicine*. In that case, pro-life medical associations and doctors argued that the FDA's relaxed regulatory requirements for an abortion drug violated the Administrative Procedure Act. *All. for Hippocratic Med.*, 602 U.S. at 373. The associations alleged that they had standing to challenge the FDA's regulation because the FDA "impaired their ability to provide services and achieve their organizational missions." *Id.* at 394 (internal quotations omitted). They asserted that the FDA "'caused' the associations to conduct their own studies … so that the associations [could] better inform their members and the public about [the

13

drug's] risks." *Id.* The associations said that the FDA "'forced' the associations to 'expend considerable time, energy, and resources' drafting citizen petitions to FDA, as well as engaging in public advocacy and public education." *Id.* All of this, the plaintiffs asserted, would result in considerable resource reallocation "to the detriment of other spending priorities." *Id.*

The Court unanimously held that the associations lacked standing. The Justices explained that "[a] plaintiff must show 'far more than simply a setback to the organization's abstract social interests.'" *Id.* (quoting *Havens Realty Corp. v. Coleman*, 455 U. S. 363, 379, n.19 (1982)). The Court reasoned that:

> an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way.

*Id.* The principal rule of *Alliance for Hippocratic Medicine* is that where a governmental action does not impose an impediment to an association's advocacy, the association has not suffered injury. *See id.* at 395.

If the *Alliance for Hippocratic Medicine*'s jurisdictional allegations sound familiar, there is a reason. They are nearly identical to those presented by Youth Movement in this case. The Association complains of diverted resources from their public policy advocacy to direct assistance and public education. *See* ECF No. 1, ¶¶ 17-19. As the Supreme Court explained, these purported harms are not concrete injuries for the purposes of Article III standing. *All. for Hippocratic Med.*, 602 U.S. at 394. And without a cognizable concrete and particularized harm, the Secretary could not have caused injury to Youth Movement nor could the Court redress an injury with a decision favorable to the Association. *See Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020); *Am. Postal Workers Union v. Frank*, 968 F.2d 1373, 1375 (1st Cir. 1992). So, like the associations in *Alliance for Hippocratic*

14

*Medicine*, Youth Movement does not plausibly allege standing independent of its members, and the Complaint must be dismissed.

**III.    Alternatively, Were the Court to Find That New Hampshire Youth Movement Has Sufficiently Alleged Standing, the Court Should Nevertheless Dismiss the Complaint Because It Fails to State a Claim Upon Which the Court May Grant Relief**

Even were the Court to find that Youth Movement has standing to proceed, the Complaint fails to state a claim upon which relief may be granted.  The First Circuit has made two things abundantly clear with respect to election law challenges.  First, not all burdens on a citizen's right to vote are unconstitutional.  *See Common Cause R.I. v. Gorbea*, 970 F.3d 11, 14 (1st Cir. 2020).  Burdens may be constitutionally permissible where a state shows that it has an "important regulatory interest" that reasonably justifies the burden.  *See id.* (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788-89 (1983) and *Burdick v. Takushi*, 504 U.S. 428, 430 (1992)).  Second, a state's "regulatory interest" in preventing voting fraud and enhancing election integrity is "substantial and important."  *Id.* at 15.

So, to balance a citizen's interest in burden-free voting with a state's substantial and important interest in fraud prevention and election integrity, courts apply the *Anderson-Burdick* analytical framework.  *See id.* at 14; *see also* ECF No. 1, ¶ 64 (citing *Burdick*, 504 U.S. at 434, *Anderson*, 460 U.S. at 789, and *Common Cause R.I.*, 970 F.3d at 14).  *Anderson-Burdick* requires courts to "weigh the 'character and magnitude of the asserted injury to' the voters' rights against the 'precise interests put forward by the State as justifications for the burden imposed.'" *Common Cause R.I.*, 970 F.3d at 14 (quoting *Anderson*, 460 U.S. at 788-89).  The Complaint does not articulate any prospective voter's burden with which to weigh the state's interest.

Where factual allegations *should* reside in the Complaint, Youth Movement instead cites cases standing for various legal propositions related to how the Court should apply the *Anderson-Burdick* balancing test, *extra contextum*.  *See, e.g.*, ECF No. 1, ¶¶ 7, 38, 65-66.  That is not

15

surprising, since the Complaint does not identify the nature of ***anyone's*** burden in producing ***any*** reasonable documentation to prove citizenship. *See, e.g.*, *id.* ¶ 15. For example, the Complaint asserts the conclusory allegation that "[b]y eliminating [affidavits] without any adequate alternative means to ensure that all voters have a means to register to vote, New Hampshire has imposed an unconstitutional burden on voters' fundamental right to vote in the state." *Id.* ¶ 38. To support this contention, the Complaint does not attach or cite a prospective voter's affidavit regarding his or her difficulty in proving citizenship by "reasonable documentation." *Id.*; RSA 654:12, I(a). Instead, the Complaint cites a First Circuit decision with a parenthetical reiterating the *Anderson-Burdick* balancing test. ECF No. 1, ¶ 38. The Complaint is fraught with similar conclusory statements masquerading as factual allegations.

Legal conclusions may only provide the framework of a complaint—they do not satisfy the pleading requirement of setting forth a plausible claim for relief. *See Medeiros*, 671 F. Supp. 3d at 103 (citing *Iqbal*, 556 U.S. at 679). The Court should not credit Youth Movement's threadbare assertions that HB 1569 is unconstitutional. The Association supports its assertions (if at all) with mere conclusory statements that cannot support a reasonable inference of a claim upon which this Court can grant relief. *See Alston*, 988 F.3d at 571 (quoting *Iqbal*, 556 U.S. at 678; *Garayalde-Rijos*, 747 F.3d at 23. Accordingly, Youth Movement has not satisfied its burden to plead plausible facts that HB 1569 violates the Constitution, so the Complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety.

Respectfully submitted,

DEFENDANT DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State

By his attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

Date: December 20, 2024

/s/ Michael P. DeGrandis
Michael P. DeGrandis, N.H. Bar No. 277332
Assistant Attorney General
Catherine A. Denny, N.H. Bar No. 275344
Assistant Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, NH 03301
(603) 271-3650
michael.p.degrandis@doj.nh.gov
catherine.a.denny@doj.nh.gov

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all parties of record through the Court's e-filing system.

/s/ Michael P. DeGrandis
Michael P. DeGrandis