*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO JUNE 29, 2025

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

* * * * * * * * * * * * * * * * * * *
                                   *

NEW HAMPSHIRE YOUTH MOVEMENT,     *

          Plaintiff,     *

                      *  1:24-cv-291-SE-TSM
        v.           *  March 7, 2025
                      *  3:04 p.m.
DAVID M. SCANLAN, in his official  *
capacity as New Hampshire Secretary *
of State                   *

          Defendant.     *
* * * * * * * * * * * * * * * * * * *
COALITION FOR OPEN DEMOCRACY,     *
LEAGUE OF WOMEN VOTERS OF NEW     *
HAMPSHIRE, THE FORWARD FOUNDATION,  *
MCKENZIE NYKAMP TAYLOR, DECEMBER   *  1:24-cv-312-SE-TSM
RUST, MILES BORNE, by his next    *
friend STEVEN BORNE, ALEXANDER    *
MUIRHEAD, by his next friend      *
RUSSELL MUIRHEAD, and LILA       *
MUIRHEAD, by her next friend     *
RUSSELL MUIRHEAD,            *

          Plaintiffs,    *

        v.           *

DAVID M. SCANLAN, in his official  *
capacity as NEW HAMPSHIRE SECRETARY *
OF STATE, and JOHN FORMELLA, in his *
official capacity as NEW HAMPSHIRE  *
ATTORNEY GENERAL,           *

          Defendants.    *
* * * * * * * * * * * * * * * * * * *

TRANSCRIPT OF STATUS CONFERENCE
HELD VIA VIDEOCONFERENCE
BEFORE THE HONORABLE SAMANTHA D. ELLIOTT

<u>Appearances</u>:


For the Plaintiff,              David Robert Fox, Esq.
<u>NH Youth Movement</u>:          Tyler Bishop, Esq.
                                Elias Law Group LLP



For the Plaintiffs,             Henry Klementowicz, Esq.
Coalition for Open              Gilles Bissonnette, Esq.
<u>Democracy, et al</u>:          ACLU of New Hampshire

                                Clayton Pierce, Esq.
                                Desiree M. Pelletier, Esq.
                                Geoffrey Atkins, Esq.
                                John T. Montgomery, Esq.
                                Ropes & Gray LLP

                                Ming Cheung, Esq.
                                ACLU Foundation



For the Defendants:             Michael P. DeGrandis, Esq.
                                Catherine Denny, Esq.
                                NH Attorney General's Office



For the Intervenor,             Richard J. Lehmann, Esq.
National Republican             Lehmann Major List PLLC
Committee and NH State
<u>Committee</u>:



<u>Court Reporter</u>:           Liza W. Dubois, RMR, CRR
                                Official Court Reporter
                                U.S. District Court
                                55 Pleasant Street
                                Concord, New Hampshire 03301
                                (603) 225-1442

```
 1                    P R O C E E D I N G S
 2               Court is in session and has for consideration a
 3     status conference in 24-cv-291-SE, New Hampshire Youth Movement
 4     vs. David Scanlan, and 24-cv-312-SE, Coalition for Open
 5     Democracy, et al vs. the New Hampshire Attorney General, et al.
 6               And do you want me to have counsel identify
 7     themselves for the record?
 8               THE COURT:  I mean, I know it's going to take us a
 9     while, but it would actually be helpful for me if I could get
10     just kind of a general idea of who's where.
11               THE CLERK:  Okay.  Let's start with counsel for
12     plaintiffs.
13               MR. FOX:  Yes, Your Honor --
14               MR. KLEMENTOWICZ:  I'm Henry Klementowicz from the
15     ACLU of New Hampshire for the Open Democracy plaintiffs, and
16     I'll be doing most of the speaking for our part.
17               MR. BISSONNETTE:  I can follow, your Honor.  Gilles
18     Bissonnette.  I'm also with the plaintiffs in the Coalition for
19     Open Democracy matter.  Good to see you.
20               MR. FOX:  Your Honor, I'm David Fox for the
21     plaintiff, New Hampshire Youth Movement.  With me also for
22     plaintiff, New Hampshire Youth Movement, is Tyler Bishop and
23     Stephen Dutton.
24               THE COURT:  (Nods head.)
25               MR. BISHOP:  And just so you can put a face to a
```

 1    name, I'm Tyler Bishop.

 2            THE COURT:  Okay.  And I see you, Attorney Dutton.

 3    Okay.

 4            MR. MONTGOMERY:  Your Honor, I'm John Montgomery

 5    from Ropes & Gray, also for the plaintiffs in the Open

 6    Democracy case.

 7            THE COURT:  Okay.

 8            MR. CHEUNG:  And good afternoon, your Honor.  I'm

 9    Ming Cheung from the ACLU.  I'm here for the plaintiffs in the

10    Open Democracy case.

11            MR. ATKINS:  Geoff Atkins from Ropes & Gray, also

12    with the plaintiffs in the Open Democracy case.

13            MS. PELLETIER:  Good afternoon, your Honor.  Desiree

14    Pelletier with Ropes & Gray, also for the plaintiffs in the

15    Open Democracy case.

16            MR. PIERCE:  Good afternoon, your Honor.  Clayton

17    Pierce with the ACLU Voting Rights Project, also for the Open

18    Democracy plaintiffs.

19            THE COURT:  Who is left?  Is it just Attorney

20    Lehmann and Attorney Denny?

21            MR. DEGRANDIS:  And also, your Honor, Michael

22    DeGrandis, with the Attorney General's Office on behalf of

23    defendants Scanlan and Formella.  And I'm joined by Catherine

24    Denny as well.

25            THE COURT:  Of course, Attorney DeGrandis.  I don't

1   know how I could have forgotten you.

2          MR. LEHMANN:  Thank you, your Honor.  Richard

3   Lehmann for the Republican National Committee and New Hampshire

4   Republican State Committee as putative intervenors in this

5   matter.

6          THE COURT:  Okay.  Okay.  Thank you, everybody.

7          So I wanted to have this joint status conference to

8   go over a number of things that are pending in this case.

9          The first thing I just want to say is that, you

10  know, this case has been pending for quite some time and we

11  haven't made much progress.  And I -- I just want to open by

12  saying I'm sorry that that's been the case.  There -- for

13  reasons beyond the power of the Court, we've had some delays

14  and I apologize for that.  And, you know, I can knock -- we can

15  all knock on some wood or cross our fingers or whatever it is

16  you believe in or you're going to do that that's behind us and

17  that we're going to really hit the road -- hit the road running

18  at this point and things are going to start moving much more

19  quickly.

20          I think you'll find things are going to start moving

21  much more quickly starting right now.  So I'm going to give you

22  an update on my thoughts on a number of things that are pending

23  right now and hopefully we can get this back on track and we

24  won't have any further delays.

25          So I'm going to go through things that are

1    pending -- that are pending and we're going to start with the

2    consolidation.  And that's why I brought you all together

3    today.  When I issued that consolidation order, I said that I

4    wanted you guys to respond to that order and that we would have

5    a status conference.  Here we are.  So we're having that status

6    conference.  This is that status conference.

7            I did read carefully the responses to that.  I do

8    understand why the government is interested in consolidation in

9    this case, and I do see from the government's perspective that

10   the motions to dismiss -- that the arguments in the motions to

11   dismiss as the government describes them are substantially

12   similar, and I would say that the government's arguments in the

13   motions to dismiss are substantially similar, but that's

14   probably where those similarities end.

15           I don't think that the plaintiffs in these cases are

16   substantially similarly situated.  I think that the -- that

17   there are significant differences in the standing issues

18   between these two plaintiffs and as a result I'm not going to

19   consolidate these cases because I think we definitely need to

20   decide these motions to dismiss and we -- we have to at least

21   get through that.

22           I'm not convinced that there will never be a time

23   if -- if both cases survive the motions to dismiss, there may

24   be a time that it's appropriate for us to reconsider

25   consolidation.  There may be a time for -- that it's

1    appropriate for the parties even to consider consolidating for

2    the purposes of discovery but not for the purposes of trial as

3    it may be, and we'll get to that in a little bit.

4            But there's no question in my mind at this point

5    after I've had actually more time to consider the motions to

6    dismiss and the arguments made in response to the consolidation

7    order that consolidation is not appropriate at this time.  So

8    I'm not going to consolidate the cases.

9            Absent a request from the parties or something that

10   crops up, this may be the only time we get everybody together

11   on a Zoom or in a room.  So, I guess, enjoy the -- the vastness

12   of it for the time being.

13           I'm going to move now to the motions to intervene,

14   Attorney Lehmann.

15           So I've given that some serious thought.  I've

16   reviewed the motions to intervene.  I'm not inclined to grant

17   the motions to intervene, but I want you to know that what I am

18   inclined to do is to let the -- both of the parties, the

19   national and state parties, participate as amici.  And there's

20   no local rule on that in this jurisdiction, so I want to

21   explain to everybody what I mean by that.

22           I mean that I will allow the parties to attend all

23   hearings, to file briefing and argument on any -- on any and

24   all issues.  I will seriously consider briefs.

25           I will say that no party is required to respond to

1    anything filed by amici unless ordered to do so by the Court.

2    So that is a distinction between being a full -- full

3    intervenor and being amici.  But I will allow you to brief, I

4    will allow you to argue, I will fully consider those -- those

5    briefs and arguments.

6            And so that's -- that's what I -- that's what I

7    think is the appropriate step to take at this point, Attorney

8    Lehmann.  I -- I can issue, you know, a full order on this if

9    you guys think that you want to take an appeal on the

10    intervention issue.  I'm going to ask you that if you think you

11    want to do that, you can email the case manager by Tuesday and

12    let us know if you think you're going to do that.  I will tell

13    you right now I'm not going to stay the case for that to

14    happen.  So we're going to keep pushing forward.  You know,

15    obviously my hope is that giving you this full breadth of

16    participation is sufficient for -- to protect the interests

17    that you're looking to protect.

18            MR. LEHMANN:  I understand.  Thank you.

19            MR. KLEMENTOWICZ:  Your Honor, I'll just add that

20    the Coalition for Open Democracy plaintiffs have no objection

21    to the Republican parties participating as amici.

22            THE COURT:  Thank you.  I appreciate that.

23            Does any other -- do any of the other plaintiffs

24    want to be heard on --

25            MR. FOX:  No need, your Honor.  Thank you.

1          THE COURT:  Okay.  On the motions to dismiss -- so I

2   know that there was a request for oral argument, at least --

3   I'm not sure everybody requested oral argument, but there's at

4   least some request for oral argument on -- with respect to the

5   motions to dismiss.

6          Let me put it this way.  Does the state want oral

7   argument on the motions to dismiss?

8          MR. DEGRANDIS:  We've asked for oral arguments on

9   the motions to dismiss, your Honor, but, in the end, I mean,

10  whatever helps the Court make a decision is what's important to

11  us.  So if you -- if you don't think that would be helpful to

12  your decision, then I don't think it's necessary, but we would

13  appreciate the opportunity if you think that would be helpful.

14         THE COURT:  Okay.  I just want to translate that.

15         So it's up to the Court.

16         MR. DEGRANDIS:  Yes, that's right.  We've asked for

17  it, but it is up to the Court.  We're happy to go in any

18  direction the Court would like.

19         THE COURT:  Okay.  It's my practice that if somebody

20  asks for oral argument, they get it, but I've noticed over the

21  course of the past few years since I've been a judge that

22  sometimes we get into court on oral argument and we overhear

23  the parties talking to each other saying, I wonder why we're

24  having argument, and the answer is, well, because you asked for

25  it.  So -- and now I start asking people, do you really want

1    argument, because I don't want to cost everybody a bunch of

2    time and money with oral argument that nobody really wants.

3             So we'll start with the -- with the state.  Do you

4    really want oral argument?  What I'm hearing from you, you'll

5    take it if I give it to you, but you're not really asking for

6    it.

7             MR. DEGRANDIS:  Well, now that you put it that way,

8    I do think there are some issues that we can flesh out in oral

9    argument.  I believe that oral argument would be helpful to the

10   Court making a resolution on the motions to dismiss.  So my

11   preference would be for oral argument.  I'm just saying that,

12   you know, we're happy to do whatever the Court would prefer.

13            THE COURT:  Okay.  And do you have a preference with

14   respect to whether -- as I've said, I believe that these

15   motions to dismiss are actually very -- really quite different

16   because I think the -- the plaintiffs are quite differently

17   situated.  So my inclination would probably be to do those oral

18   arguments separately, but does the state have an issue with

19   that?

20            MR. DEGRANDIS:  No, not at all.  In fact, we

21   completely agree with you.  I think when we talk about

22   similarities between the motions to dismiss, it's similarities

23   as you identified earlier in the principal legal arguments.

24            But, yes, there -- there are dynamic differences in

25   these cases and we -- we want them certainly decided

1    separately.  Whether -- you know, however the Court finds it

2    more efficient to deal with those, as far as scheduling those

3    hearings, that's, you know, completely up to the Court.  If

4    they're two separate ones, that's fine.  If you'd like to do

5    them together, that's fine, too.  However you'd like to arrange

6    that.

7                    THE COURT:  Okay.  Okay.

8                    Okay.  So -- and then with respect to any of the

9    attorneys who were from out of state, is there anybody who's

10   going to be traveling to oral argument and will that affect our

11   ability to schedule our -- schedule argument?

12                   MR. FOX:  If there's oral argument, yes, I would

13   anticipate I would travel to oral argument, but I would

14   anticipate being fairly flexible.  So I -- I doubt that it

15   would seriously affect the ability of the --

16                   THE COURT:  Okay.  Okay.

17                   MR. KLEMENTOWICZ:  Your Honor, from our perspective,

18   too, we have some out-of-state attorneys, but they will be

19   happy to come up and we can do the arguments in court.

20                   The only thing that I would add about oral argument,

21   I think we're agnostic on it.  I'll just say, though, that in

22   terms of timing, we still have an opportunity to file a

23   surreply to the motion to dismiss.  Our plan was to not and to

24   save those points for oral argument, but if there's not going

25   to be oral argument, we may reconsider that.  So we would just

1    want to know before our surreply deadline lapses.  That's all.

2              THE COURT:  Okay.  Yeah, if you -- if -- because the

3    state's asked for oral argument, I'm going to give them oral

4    argument.  So there will be oral argument.

5              But what I'll tell you is that a better prepared

6    judge is a better judge.  So to the extent that you guys have

7    case law or points that you want to make, it is probably better

8    for you to get that in front of me before I get to the oral

9    argument.

10             MR. KLEMENTOWICZ:  Okay.  Understood.

11             THE COURT:  That's --

12             MR. KLEMENTOWICZ:  Thank you.

13             THE COURT:  That's usually my advice.  But, you

14   know, that's up to you, what you guys decide to do with it.

15             MR. KLEMENTOWICZ:  That's very helpful.  The local

16   rules say they're, you know, not encouraged, but if it's

17   helpful for this Court, then we would be happy to.

18             THE COURT:  Yeah.  What we -- the reason that

19   they're not encouraged is because people file them just to say

20   the same thing they've already said seven times or to just

21   continue to pick a fight.

22             There are some serious issues in this case.  This

23   is -- this is not a small case.  And so I would encourage you

24   to make sure that I know everything that I need to know to

25   decide these issues.

 1          MR. KLEMENTOWICZ:  Thank you.  We will take a second

 2    look at that then.

 3          THE COURT:  Okay.  Thank you.  Okay.  So you will

 4    all be getting oral argument.  If I schedule it for a day that

 5    doesn't work, please don't be shy.  Just reach out and we'll

 6    find a day that works.  I'm not trying to make this impossible

 7    for people that's -- and that's something I really want you to

 8    understand about the way that I run things.  Some of you have

 9    appeared before me in prior cases.  For those of you who

10    haven't, you know, I understand that attorneys have lives; I

11    understand that your clients have jobs to do and they have

12    lives as well.  You know, we want to make sure that this moves

13    forward, but we don't need to make things more complicated than

14    they need to be, especially about scheduling or other issues

15    like that.

16          So speak up, just reach out.  You can -- you can

17    file a motion to change the date.  I do expect you to try to

18    work together and figure out a date that works for everybody.

19    I don't want to be fighting about dates in pleadings.  That's

20    not something that I appreciate and you will find that I will

21    stop caring whether it works for you if that's -- if that's how

22    it's handled.  But I do try to work -- try to work with

23    everybody.

24          With respect to the motion to dismiss, New Hampshire

25    Youth Movement, your objection to the motion to dismiss has

1     asked that if the Court finds that there is no standing that

2     the Court give you leave to file an amended complaint.

3            MR. FOX:  Yes.

4            THE COURT:  Okay.  If you want to file an amended

5     complaint, you need to file the amended complaint.

6            MR. FOX:  Okay.

7            THE COURT:  I don't -- what I don't want to do is,

8     you know, we have -- we have a fully briefed motion to dismiss,

9     we're going to have a full argument on the motion to dismiss,

10    and then I'm going to issue an order on the motion to dismiss,

11    and then we're going to start the process all over again.  All

12    right?  That -- that's a waste of resources, and especially in

13    your case, because you are the plaintiff that is most pressing

14    the time issue.  So the delay that would be caused by that

15    strategy is extremely unappealing.

16           MR. FOX:  Okay.  Understood.

17           THE COURT:  If you feel like you need to amend your

18    complaint, I'd ask that you do that.  And so that's another

19    thing, you know.  If you want to let us know -- how much time

20    do you need to do that?

21           MR. FOX:  We could let you know by Tuesday of next

22    week.

23           THE COURT:  Okay.  Let us know by Tuesday whether

24    you intend to amend that complaint because that might mean that

25    your -- for the purposes of your case, your motion to dismiss

 1   is off track, you know --

 2              MR. FOX:  Okay.

 3              THE COURT:  -- and I would end up denying the

 4   government's motion to dismiss without prejudice because it --

 5   because of the motion to amend.

 6              MR. FOX:  I understand.

 7              THE COURT:  Okay.  And then -- and assuming that

 8   the -- the Republican parties, the amici, are going to proceed

 9   as amici -- and for the purposes of this conversation, Attorney

10   Lehmann, I'm just going to call you amici.  I know you haven't

11   decided yet.

12              MR. LEHMANN:  I understand.

13              THE COURT:  As soon -- in your motions to intervene,

14   you asked to join in the government's motions to dismiss.

15              MR. LEHMANN:  In one of them, yes; the second one,

16   in the --

17              THE COURT:  Open Democracy case.

18              MR. LEHMANN:  -- the Youth Movement case, I believe.

19              THE COURT:  Oh, in Youth Movement.  Oh, I'm sorry.

20   I had them reversed.

21              I didn't know --

22              MR. LEHMANN:  No, wait.  It's Open Democracy.

23   That's correct.  I'm sorry.

24              THE COURT:  I thought it was Open Democracy.

25              MR. LEHMANN:  I've been getting them confused since

1  November.

2         THE COURT:  I didn't know if the amici also wanted

3  to file anything about the motions to dismiss.  If you wanted

4  to do -- did you?

5         MR. LEHMANN:  Oh, yes, I suspect we will, but I also

6  understand and respect the fact that these are fully briefed

7  and don't want to burden the Court or the parties with

8  repetitive claims.

9         So to the extent that we have something to add will

10 be with the understanding that it's briefed and hopefully bring

11 something new to the table.

12        THE COURT:  Okay.  Well, if you want to do that, I

13 would be inclined to have that due within 14 days.

14        MR. LEHMANN:  Okay.

15        THE COURT:  And, again, I remind everybody that no

16 one is required to respond to that unless ordered to do so by

17 the Court.

18        And so if you want to -- I'll have to think about

19 how we do that.  It's hard for me to know until we know whether

20 they're actually going to file something.

21        If you want to file something, maybe we figure it

22 out then, because I don't know how to schedule the hearing if I

23 don't know how long you need to file a response, if you're

24 going to file one.

25        MR. LEHMANN:  I think you would be safe to assume we

1    are going to file something within 14 days.

2            THE COURT:  Okay.  But I don't think they -- I don't

3    think we're safe to assume they're going to want to respond.

4            MR. LEHMANN:  Correct.

5            THE COURT:  Okay.  Okay.  Let me think about that.

6    Let me just think, because I don't want to go ahead and

7    schedule a hearing -- I guess I -- let me think about how that

8    affects the scheduling of the hearing.  I could schedule it, we

9    could always cancel it or move it if we need to, if you guys

10   want to respond to whatever the amici are going to file.  Okay.

11   Because it may be that you don't want to file a response and we

12   can just move forward with the hearing.

13           Motion to stay filed by the government, I think you

14   can tell we're just going to deny that at this point because

15   we're going to move forward with everything.

16           Okay.  Which brings us to discovery.  I've got lots

17   of questions about this.  It looks like in the Coalition for

18   Open Democracy case, even though you have a proposed discovery

19   plan that has not been adopted, you are actually already

20   conducting discovery; is that right?

21           MR. KLEMENTOWICZ:  That's correct, your Honor, by

22   agreement of the parties.

23           THE COURT:  Okay.  That's fantastic.

24           MR. KLEMENTOWICZ:  We -- we've found a cordial and

25   professional relationship with the two attorneys from the

1  Department of Justice who we think very highly of.

2       THE COURT:  That's fantastic.  And as -- those of

3  you who have -- who have appeared before me and dealt with me

4  before know that that is my -- not just my joy, but also my

5  expectation.  So I appreciate that you've been doing that.

6       So I have some questions for you specifically.  Do

7  you still want a preliminary pretrial conference?

8       MR. KLEMENTOWICZ:  Well, your Honor, I -- I think

9  this is the preliminary pretrial conference that we were hoping

10  for.

11       THE COURT:  Okay.

12       MR. KLEMENTOWICZ:  There are two things that I had

13  planned on saying today that I'm happy to defer to later.

14       I'll say one of them was just about, like, the

15  Purcell doctrine and the reason that the courts move quickly.

16  We're not conceding that it applies here; it's, I think, an

17  ill-defined shadow docket, but it seems like your Honor is well

18  aware of the time pressures in this type of case.

19       So we have one other discovery thing that has arisen

20  after we filed our claim that I'm happy to defer until after.

21       THE COURT:  Okay.  I mean, with respect to the

22  Purcell doctrine, I'm not -- I understand nobody's conceding it

23  applies; nobody's conceding, I guess, that it exists, Attorney

24  Klementowicz.

25       But, Attorney DeGrandis, can I at least assume that

1  to the extent that everybody -- that anyone thinks it exists,

2  the government is conceding that if this case were to conclude

3  by January 2026, the doctrine would not be implicated.

4            MR. DEGRANDIS:  Yes.  It -- if the case were

5  concluded by then, the doctrine wouldn't be implicated.

6            In talking to my client, the expectation is that

7  they could probably -- if there were an adverse decision on the

8  merits here, they could probably implement change -- they --

9  they would need at least 90, but even 120 days would probably

10  work.  So, really, all it depends on is the Court's time to,

11  you know, finally resolve on the merits is really what it comes

12  down to.

13            So there -- we have more flexibility than January.

14  It's just depending on where the Court falls as to how quickly

15  after trial we would -- we would get a decision, the final

16  decision.

17            THE COURT:  Okay.  Understood.  And when you say

18  final decision, there are lots of different ways to look at a

19  final decision in a case.

20            MR. DEGRANDIS:  That's true.

21            THE COURT:  Are you talking about a final -- I

22  mean --

23            MR. DEGRANDIS:  So what I mean there is a judgment.

24  You know, obviously there -- there could be matters related to

25  appeal as well, obviously, but it's a little difficult to

1  address those issues.  You know, right now it's sort of early

2  ante phase before any of that happened.

3          So, yeah, I mean, it's certainly our expectation

4  that a decision that says HB 1569 is unconstitutional in

5  January, February, March, would be plenty of time before the

6  September primary to -- you know, to implement the changes

7  necessary so that no one would be disenfranchised and the

8  public would not be confused and so on.

9          THE COURT:  I mean, what I'm hearing from you is

10  that even something up to like May.  I'm not -- we're aiming

11  for January, so I just want to assure you that we are aiming

12  for January.  But that's -- that's the discovery plan that you

13  have proposed, and we're going to get to that in a second.

14          MR. KLEMENTOWICZ:  Your Honor, I'll just add that

15  there's an effort in the legislature to move the state primary

16  to August.

17          THE COURT:  Oh.

18          MR. KLEMENTOWICZ:  We've seen this effort before.  I

19  can't predict -- you know, I think the governor said she'd

20  support it, but I'm not -- I can't predict whether that would

21  happen, but I just want everyone to know.

22          THE COURT:  That's an important point.  Thank you.

23          Okay.  Was there a second point that you'd like to

24  make that you would have made in a preliminary pretrial

25  conference or do you want to hold that one in your pocket?

1          MR. KLEMENTOWICZ:  No, I'm happy to do it.  I want

2     to forecast for the Court a possible forthcoming motion to

3     compel related to the statewide voter database, which is a -- a

4     database maintained by the Secretary of State's Office with

5     information on every voter in the state, or at least in theory,

6     that we have requested in discovery.

7          We've met and conferred with the state on this and

8     it's confidential by statute.  Our view is going to be that

9     that statute will fall to the federal rules.  And without too

10    much getting into the state's position, I think they're going

11    to argue that it's unnecessary and irrelevant based on

12    forthcoming discovery responses to interrogatories which we

13    have agreed on a deadline but we don't yet have.

14         So when we get those, I anticipate there's a high

15    likelihood that we'll be moving to compel production of that

16    and hopefully we'll be able to work out timing such that we

17    could get it to our expert in advance of what we've said right

18    now is our expert disclosure date of May 14.

19         So I just wanted the Court, for planning purposes --

20         THE COURT:  No, I appreciate that.

21         And as many of you know, I mean, my general practice

22    is that what you expect from people before any motion to compel

23    is filed is that you come to me and we have an informal Zoom

24    conference during which we have a conversation to see if we can

25    resolve it.  I always acknowledge that sometimes you just have

1   to file a motion to compel, either because you have to create a

2   record, that -- so that it's an issue that you preserve for an

3   appeal, or -- and that might be the issue here, I'm going to

4   ask you Attorney DeGrandis, because you cannot produce

5   something without an order from the Court.  And is that -- is

6   that what the issue is right here?

7            MR. DEGRANDIS:  That -- that's correct.  With

8   respect to the statewide voter database, our understanding of

9   the law is that we cannot disclose that without a Court order.

10  You know, we take that -- obviously that responsibility

11  seriously.

12           And I probably should also telegraph, while we're

13  telegraphing arguments here and potential moves, that we would

14  take issue with -- I should say we would question whether the

15  Court has the authority to grant the relief that the plaintiffs

16  would seek; that the Court would be -- before a decision, of

17  course, on the motions to dismiss because if the plaintiffs

18  don't have standing, then the Court doesn't have subject matter

19  jurisdiction and there's no relief to be granted.  So I just

20  wanted to communicate that as well.

21           THE COURT:  Okay.  I appreciate that.  Okay.

22  That's -- that's important.

23           Do you guys want to submit a new discovery plan or

24  do you think your current discovery plan dates still work?

25           MR. KLEMENTOWICZ:  I -- from the Coalition for Open

1    Democracy perspective, I think they still work.

2              THE COURT:  Okay.

3              MR. KLEMENTOWICZ:  I do just want to not correct the

4    record, but supplement the record.

5              In our response to the motion for consolidation, I

6    indicated that I was going to be in trial in another matter

7    before Judge McCafferty in November.  That case has been

8    stayed.

9              THE COURT:  Yeah.

10             MR. KLEMENTOWICZ:  Okay.

11             THE COURT:  Okay.

12             MR. KLEMENTOWICZ:  But, yes, the dates I think still

13   work for us.

14             THE COURT:  Okay.  Good.  So --

15             MR. DEGRANDIS:  Your Honor, so for us, we are

16   concerned.  It's not that January is not doable.  It is

17   possible to catch up.  But we are -- we are a good month

18   behind.

19             THE COURT:  Yeah.

20             MR. DEGRANDIS:  Both parties have needed extensions

21   and, you know, there's been some uncertainty with respect to

22   consolidation.  And without consolidation, I would appreciate

23   it if -- if the Court would understand, too, that that puts a

24   greater burden on the Attorney General's Office in defending

25   two separate cases on two separate timelines.  You know,

```
 1   that -- that will put a lot of strain on staying with that
 2   original proposed discovery plan.
 3             THE COURT:  I do understand that.
 4             You know, I'm flexible about this.  It's --
 5   especially considering the fact that it's the state that is
 6   the most concerned about concluding this case on a particular
 7   timeline, to the extent that you are concerned -- I trust the
 8   state to juggle those two timelines.
 9             What I will tell you is I will not be amenable to an
10   argument later on that it is now too late to render a decision
11   that affects voting rights.
12             MR. DEGRANDIS:  Understood.
13             THE COURT:  If we keep pushing out deadlines, then
14   the state is stuck with those deadlines.
15             MR. DEGRANDIS:  Understood.  Yup.
16             THE COURT:  Okay.
17             MR. KLEMENTOWICZ:  Your Honor, I'm so sorry to
18   interrupt.
19             I just wanted to ask a question as to whether
20   there's a transcript of this status conference that's being
21   prepared.
22             THE COURT:  Yes, we do have a court reporter
23   preparing this --
24             MR. KLEMENTOWICZ:  Okay.  Thank you.
25             THE COURT:  -- preparing a transcript of this.  And
```

1   I will issue an -- endorsed order that tries to go through

2   what -- what the responsibilities of the parties are after

3   this.

4         And I think what -- what I'm going to ask you guys

5   to do is meet and confer about a new discovery plan to the

6   extent that you need -- and even if what you submit is the

7   exact same plan, that's what I'm going to ask you to do, just

8   because it sounds like the government is saying we might be

9   able to do most of it, but it might be that we need to push

10  back a few things.

11        One more point when it comes to this.  This is a

12  good -- a good time for me to explain.

13        I did see, Attorney DeGrandis, that you filed a

14  motion to extend a discovery deadline but also an objection

15  deadline in the Coalition for Open Democracy case just

16  recently.

17              MR. DEGRANDIS:  The -- I --

18              THE COURT:  It might have been a reply deadline.

19              MR. DEGRANDIS:  I think it was a reply deadline.

20        So, yeah.  We had moved, with the plaintiffs'

21  assent, two dates.  One was a reply to the plaintiffs'

22  objection to our motion to dismiss; we -- we moved that to

23  March 5th.  And --

24              THE COURT:  Okay.

25              MR. DEGRANDIS:  -- we had also asked and received

1  assent to extend the deadline to respond to the plaintiff's

2  discovery to March 12th.  I forget what the original date was.

3            THE COURT:  Yes.

4            MR. DEGRANDIS:  To March 12th.

5            THE COURT:  Yes, that's my point.  So for anything

6  that you have to hand in to the Court, so it was replying to a

7  pleading, absolutely you need to file something with the Court

8  letting me know or asking me for permission to extend a

9  deadline and letting me know that you have the assent of the

10 other party.  But when it comes to your discovery obligations,

11 if you have an agreement between the parties that you've

12 extended a discovery deadline, you don't need to file anything

13 with the Court and you don't need the permission of the Court

14 as long as the parties have agreed.

15            MR. DEGRANDIS:  Okay.

16            THE COURT:  It's only deadlines that involve the

17 Court that you need the Court's permission for.

18            MR. DEGRANDIS:  Great.  Thank you.

19            THE COURT:  You know, good practice, have it in

20 writing.  You know, I don't want to get you in here later on

21 saying I never agreed to that extension, but definitely I just

22 don't want you guys to feel like you're waiting on me for

23 something that you've already agreed to.

24            MR. DEGRANDIS:  Okay.  Thank you.

25            THE COURT:  Okay.  So for -- for Coalition for Open

1    Democracy, you are going to submit a new proposed discovery

2    plan, just so that we have a -- one that's up to date.  I'll

3    then look it over and approve it so you have a -- you have one

4    that's in effect.

5              MR. KLEMENTOWICZ:  I always find that a deadline

6    focuses the mind.

7              THE COURT:  Yes, it does.

8              MR. KLEMENTOWICZ:  Maybe a week or two weeks for us

9    to do that?

10             THE COURT:  Oh, I'm going to make it one week.

11             MR. KLEMENTOWICZ:  One week.  Perfect.

12             THE COURT:  Next Friday.

13             MR. KLEMENTOWICZ:  Great.  Thank you.

14             THE COURT:  Which is the 14th?

15             MR. DEGRANDIS:  Yup.

16             THE COURT:  Is that right?

17             MR. DEGRANDIS:  Yes.

18             THE COURT:  Okay.  And the other deadlines we've had

19    so far were Tuesday, which are -- which is the 11th.  Okay.

20    And you have 14 days, Attorney Lehmann, to file anything with

21    respect to the motions to dismiss.

22             MR. LEHMANN:  Right.  Could I also be heard on this

23    question of discovery, your Honor?  I understand that being

24    denied amici status means we're not active participants --

25             THE COURT:  Correct.

1           MR. LEHMANN:  -- but what I would ask, to the extent

2    that we're being permitted to file and argue various kinds of

3    motions, is to be served with the discovery responses when

4    they're made so we at least know what's going on in the case.

5    The -- the right to file dispositive motions and do other

6    things concurrent with the parties' schedule would end up

7    feeling kind of hollow if we didn't know what the state of the

8    evidence was when we were doing it.

9           THE COURT:  Does anybody have any objection to that?

10   If you need to think about it, you can think about it, but I --

11   I wonder offhand if anybody has any objection to that.

12          MR. KLEMENTOWICZ:  My preliminary thought, your

13   Honor, is some of our organizational -- some of our clients are

14   minors.

15          THE COURT:  Okay.

16          MR. KLEMENTOWICZ:  And so there may be information

17   in there that is just sort of sensitive.  There may be a

18   forthcoming protective order on some things.  There's the

19   statewide voter database issue that I imagine the state would

20   object to.

21          I haven't received discovery requests from the state

22   yet, so I don't know what we would be turning over, but it's

23   possible that they'd be asking for information about our

24   organizational clients that our clients would be disinclined to

25   voluntarily hand over to the Republican party, just -- not for

 1    any nefarious reasons, of course, but just because they're all

 2    parties that sort of exist in the political realm.  Our clients

 3    are nonpartisan, but sometimes find themselves on the opposite

 4    side of some issues and so if we didn't have to turn that

 5    information over, I don't think we would.

 6            THE COURT:  Okay.

 7            MR. LEHMANN:  I was just going to add that obviously

 8    we are willing to be bound by whatever protective orders or

 9    other protective measures the Court wanted to draw around our

10    involvement in that way, even if it's attorneys' eyes only, you

11    know, that -- if it comes to that kind of thing.  But --

12            THE COURT:  Yeah.  I mean, at this moment I'm not

13    inclined to give you the opportunity to have -- I mean, you're

14    not a party.  I'm trying to carve out as much of a role as

15    possible without granting you intervenor status.  And I think

16    that the -- having you essentially participate in discovery is

17    a step too far.

18            If there was a particular need -- you know, if you

19    had something that you -- you know, I can't make this argument

20    unless I -- unless I -- because if you think about what this

21    case is actually about, and even the arguments made in your

22    motion to intervene, I can't understand why you would need

23    access to the kind of discovery that you're talking about.

24            MR. LEHMANN:  Okay.  Well, I mean, I was mostly

25    thinking about things having to do with -- expert reports I

1    think are probably going to play a role here and deposition

2    transcripts and those kind of things as well as -- and I think

3    maybe the big datasets is probably of less concern to us than

4    the specific -- the specific things that will be used to flesh

5    out the issues that are going to decide the case.

6              But, again, we're just sort of trying to predict

7    what's going to happen down the road without quite knowing what

8    it is yet.

9              THE COURT:  Yeah, maybe -- maybe we could -- I mean,

10   I don't want to make it more -- I'm trying to make this less

11   complicated and sometimes when you do that, you shoot yourself

12   in the foot.

13             Maybe we could take this on a piece-by-piece basis

14   for a moment.  Let's get through the motions to dismiss because

15   if what you're talking about are expert reports, it might be

16   that the plaintiffs don't have -- that the plaintiffs and the

17   state don't have an objection to sharing the expert reports,

18   which will ultimately be publicly filed, I would imagine.

19             So let's -- if you guys can reach an agreement to

20   share those, that solves the problem.  I'm willing to consider

21   piecemeal on this, but a blanket order that all discovery is

22   open to the -- to the amici seems a bit overbroad.

23             MR. LEHMANN:  Could we start with the

24   interrogatories that have been propounded or as the questions

25   get asked?  It's really the answers that I think people have

1  concerns about providing more than the questions.

2          THE COURT:  I -- again, I think you'd need to tell

3  me why you need it, Attorney Lehmann.

4          MR. LEHMANN:  Okay.  It's hard for me to tell you

5  why I need it when I don't -- without knowing the shape of the

6  case.  But I'm -- and I'm just trying to be cooperative.  I'm

7  not here trying to be difficult, I assure you.  I'm just

8  thinking about how this is going to go.  And it hasn't gone

9  yet, so maybe we're just guessing.

10          THE COURT:  Again, but the question is what is it

11  that your clients -- what is the role that your clients feel

12  they need to play in this case?  Because, you know, there's a

13  standard and I'm telling you, looking at -- looking at the

14  standard, I'm not inclined to grant the motions.  So -- so what

15  is the role that -- that you think your clients need to play

16  that isn't already being occupied?

17          MR. LEHMANN:  Well, we think we -- we -- we come

18  with a degree of institutional expertise about matters related

19  to election law and come at it from a different perspective

20  than the state does.  I understand the state is going to make a

21  good faith effort and defend this lawsuit to the best of their

22  ability and within their ethical obligations, but their role in

23  elections is different than ours and so we'll -- are going to

24  have a different perspective than they have.

25          THE COURT:  Yeah, I'm not -- like -- like I said,

1  I'm trying to give you the broadest role I can possibly give

2  you in light of the fact that I'm not inclined to grant the

3  motion to intervene.  So at this point, I wouldn't -- I

4  wouldn't give you full -- full -- full access to the discovery.

5      Okay.  New Hampshire Youth Movement, you need to

6  confer and submit a new proposed discovery plan because you

7  have just a one-sided discovery plan that doesn't have any

8  dates.  So -- so you need to go ahead and do that.  Again, I'm

9  going to give you guys seven days to do that, which is by March

10  14th.

11      MR. DEGRANDIS:  Your Honor, may I --

12      THE COURT:  It's difficult for me to see why your

13  plan would be all that different than the other plan.  I

14  know now it turns out you guys have actually started in the

15  other case, so maybe it is a little bit different.

16      MR. FOX:  And, your Honor, I'll just say that based

17  on what Mr. DeGrandis said earlier about his client's view of

18  Purcell, that is more than we've heard before and that gives me

19  a lot of comfort that we should be able to get on the same page

20  in terms of discovery plan as in the other case as well.

21      THE COURT:  Okay.

22      MR. DEGRANDIS:  Your Honor, may I --

23      THE COURT:  Yes.

24      MR. DEGRANDIS:  Could we have just a little bit

25  longer to file a proposed discovery plan in that case?

1    Because, you know, I think we'd want to make sure that

2    New Hampshire Youth Movement isn't amending their complaint

3    first.  I think --

4             THE COURT:  Good point.

5             MR. DEGRANDIS:  Once we know that, I think we can

6    start to -- maybe if we could have a week from I think it's

7    Tuesday Attorney Fox said for him to decide, so if we could

8    have a week from Tuesday, that would be great.

9             THE COURT:  That's actually a very good point.

10            MR. FOX:  Your Honor, my only request is that I am

11   foreseeing that we are not going to be able to -- like I would

12   like for us to open discovery at this point as discovery has

13   been opened in the other case and I think it would probably be

14   helpful to the -- to our ability to reach an agreement on a

15   discovery plan if the Court said something one way or another

16   about whether the Court is inclined to let us begin discovery

17   pending a decision on our motion to dismiss.

18            THE COURT:  Attorney Fox, to be fair, I don't even

19   know whether you have a complaint.

20            MR. FOX:  Okay.

21            THE COURT:  So the -- there's a reason you're in

22   this position.  You understand that?

23            MR. FOX:  Your Honor, I -- I do, but the amendment

24   to our complaint would relate to the standing allegations.  I

25   don't -- it's not going to change the nature of the discovery

1    in this case.

2              THE COURT:  It's going to -- it might change whether

3    or not you have a case.

4              MR. FOX:  I understand.

5              THE COURT:  So we have to decide whether you

6    actually have a case that's moving forward, and I think the

7    reluctance on the part of the state to open up discovery has

8    something to do with the way that your case -- the complaint

9    came in.  And I would say it probably also has something to do

10   with the way the case has been litigated thus far.

11             So I -- I implore you to try to find a way to work

12   together and not against because though you have -- it's

13   litigation.  Absolutely.  There's litigation.  But we are all

14   working together to try to get to an end result.

15             MR. FOX:  Your Honor, I -- I hear you, and I just --

16   I do want to say we have been trying.  We have been trying to

17   get on the same discovery plan as in the other case for some

18   time now.  We are trying.  I understand -- I hear what the

19   Court is saying and I understand.

20             THE COURT:  Okay.  So why don't I give you -- I

21   mean, I'm not going to stay.  I already denied the motion to

22   stay.  We are moving forward.  But I think we do need to know

23   what's going to happen with your case.

24             MR. FOX:  (Nods head.)

25             THE COURT:  So you're going to let us know by

1    Tuesday whether you're amending your complaint.

2              MR. FOX:  Yes, your Honor.

3              THE COURT:  I'm going to give you -- I'm going to

4    give you guys, what did you suggest, a week from Tuesday,

5    Attorney DeGrandis?

6              MR. DEGRANDIS:  Yes.

7              THE COURT:  Okay.  So you guys have a week from

8    Tuesday.  That's -- it's only a few extra -- it's a few extra

9    days, which would be -- I'm sorry.  I don't have -- Tuesday is

10   the 11th, so the 18th.  Okay.  You have till the 18th to submit

11   a new discovery plan.

12             Do you guys also want to -- well, I'll ask you this.

13   When you submit your discovery plan, let me know if you want an

14   additional scheduling conference.  And I will tell you,

15   Attorney Fox, if you can't get agreement from the government on

16   discovery plans, I stand at the ready to help you get that

17   agreement.  I mean, there's a reason I'm denying the motion to

18   stay.  So I do want discovery to move forward.

19             MR. FOX:  Thank you, your Honor.  I appreciate that.

20             THE COURT:  Speaking of discovery, what does

21   discovery look like in this case?  Just -- I mean, we're

22   essentially at a preliminary pretrial conference.  Like what is

23   the -- what are you guys -- what is discovery in this case?

24             MR. KLEMENTOWICZ:  Your Honor --

25             MR. FOX:  So -- go ahead.

1            THE COURT:  Yeah.

2            MR. KLEMENTOWICZ:  From our perspective, your Honor,

3    so the primary -- the lead claim in our case is an *Anderson*

4    *Burdick* claim which involves, you know, balancing the state's

5    purported interest against the burdens on voters.

6            So it's primarily focused on the number of voters

7    who don't have the requisite documents and any document in

8    order to prove burden and sort of associated facts with that

9    and any documents which could support or relate to any state

10   interest in life, for example, voter fraud or voter confidence

11   which are oftentimes advanced as state interests.

12           I anticipate there may be some standing discovery

13   propounded by the state and then experts likely who will opine

14   on the -- how voter fraud is vanishingly rare in New Hampshire

15   and also how the burdens of not having these documents could

16   dissuade people from voting, you know, associated costs,

17   et cetera.  So that's with the *Anderson Burdick* claim and

18   related challenges.

19           And then with the procedural due process claim, I

20   think it's probably smaller, involving, you know, documents to,

21   you know, relate to any process that there is or, you know,

22   things related, so I think it's probably smaller.

23           But that's what we're talking about.  I don't think

24   we're talking about gigantic reams of data, I hope.  I don't --

25   I don't think the state is going to have any documents to

1    support any state interest in passing this law, personally, so

2    we may just get nothing, thanks.

3            But it could be -- you know, usage history of the

4    affidavits that were removed, for example, will probably be a

5    pretty important part of discovery and then, you know, the

6    statewide voter databases we've talked about.

7            THE COURT:  Okay.  Attorney Fox, what do you think?

8    What does discovery look like?

9            MR. FOX:  So I basically agree with all of that and

10   want to underscore that I think a key item of discovery,

11   probably the most important item of discovery from our

12   perspective, is information on the voters who have used the

13   citizenship affidavit, that it has been eliminated in the past.

14   Those, to us, are really the critical record in terms of

15   understanding the burden and the state interest here.

16           And so that is like -- we've asked for several

17   things in the discovery requests we've served, but it's

18   primarily focused on that issue.

19           THE COURT:  Okay.  You have propounded -- you've

20   propounded discovery requests already?

21           MR. FOX:  Correct.

22           THE COURT:  And, Attorney DeGrandis, has the state

23   started compiling responses to those requests?

24           MR. DEGRANDIS:  We have not.  You know, since we

25   weren't able to proceed by agreement with New Hampshire Youth,

1    that's why we were filing -- we filed --

2            THE COURT:  Okay.

3            MR. DEGRANDIS:  -- the motion to stay the

4    proceedings there, because we hadn't had a prior -- an

5    agreement prior to the Court's notice of possible

6    consolidation.  Once that came -- once we thought that the case

7    may be consolidated and we were -- we were possibly excited

8    about that, you know, we said, well, let's hold on since we do

9    have motions challenging --

10           THE COURT:  Oh, okay.

11           MR. DEGRANDIS:  -- outstanding, we need -- we need

12   to hold on.  We wouldn't have proceeded with discovery with

13   Open Democracy at this point had we not previously agreed to do

14   so.  And so that's how disjointed things got --

15           THE COURT:  Oh, okay.

16           Attorney Fox, I owe you an apology.  Okay.

17           MR. DEGRANDIS:  So, you know, it became very

18   difficult to sort of coordinate those two.  And so at that

19   point, given the -- just given the circumstances, we couldn't

20   proceed with that.

21           We do have their discovery and once -- you know,

22   once we are able to put together our proposed discovery plan,

23   you know, we can -- we can start working on discovery in that

24   case.

25           Again, my concerns are these -- it's very

1    duplicative.  I mean, we -- there are -- there are -- actually,

2    I have one example at my fingertips here, Youth Movement's

3    interrogatory number 1 and Open Democracy's interrogatory

4    number 7.  Both ask for the number of noncitizens who have

5    registered to vote or attempted to register to vote.  And so

6    in -- and they're similar.

7                So in some ways, you know, now that we've been

8    working on the Open Democracy, we'll be able to transfer some

9    of that information to -- to New Hampshire Youth Movement, but

10   the scope is different.  The -- some -- in that particular

11   instance, New Hampshire Youth is looking for January 1st, 2016,

12   and Open Democracy is looking for that information back to

13   2012.  In other -- in other cases, New Hampshire Youth Movement

14   is looking for information back 20 years.

15               And something the plaintiffs don't appreciate yet is

16   a lot of this information is on legacy databases.  The

17   statewide voter registration system is -- is new now, but the

18   old system which I believe was called ElectioNet, that system

19   was replaced in 2024.

20               And so some of the information that they've

21   requested that goes back many years and I think way beyond the

22   permissible scope of discovery, some of that will require

23   engaging Deal-IT, a separate agency that is not the -- the

24   Secretary of State, that is not the Attorney General's Office,

25   and getting them to do background reports to provide

1   information.

2           You know, we're happy to work with and, of course,

3   we will engage in meet-and-confers to try and narrow scope and

4   to get information to the plaintiffs as efficiently as we can,

5   but I should alert them and the Court to it's not -- it's not

6   so simple.  There is a lot of information here and we do need

7   to narrow things down.  And we'll work with them to do so.

8           THE COURT:  Yeah.  I mean, can you -- is it possible

9   for the -- for you to work with the -- the two plaintiffs to

10  figure out, you know, is there some way that we can consolidate

11  these requests to simplify this?

12          MR. DEGRANDIS:  Well, that was my -- my hope of this

13  hearing today, what I was going to ask in fashioning discovery

14  with the -- to get a consolidated discovery plan together.

15  That, you know, let's get the two plaintiffs together to -- to

16  propose a good plan moving forward and to require the

17  plaintiffs to meet and confer first and provide a

18  consolidate -- provide consolidated discovery requests to us.

19  That way, you know, I would only be -- so, you know, I wouldn't

20  have to debate the issue of temporal scope, for example, that's

21  an easy one, in two different levels in two separate cases

22  that -- it's obviously inefficient for us and I think it's

23  inefficient for the Court as well.  I think it's inefficient

24  for the plaintiffs.  And those sorts of things really do put

25  trial dates at risk as they pile up.  Obviously no single

1    instance.

2              But it would be very helpful to have the plaintiffs

3    get together and provide us, you know, with one document with

4    which they've met and conferred because much of the information

5    is the same.  So let's figure out what is the same so we only

6    need to respond once.  That -- that is our preference.  That's

7    what we would -- we would hope.  If we can't go down that way,

8    that's fine, we'll deal with it, but --

9              MR. KLEMENTOWICZ:  So from my perspective, your

10   Honor, sitting here today, I don't think we have plans for

11   additional tranches of discovery requests.  That could change,

12   right, depending on what we see or as the case evolves or, you

13   know, there's efforts in the legislature to change this bill.

14   There's an effort in Congress to pass a federal version of this

15   law that, you know, I -- I don't even know how that would

16   impact our case if we're like bringing in -- I don't know.

17             So that could change.  But all this to say going

18   forward, I would be happy to do that if both cases survive, to

19   work and see if we can -- you know, for the plaintiffs' second

20   set of interrogatories, see if we can do that.

21             My concern is what I don't want -- we served our

22   requests a number of weeks ago.  We agreed to an extension in

23   time for the responses up until next week.  I don't want to

24   like restart the clock on that because the time is where we

25   are.

1      So going forward, I'm -- I'm open to what Attorney

2 DeGrandis says, but I -- I would object to doing that on a

3 retroactive basis.

4      THE COURT:  Yeah, I mean, there might be a simple

5 solution to this which is that whatever -- Attorney DeGrandis,

6 whatever you send to the Coalition for Open Democracy

7 plaintiffs, send it to the other plaintiffs and then, Attorney

8 Fox, your requests are filling in whatever gaps you perceive so

9 that you're not -- you're not asking duplicative questions and

10 you're not -- you're not asking the state -- because I'm sure

11 you just don't know where the overlap is and --

12      MR. FOX:  Correct.

13      THE COURT:  You're not trying to make this as

14 complicated as possible.  I mean, I'm assuming.

15      MR. FOX:  No, that's exactly right, your Honor.  We

16 don't know what the Open Democracy folks have asked for.  We

17 don't -- and we're happy to confer to try to eliminate those

18 temporal differences where it's easy to -- you know, there may

19 be situations where we really think we do need the extra data,

20 and we'll confer on them, we understand the burden, and I

21 suspect we'll be able to work it out.

22      THE COURT:  Yes.  Is there any objection, by the

23 way, from the Open Democracy plaintiffs, is there any objection

24 to the state just sending a duplicate of the responses directly

25 to the New Hampshire Youth Movement?

1          MR. KLEMENTOWICZ:  I can't think of any reason why

2    we would object and even if we did, they're government

3    documents and I don't think I could -- I mean, actually,

4    Attorney DeGrandis and I had this conversation.  And I -- you

5    know, if the Attorney General wanted to post the responses to

6    our interrogatories on the Internet, I don't think I could stop

7    them.  So I don't object to that.

8          I'll also add we're happy to work cooperatively, as

9    I'm sure everyone on this call is, in depositions to make sure

10   that deponents aren't appearing multiple times.  I don't think

11   anyone wants that.

12         THE COURT:  Okay.  And, now, hold on a second.

13         So, Attorney Fox, that might solve some of your,

14   like, late start problem --

15         MR. FOX:  Yes.

16         THE COURT:  -- and, Attorney Lehmann, that gets you

17   a bunch of information if -- if it's true that the Attorney

18   General could post this on the Internet, he can send you those

19   responses, too.

20         MR. LEHMANN:  I believe that's correct, your Honor.

21         THE COURT:  Everybody wins.

22         MR. KLEMENTOWICZ:  We could.  But, like, our

23   responses, I don't think we would post on the Internet and --

24         THE COURT:  One step at a time.

25         MR. KLEMENTOWICZ:  I'm sorry, your Honor.

1          THE COURT:  One step at a time.  The only responses

2    we have thus far are the state's responses.

3          MR. KLEMENTOWICZ:  Yes.

4          THE COURT:  So at the beginning of this, I mean, at

5    least one step at a time.  I'm just saying for Attorney

6    Lehmann's sake that what we can share, we -- we should share.

7          MR. LEHMANN:  Thank you.

8          THE COURT:  And then -- and then we can -- like,

9    what -- what we can't share or what we shouldn't share -- I'm

10   not creating an entitlement.

11         MR. KLEMENTOWICZ:  I understand.

12         THE COURT:  I'm just saying that if it's public --

13   if this is all public, there's no reason to make our amici go

14   through, you know, all of the publicly available documents to

15   re-create what's already been -- what's already been

16   accumulated.  And so I'm perfect -- I'm perfectly comfortable

17   with that, unless there's an objection to that.

18         Attorney Klementowicz, do you have an objection to

19   that?

20         MR. KLEMENTOWICZ:  I do not have an objection to the

21   state sharing its data with the Republicans.

22         THE COURT:  And I have not gone any further than

23   that.

24         MR. KLEMENTOWICZ:  Yup.

25         THE COURT:  That's the limit to what I'm suggesting.

1           MR. KLEMENTOWICZ:  Yup.

2           THE COURT:  Okay.  Okay.

3           Oh, trial.  I understand that the state has

4  requested in the proposed discovery plans a jury trial in this

5  case.

6           MR. DEGRANDIS:  That's -- it's our intention to, you

7  know, to reserve the right to request that.  We haven't gone

8  far enough down that road and we filed our proposed discovery

9  plan, I think it was December -- I think it was before December

10  or around December 20th.  That was very, very early on.  And

11  I'm aware that we may not have a right to a jury trial.  We

12  just wanted to put that out there, that at least at that -- at

13  that time we were thinking that a jury trial may be best for

14  our -- for our defense, frankly.  That's where we were landing.

15           THE COURT:  Okay.  But now you're not so sure you

16  have a right to a jury trial.

17           MR. DEGRANDIS:  Oh, no, it's that we have not had an

18  internal discussion about that at all.  So I would need to talk

19  to clients about this and --

20           THE COURT:  Okay.

21           MR. DEGRANDIS:  -- we need to have that discussion.

22           THE COURT:  You're not waiving anything today.

23           MR. DEGRANDIS:  We are not waiving anything at this

24  time.

25           THE COURT:  Okay.  I guess I'll tell you I'd have to

1  be convinced that you have that right.

2         MR. DEGRANDIS:  Okay.

3         THE COURT:  Okay.  For now, I'll have to figure out

4  how we'll schedule it because my -- my bench trial periods are

5  not the same as my jury trial periods.  So --

6         MR. DEGRANDIS:  Your Honor, may I then suggest,

7  since we are filing a -- a new proposed discovery plan next

8  week, we'll just prioritize taking that question seriously as

9  to whether that's something that we will actually pursue.  So

10 we'll be committed to a position one way or another within the

11 next week.

12        THE COURT:  Okay.  I appreciate that.  Yeah, and

13 then just pick -- and, you know, you just have to pick one of

14 my trial periods.  The only trial periods listed on our website

15 are jury trial periods.  Mine are always the last two weeks of

16 the month, so that's what's listed on the website.  You can

17 just assume that the first two weeks of every month are bench

18 trial periods.  So we'll fit you in on the others.

19        I -- is everybody kind of assuming that this is a

20 summary judgment case or is this really a trial case.

21        MR. KLEMENTOWICZ:  So, first, I -- and maybe I

22 should call your case manager afterwards because I did not know

23 that we could look up your trial periods and I do not know how

24 to do that.  So I will figure that out.

25        THE COURT:  It's not hard and once you learn it,

1    it's just right on the -- it's right on our website.  I won't

2    walk you through you it right now because I don't think

3    everybody needs the lesson --

4            MR. KLEMENTOWICZ:  Sure.

5            THE COURT:  -- but it's right there.  So --

6            MR. KLEMENTOWICZ:  I will call Mr. Negron at some

7    point.

8            I don't think this is a summary judgment case.

9            THE COURT:  You don't.  Okay.  That's great.  We --

10   we love trials.  It's a trial court.  So, you know, that's

11   always music to my ears that you guys want to have a trial.

12           MR. KLEMENTOWICZ:  In my experience, and I don't

13   know if Attorneys Cheung or Pierce wanted to chime in

14   differently as they're the voting experts on this call from our

15   end, but my understanding of these cases is that typically what

16   happens is there may or may not be a summary judgment effort

17   from the defense, but usually not necessarily from the

18   plaintiffs and that when plaintiffs prevail, it's typically at

19   trial.

20           THE COURT:  Okay.

21           MR. FOX:  And I would just add the reason for that

22   is because the balancing in the *Anderson Burdick* standard ends

23   up being extremely fact-intensive and so, like, in our

24   experience, courts can be quite reluctant to grant summary

25   judgment under that standard.

1            THE COURT:  Understood.  I just wasn't entirely

2   certain that there would be facts in dispute in this particular

3   one.  But we'll -- we shall see.

4            I'm not -- and not that I've prejudged it; I just

5   mean that given -- given that it's a very narrow, you know, set

6   of facts, so -- am I wrong?

7            MR. KLEMENTOWICZ:  I anticipate there will be some

8   dispute over how burdensome --

9            THE COURT:  Fair.  Okay.

10            MR. KLEMENTOWICZ:  -- the law is on people and what

11   effect that's going to have on voters in the future.

12            THE COURT:  Okay.

13            MR. KLEMENTOWICZ:  The battle-of-the-experts-type

14   thing.

15            THE COURT:  Yup.  Okay.  Well, I look forward to it.

16            Okay.  So, yeah, I don't -- I don't really have

17   anything else on my list.  I know that was a long list.

18            Again, my only -- but my only last thing I want to

19   say is just that I -- I know, again, that this is -- there has

20   been some delay here.  I apologize again for that.  It really

21   was out of character and I hope, you know, you will find that

22   it was out of character.

23            And I am generally available.  If something is going

24   sideways, I want to know about it.  I'm there to try to help

25   resolve it, to keep things on track.

1         If you are having -- if you are finding that you are

2    not -- you're not able to cooperate or you're talking past each

3    other, don't get into, you know, a battle of emails or a battle

4    of letters.  Get me involved earlier and let's see if we can

5    work it out.  If we can't, we can't.  Or if you need to

6    paper -- you know, if you need to paper the pleadings because

7    you're anticipating an appeal, that's okay.  I respect that.  I

8    know that happens sometimes.

9         But -- but don't needlessly, you know, spend until

10   midnight drafting things up that could be solved by a 20-minute

11   Zoom, because I -- because I -- I don't want that happening for

12   you.  I don't want that happening for access to the courts.  I

13   don't want that happening for the -- for the waste of

14   resources, because there's a lot of lawyers and it's -- it's

15   government resources, it's private resources, it's, you know,

16   nonprofit resources.  There's a lot going on here and I don't

17   want to waste those.

18        So if we -- so to the extent that we can cut through

19   all of that and just get to the heart of the matter, that would

20   be my preference and so I stand at the ready to make that

21   happen for you, if we can do that, and just figure out the

22   solution to this problem, whatever it -- whatever that solution

23   might be.  Okay?

24        Is there anything else that you guys wanted to cover

25   today?

1          MR. KLEMENTOWICZ:  No, your Honor.  I just wanted to

2    make sure -- I think I understand with respect to the

3    forthcoming motion to compel that you -- given that the State

4    feels that the defendants feel that they need a court order

5    that you're not expecting us to go through your informal

6    discovery --

7          THE COURT:  I'm not.

8          MR. KLEMENTOWICZ:  Okay.

9          THE COURT:  If the state feels -- I mean, if the

10   state feels, and you agree, that they're really just going to

11   need an order from a court, that that's the way to handle it,

12   that's what we'll do it.

13          I would commend you to think hard about what the

14   state said about the timing of that.

15          MR. KLEMENTOWICZ:  Uh-huh.

16          THE COURT:  It might make sense to wait until you

17   get an order on the motion to dismiss because I don't want to,

18   again, waste time and resources litigating whether the pending

19   motion to dismiss affects my ability to issue an order on the

20   motion to compel.

21          MR. KLEMENTOWICZ:  I -- I certainly understand that,

22   your Honor.  It's just our expert deadline -- and we're

23   obviously going to be submitting a new plan, but our current

24   expert deadline is May 14th.

25          THE COURT:  Okay.

1           MR. KLEMENTOWICZ:  And so that's -- that's why we've

2     been trying to speed this up.  And I will say this.  The DOJ

3     attorneys have been very understanding of our time pressures

4     and willing to work with us.

5           THE COURT:  Okay.  And keep in mind that the oral

6     arguments on the motions to dismiss, I understand that the

7     New Hampshire Youth Movement motion to dismiss might be delayed

8     if there's a -- if there's an amendment, if there's a motion to

9     amend that complaint.  That whole -- that whole -- that line

10    might be delayed.  You are not on that same schedule, and we

11    might be able to move much more quickly.  The only thing we'd

12    be waiting for would be some briefing from the amici.  So

13    that's 14 days for them to submit that.  And then once that

14    comes in, all we have to do at that point is decide whether or

15    not either the state or the plaintiff wants to respond to that

16    briefing and then that will be scheduled for argument.

17          So I'm going to try to turn that around as quickly

18    as I can to get you an order on that.  If what you want to do

19    is brief up your -- brief up your -- your motion to compel, I

20    will tell you, Attorney DeGrandis, maybe don't waste time on

21    the argument that -- with the pending motion to dismiss because

22    what we can do is if I'm going to grant the motion to dismiss,

23    the whole thing's mooted out anyway.

24          MR. DEGRANDIS:  Okay.  That makes sense.

25          THE COURT:  And so you don't need to brief that up.

1          MR. DEGRANDIS:  Okay.

2          THE COURT:  And if I deny the motion to dismiss,

3     then we can just issue -- then we can just deal with the issue

4     that's actually in the motion to compel.

5          MR. DEGRANDIS:  Okay.  Sounds good.

6          THE COURT:  So that way you're not waiting -- you're

7     not waiting for that to happen.  It's just an idea, not -- I'm

8     not trying to compromise any of your rights.  Everybody, of

9     course, can submit any arguments that they want.  You know,

10    this isn't -- this isn't something that I'm -- I'm not trying

11    to foreclose any arguments you might lawfully have.

12         MR. DEGRANDIS:  Okay.

13         THE COURT:  Okay.

14         MR. DEGRANDIS:  Thank you.

15         THE COURT:  Okay.  Anything else from anybody?

16         Attorney Lehmann, no?

17         MR. LEHMANN:  I'm just -- so we -- you've given us

18    14 days to file whatever we want to file relative to motions to

19    dismiss in both cases --

20         THE COURT:  Correct.

21         MR. LEHMANN:  -- but it also sounds likely that

22    there may be an amended complaint in the Youth Movement case.

23    So --

24         THE COURT:  We'll know by Tuesday.

25         MR. LEHMANN:  We'll know by Tuesday.  Okay.  So

1    that's -- if -- and so we'll know whether there's going to be a

2    amendment or we'll have the amended complaint?

3           THE COURT:  No.  What will happen was -- what will

4    happen is Attorney Fox will let the Court know by Tuesday

5    whether they're going to amend the complaint.  We'll just have

6    an -- we'll just have an endorsed order that New Hampshire

7    Youth Movement has notified the Court that they intend -- that

8    it intends to amend the complaint.  The amendment, if any,

9    shall be filed on or before X date.  And I'm --

10          MR. LEHMANN:  Okay.

11          THE COURT:  And how long do you think you would need

12   to file the amendment?  Did we -- we didn't talk about that.

13          MR. FOX:  I think --

14          THE COURT:  I'm not inclined to give it very long.

15          MR. FOX:  No, I agree, and we would want to move

16   quickly as well.  I would like to have seven days from Tuesday,

17   so the next Tuesday, although I suspect we would probably try

18   to file it sooner than that.

19          THE COURT:  Okay.  So quickly.  So Tuesday to let us

20   know, that's 3/11, and then Tuesday, 3/18, to file the

21   amendment.

22          And obviously you're going to get this endorsed

23   order that lays out -- and we -- someone's probably going to

24   tell me I'm crazy and we're going to end up doing just a brief

25   order that's actually a piece of paper that lays all of these

54

1    dates.  I don't know.  They -- they control me and tell me the

2    best way to do it because I always make these promises that

3    it's going to be endorsed and then it's too long.

4                But if I -- if you end up with a deadline that isn't

5    working, talk to each other and then just let me know.  Just

6    file a motion to continue the deadline.  Like I said, I'm going

7    to try to be reasonable about all of those things.  I'm trying

8    to work with your schedules.  So don't -- don't hold yourself

9    to something that's unworkable for no reason.  Okay?

10               Anything else?  Okay.  Okay.  Thank you all.  Thank

11   you for your patience.  Thank you for the cooperation you've

12   already shown and in advance for the cooperation that I know

13   you're going to continue to show.

14               MR. KLEMENTOWICZ:  Thank you, your Honor.

15               MR. DEGRANDIS:  Thank you, your Honor.

16               MR. FOX:  Thank you, your Honor.

17               THE COURT:  Have a nice weekend.

18               (Proceedings concluded at 4:10 p.m.)

19

20

21

22

23

24

25

C E R T I F I C A T E


        I, Liza W. Dubois, do hereby certify that

the foregoing transcript is a true and accurate transcription

of the within proceedings, to the best of my knowledge, skill,

ability and belief.


Submitted: 3/31/25              /s/  Liza W. Dubois
                               LIZA W. DUBOIS, RMR, CRR