## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| NEW HAMPSHIRE YOUTH MOVEMENT, | |
| *Plaintiff*, | |
| v. | Case No. 1:24-cv-00291-SE-TSM |
| DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State, | |
| *Defendant*. | |

## DEFENDANT SECRETARY OF STATE SCANLAN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

### INTRODUCTION

An American citizen's fundamental right to vote, and to do so on equal footing with fellow citizens, is the practical manifestation of the principle of one person, one vote.[1] The United States Supreme Court has warned that voting rights "can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."[2] Accordingly, federal law prohibits noncitizens from voting in elections for federal offices.[3] Likewise, New Hampshire law prohibits noncitizens from voting in state elections.[4] "There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters."[5]

The purpose of House Bill 1569 ("HB 1569") is to prevent debasement and dilution of New Hampshire citizens' votes.[6] It does so by requiring each prospective voter to present

---

[1] *See Rucho v. Common Cause*, 588 U.S. 684, 731, (2019) (citing *Reynolds v. Sims*, 377 U. S. 533, 566 (1964)).

[2] *See id.* (quoting *Reynolds*, 377 U. S. at 555) (internal quotations omitted).

[3] *See* 18 U.S.C. § 611.

[4] *See* RSA 654:1.

[5] *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008).

[6] *See* Sen. Election Law & Muni. Affairs Comm. H'rg at 1-2 (Apr. 23, 2024) (Rep. Bob Lynn) (explaining that proof of citizenship is important to election integrity and preventing fraud). The Senate hearing notes are attached as Exhibit A. The Secretary offers Exhibit A for context only.

documentation that he or she satisfies the voting qualifications set forth in long-standing federal and state law.[7]  Documentation may include a birth certificate, passport, naturalization papers, "or ***any other reasonable documentation*** which indicates the applicant is a United States citizen."[8]  This proof-of-citizenship requirement is far from burdensome, and to Defendant Secretary of State's knowledge, no applicant has been denied voter registration for failure to present citizenship documentation since HB 1569 went into effect.[9]

On behalf of itself and its members, Plaintiff New Hampshire Youth Movement ("Youth Movement") contends that HB 1569 is unconstitutional.[10]  The organization's premise is that requiring a prospective voter to prove that he or she is a citizen imposes an undue burden on that person.[11]  On the contrary, HB 1569's proof-of-citizenship requirement is constitutional for several reasons, not the least of which being the law's direct relation to voter qualifications and its flexibility with respect to accepting any reasonable citizenship documentation.[12]

But the merits of Plaintiff's arguments are not yet before the Court because Youth Movement does not have standing to bring this lawsuit.  A plaintiff's standing is a constitutional imperative, and a "threshold question in every federal case, determining the power of the court to entertain the suit."[13]  The Court does not have the power to adjudicate this matter because Youth Movement has not demonstrated that HB 1569 has caused the organization a legally cognizable

---

[7]  RSA 654:12, I.

[8]  RSA 654:12, I(a) (emphasis added).

[9]  Youth Movement alleges that "In the single election held since then—the local elections on March 11, 2025—HB 1569 has already disenfranchised and substantially burdened many citizens attempting to vote."  ECF No. 50, ¶ 2.  Youth Movement does not identify anyone who could substantiate this claim.

[10]  *See* ECF No. 50, ¶ 8.

[11]  *See id.*

[12]  *See Crawford*, 553 U.S. at 191.

[13]  *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

injury.[14]  It complains that Youth Movement has diverted its resources in response to HB 1569, but diverted resources are not concrete injuries for the purposes of Article III standing.[15]

Youth Movement also lacks standing in a representative capacity because it has not demonstrated that HB 1569 has caused the organization's members legally cognizable injuries.[16] Four of the five members Youth Movement identified in its Amended Complaint are currently registered voters who are not subject to HB 1569's proof-of-citizenship requirement.[17]  The fifth member will be subject to HB 1569's proof-of-citizenship requirement upon reaching the age of 18, but Youth Movement has not alleged how HB 1569 will place comparatively greater burdens on him than the burden imposed by Youth Movement's requested relief in this lawsuit— execution of a Qualified Voter Affidavit.[18]

This lawsuit is a pre-enforcement facial challenge to the constitutionality of New Hampshire law.[19]  As such, it requires specific allegations to establish standing, including imminent concrete and particularized harm to Youth Movement's organizational purpose and its members.[20]  Youth Movement has not satisfied its burden, so the Court should dismiss the Amended Complaint with prejudice.  Alternatively, if the Court were to find that Youth Movement has standing, the Court should nevertheless dismiss the Amended Complaint because it does not state a claim upon which the Court may grant relief.

## STANDARD OF REVIEW

Federal courts presume that causes of action lie outside their limited Article III constitutional authority, and plaintiffs have the burden to establish subject-matter jurisdiction by

---

[14] *Equal Means Equal v. Ferriero*, 3 F.4th 24, 30 (1st Cir. 2021).
[15] *Compare* ECF No. 1, ¶¶ 17-19 *with FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024).
[16] *Equal Means Equal*, 3 F.4th at 27-28.
[17] ECF No. 50, ¶¶ 20-25.
[18] *Id.* ¶¶ 26-27.
[19] *See Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016).
[20] *See All. for Hippocratic Med.*, 602 U.S. at 381.

a preponderance of the evidence. *See Spencer v. Doran*, 560 F. Supp. 3d 648, 651 (D.N.H. 2021) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "[S]tanding is a prerequisite to a federal court's subject matter jurisdiction." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016). "[W]here standing is at issue, heightened specificity is obligatory at the pleading stage[.]" *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (quoting *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992)). So, a defendant may assert a facial challenge to the sufficiency of a plaintiff's jurisdictional allegations pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Ives v. Bath & Body Works, LLC*, No. 23-cv-432, 2024 U.S. Dist. LEXIS 70611, *1-2 (D.N.H. Apr. 18, 2024) (citing *Freeman v. City of Keene*, 561 F. Supp. 3d 22, 25 (D.N.H. 2021)). Such motions to dismiss challenge whether a complaint "set[s] forth reasonably definite factual allegations, either direct or inferential, regarding each material element needed to sustain standing." *See Draper*, 827 F.3d at 3 (quoting *AVX Corp.*, 962 F.2d at 115).

In a facial jurisdictional challenge, a defendant raises questions of law without contesting a complaint's alleged jurisdictional facts. *See Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 (1st Cir. 2021). Courts analyze these challenges in the same way they analyze Rule 12(b)(6) assertions that a complaint fails to state claims. *Id.* A court must "accept the well-pleaded facts alleged in the complaint as true and ask whether the plaintiff has stated a plausible claim that the court has subject matter jurisdiction." *Id.* (citing *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15, 23 (1st Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations

omitted).  A court "need not credit a plaintiff's threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678) (cleaned up).

## RELEVANT FACTUAL BACKGROUND

New Hampshire enacted House Bill 1569 to ensure the integrity of New Hampshire elections.  *See* Ex. A at 1-2 (Rep. Bob Lynn) (explaining that proof of citizenship is important to election integrity and preventing fraud).  Among other things, the new law requires voter registration applicants to provide proof of United States citizenship through a birth certificate, a United States passport, or naturalization papers.  RSA 654:12, I(a).  The law also offers applicants alternatives to these self-authenticating proof-of-citizenship documents by allowing other reasonable documentation to establish that they are United States citizens.  *Id.*  New Hampshire law, therefore, no longer permits applicants to submit affidavits to unilaterally profess their voter qualifications.  *See, e.g.*, Ch. 378, HB 1569-FN (Final Version) (redlines to RSA 378:7).[21]

Plaintiff New Hampshire Youth Movement is a nonprofit membership organization with 129 members who joined to advance the policy goals of "increasing wages, decreasing costs of education, housing and medical care, and combatting climate change."  ECF No. 50, ¶ 17. The organization asserts that HB 1569 violates the First and Fourteenth Amendments to the United States Constitution by placing an undue burden on the fundamental right to vote.  *Id.* ¶¶ 77-82.  It alleges that Youth Movement must divert its resources away from existing activities to support "new efforts to combat the harms caused by the law [HB 1569]."  *Id.* ¶ 18.  The First

---

[21]  The final approved version of HB 1569 is attached hereto as Exhibit B.

Amended Complaint does not identify any "new efforts" that it will undertake as a consequence of HB 1569.

## ARGUMENT

New Hampshire Youth Movement has not satisfied its burden to establish this Court's subject-matter jurisdiction in at least two respects. First, Youth Movement does not have organizational standing because HB 1569 does not directly impede Youth Movement's mission or activities. Second, Youth Movement cannot proceed in a representative capacity because (a) its members do not have standing to sue in their own right; (b) the challenge to HB 1569 is not germane to Youth Movement's organizational purpose; and (c) the First Amended Complaint does not provide sufficient detail to determine whether the nature of the claim and the relief sought requires individual member participation.

For the reasons explained below, Youth Movement does not have standing to assert its challenge to HB 1569, but were the Court to conclude differently, it should nevertheless dismiss the Amended Complaint because the organization fails to state a claim upon which the Court may grant relief.

## I. New Hampshire Youth Movement Does Not Have Direct Organizational Standing Because House Bill 1569 Has Not Caused It to Suffer a Legally Cognizable Injury

Youth Movement has not established that it has direct organizational standing to "bring[] this lawsuit on behalf of itself, to protect its investments in its critical voter registration and get-out-the-vote programs[.]" *Contra* ECF No. 50, ¶ 8. An organization may assert its own standing to sue in federal court, but the organization must "satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393-94 (2024) (citing *Havens Realty Corp. v. Coleman*, 455 U. S. 363, 378-79 (1982)).

Youth Movement does not satisfy these fundamental threshold requirements necessary to establish Article III standing.

### A.    Youth Movement Has Not Suffered Injury-in-Fact Because House Bill 1569 Does Not Regulate Youth Movement's Mission or Core Activities

Where a law or governmental action does not directly impose an impediment to an organization's ability to provide services to achieve its mission, the organization has not suffered injury-in-fact.  *See All. for Hippocratic Med.*, 602 U.S. at 393-94.  Injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  *See, e.g.*, *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (internal quotations omitted).  As the Supreme Court has explained:

> [l]ike an individual, an organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct, no matter how longstanding the interest and no matter how qualified the organization[.]

*All. for Hippocratic Med.*, 602 U.S. at 394 (internal quotations and citations omitted).  Indeed, "an organization cannot establish standing if the 'only injury arises from the effect of [a challenged action] on the organizations' lobbying activities, or when the service impaired is pure issue-advocacy.'"  *Equal Means Equal v. Ferriero*, 3 F.4th 24, 30 (1st Cir. 2021) (quoting *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093-94 (D.C. Cir. 2015)) (quotations omitted).  Youth Movement cannot establish standing because it merely asserts that HB 1569 makes its "voter registration program [] more difficult[.]"[22]  *Contra* ECF No. 50, ¶ 18.

---

[22]  Youth Movement also asserts that HB 1569 could cause its services to be "fatally undermined," but this is rhetorical hyperbole, not a factual allegation or legal argument.  *See* ECF No. 50, ¶ 18.  Youth Movement only alleges that HB 1569 compels the organization to "add steps to ensure that the voters who pledge to vote in the PTV

Youth Movement alleges that it has 129 dues-paying members.  *Id.* ¶ 15.  Its "mission is to strengthen the influence of its members and constituents who share common values by helping them navigate the political system and rise to positions of political power and governance."  *Id.* ¶ 14.  Youth Movement describes its "pledge-to-vote ('PTV'), voter-registration ('VR'), and get-out-the-vote ('GOTV') programs" as "core" activities to achieve its mission.  *Id.*  It takes credit for 9,036 voter registrations and for driving 1,233 voters to the polls, in 2024.  *Id.* ¶ 17.  The organization alleges that it "invests heavily" in "voter education, including by running in-person, social media, text banking, and other digital messaging campaigns[,]" to advance its policy goals which include "increasing wages, decreasing costs of education, housing and medical care, and combatting climate change."  *Id.*  Youth Movement also asserts that its "voter education programs reached more than 115,000 people in the state" in 2024.  *Id.*

Even accepting the foregoing allegations as true for the limited purpose of this Motion to Dismiss, Youth Movement has not plausibly alleged that it has suffered a legally cognizable injury.  In *FDA v. Alliance for Hippocratic Medicine*, the Supreme Court considered whether pro-life medical associations and doctors had standing to challenge the FDA's relaxed regulatory requirements for an abortion drug.  *All. for Hippocratic Med.*, 602 U.S. at 373.  The associations alleged that they had standing to challenge the FDA's regulation because the FDA "impaired their ability to provide services and achieve their organizational missions."  *Id.* at 394 (internal quotations omitted).  They asserted that the FDA "'caused' the associations to conduct their own studies … so that the associations [could] better inform their members and the public about [the drug's] risks."  *Id.*  The associations said that the FDA "'forced' the associations to 'expend

---

program have the documentation that they need to register, or a plan to get it, and that the voters whom Youth Movement transports to the polls in the GOTV program have the required documentation with them[,]" and to revise its education programs.  *Id.*

considerable time, energy, and resources' drafting citizen petitions to FDA, as well as engaging

in public advocacy and public education." *Id.* All of this, the plaintiffs asserted, would result in

considerable resource reallocation "to the detriment of other spending priorities." *Id.*

The Court unanimously held that the associations lacked standing. The Justices

explained that "[a] plaintiff must show 'far more than simply a setback to the organization's

abstract social interests.'" *Id.* (quoting *Havens Realty Corp. v. Coleman*, 455 U. S. 363, 379,

n.19 (1982)). The Court reasoned that:

> an organization that has not suffered a concrete injury caused by a defendant's
> action cannot spend its way into standing simply by expending money to gather
> information and advocate against the defendant's action. An organization cannot
> manufacture its own standing in that way.

*Id.* The principal rule of *Hippocratic Medicine* is that where a governmental action does not

impose a direct impediment to an association's advocacy, the association has not suffered injury.

*See id.* at 395.

Youth Movement characterizes HB 1569's documentation of voter registration eligibility

as "onerous," but HB 1569 does not impose ***any*** requirements on Youth Movement. ECF

No. 50, ¶ 18; Ex. B. Youth Movement's voluntary resource diversion toward updating its

educational programs and public messaging is not a perceptible impairment of Youth

Movement's ability to carry out its mission. *See Havens Realty Corp.*, 455 U.S. at 379. The

organization is not eliminating its pre-existing PTV, VR, GOTV, or voter education efforts, it is

enhancing them. ECF No. 50, ¶ 18. This budgetary choice is a voluntary ***response to*** HB 1569,

not a required change to its operations as a ***consequence of*** HB 1569. *La. See Fair Hous. Action

Ctr., Inc. v. Azalea Garden Props., L.L.C.*, 82 F.4th 345, 351 (5th Cir. 2023) ("The

organization's purportedly injurious counteractions must 'differ from its routine [] activities.'")

(citations omitted); *see also Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 447 (2d

Cir. 2021) (holding that an organization does not suffer injury-in-fact where its diverted resources do not depart from its current mission-supporting activities). Youth Movement may not manufacture its own standing in this way.

**B.     Youth Movement's Purported Harm Cannot Be Fairly Traced to House Bill 1569's Documentation of Voter Registration Eligibility, nor Can the Court Redress the Purported Harm with a Favorable Decision**

As explained in Section I(A) above, the Court does not have subject-matter jurisdiction to adjudicate this case because Youth Movement has not suffered injury-in-fact. *See Town of Milton v. FAA*, 87 F.4th 91, 95 (1st Cir. 2023) (noting that if a plaintiff fails to show any one of the three elements required to demonstrate standing, the court lacks jurisdiction). Youth Movement's alleged injuries are too attenuated from HB 1569's regulation of third parties— prospective voters—to fairly trace Youth Movement's purported harm to HB 1569. *See All. for Hippocratic Med.*, 602 U.S. at 382-83; *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020); *Am. Postal Workers Union v. Frank*, 968 F.2d 1373, 1375 (1st Cir. 1992). Moreover, since redressability is a function of injury, there is nothing for this Court to redress in a favorable decision. *See California v. Texas*, 593 U.S. 659, 672-73 (2021). Accordingly, Youth Movement may not proceed on its own behalf.

**II.    New Hampshire Youth Movement Does Not Have Associational Standing Because Its Members Do Not Have Standing in Their Own Right, HB 1569 Is Not Germane to Its Organizational Purpose, and the Organization's Claim May Require Individual Member Participation**

Youth Movement has not established that it has associational standing to bring this lawsuit "on behalf of its members and constituents who have and who will face burdens under HB 1569's proof of citizenship requirement." *Contra* ECF No. 50, ¶ 8. Associational standing requires Youth Movement to "establish each part of a familiar triad: injury, causation, and redressability." *Equal Means Equal v. Ferriero*, 3 F.4th 24, 27-28 (1st Cir. 2021) (quoting *Katz*

*v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012)) (internal quotations and citations omitted).

Youth Movement must also demonstrate that (a) its members would otherwise have standing to

sue in their own right; (b) its claim is germane to its purpose; and (c) neither its claim nor the

relief it seeks requires its members to participate individually. *Id.* (quoting *Hunt* v. *Wash. State*

*Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)) (internal quotations and citations omitted).

Youth Movement does not have standing because it has not sufficiently alleged any of these

standing prerequisites.

> **A.    Youth Movement's Members Do Not Have Standing to Challenge House Bill 1569 in Their Own Right**

At least one of Youth Movement's members must have individual standing, to confer

associational standing to Youth Movement. *Housatonic River Initiative v. United States EPA*,

175 F.4th 248, 265 (1st Cir. 2023) (quoting *Animal Welfare Inst. v. Martin*, 623 F.3d 19, 25 (1st

Cir. 2010)). To establish a member's individual standing, the organization must plausibly allege

that a member: (1) has suffered an injury in fact that is concrete, particularized, and actual or

imminent; (2) that the injury is fairly traceable to HB 1569; and (3) that the alleged injury will

likely be redressed by a favorable judicial decision. *See id.* (citing *Plazzi v. FedEx Ground*

*Package Sys., Inc.*, 52 F.4th 1, 4 (1st Cir. 2022)). Youth Movement has not named a member

who can plausibly allege that HB 1569 has caused him or her injury-in-fact.

To adequately establish injury-in-fact, an individual must allege a concrete injury,

"meaning that it must be real and not abstract." *All. for Hippocratic Med.*, 602 U.S. at 381

(citing *TransUnion LLC*, 594 U.S. at 424); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)

(citing Webster's Third New International Dictionary 472 (1971) and Random House Dictionary

of the English Language 305 (1967)); *Town of Milton v. FAA*, 87 F.4th at 95 ("To be concrete,

'the asserted harm [must have] a 'close relationship' to a harm traditionally recognized as

11

providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including … reputational harm.'") (citations omitted). The concrete injury must also be particularized, meaning that it "must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance." *All. for Hippocratic Med.*, 602 U.S. at 381 (quoting *Lujan*, 504 U. S. at 560 n.1). "The requirement that a plaintiff must adduce facts demonstrating that he himself is adversely affected guarantees that 'the decision as to whether review will be sought [is] in the hands of those who have a direct stake in the outcome[.]'" *Hochendoner*, 823 F.3d at 732.

Furthermore, the alleged concrete and particularized injury must be actual or imminent and not speculative, "meaning that the injury must have already occurred or be likely to occur soon." *All. for Hippocratic Med.*, 602 U.S. at 381 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). The United States Supreme Court has "repeatedly reiterated that 'threatened injury must be ***certainly impending*** to constitute injury in fact,' and that '[a]llegations of ***possible*** future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) and collecting cases)) (emphasis in original). Imminence "cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is ***certainly*** impending." *Id.* (quoting *Lujan*, 504 U.S. at 565 n.2 (emphasis in original; internal quotations omitted).

### 1.    Youth Movement's Members Cannot Manufacture Standing by Voluntarily Erecting Barriers to Compliance with House Bill 1569

"A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979). So, a plaintiff cannot rely on self-inflicted harm to establish injury-in-fact. *See Clapper*, 568 U.S. at 416. Youth Movement has not plausibly alleged that HB 1569

will cause its members to suffer injury-in-fact because each named member has documentary proof of citizenship. ECF No. 50, ¶ 21 (Montagano), ¶ 23 (Sumner), ¶ 24 (Barry), ¶ 25 (Wyman), ¶ 26 (Musick). The members' only purported injury is the inconvenience of the place and manner in which the members have unilaterally chosen to retain their citizenship documentation.[23] *Id.* ¶ 27. This allegation does not satisfy Youth Movement's burden to establish its members' individual standing.

In *Clapper v. Amnesty International USA*, individuals and organizations challenged the constitutionality of Section 702 of the Foreign Intelligence Surveillance Act of 1978 ("FISA"). *Clapper*, 568 U.S. at 406. Among other things, the plaintiffs asserted that their ongoing injuries were fairly traceable to FISA because the risk of surveillance required them to take costly and burdensome measures to counteract allegedly unconstitutional government action. *See id.* at 415. The Supreme Court held that the plaintiffs did not have standing because plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 416. In other words, if a plaintiff can avoid the harm of which he or she complains, the alleged harm cannot confer standing because it is neither certainly impending nor is there a substantial risk that the harm will occur. *See Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (applying *Clapper*, 568 U.S. at 416, and *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

---

[23] To be clear, Youth Movement does not allege that the named members have individual standing because the members' injury-in-fact is the threat of disenfranchisement, nor could it. Subjective fear of "injurious government action" does not establish injury-in-fact unless the harm is "certainly impending." *See Blum v. Holder*, 744 F.3d 790, 797 (1st Cir. 2014) (quoting *Clapper*, 568 U.S. at 416). Disenfranchisement of these citizens would require conjecture into the choices that third parties (local election officials) ***might*** make in the future ***in violation*** of HB 1569. *See Hochendoner*, 823 F.3d at 731.

Here, the place and manner in which the members choose to retain their documents are self-inflicted and is not fairly traceable to HB 1569—nor is it static.[24]  The members could choose to keep their birth certificates anywhere they would like or even destroy them entirely. Youth Movement cannot manufacture associational standing with the conclusory statement that it is burdensome for its members to locate and present citizenship documentation.  It must show that HB 1569 directly caused the members to suffer a legally cognizable injury.  Failing that, the Amended Complaint does not sufficiently allege facts to confer associational standing to Youth Movement.

**2.      Youth Movement Has Not Sufficiently Alleged that Members Kara Montagano, Tess Sumner, Taylor Barry, or Ty Wyman Have Suffered Injuries-in-Fact**

Notwithstanding that Youth Movement's members have citizenship documentation, the Amended Complaint fails because HB 1569 does not apply to four of the five named members. Youth Movement alleges that Ms. Montagano, Ms. Sumner, Ms. Barry, and Mr. Wyman are Youth Movement members, United States citizens, and that they are all currently registered to vote in New Hampshire (the "Registered Voters").  ECF No. 50, ¶¶ 20-25.  Youth Movement asserts that each Registered Voter will move or is likely to move to another New Hampshire jurisdiction.  *Id.*  Youth Movement believes that they must re-register to vote in their new municipalities.  *Id.*

The Registered Voters have not suffered injury-in-fact for at least two reasons.  First, re-registering to vote in a new municipality does not require proof of citizenship:

> Any person who is applying for registration as a voter and who is currently registered to vote in a different town or ward in New Hampshire shall complete the voter registration form provided for in RSA 654:7. If the election official receiving

---

[24] The members' control over their purported injury calls into question whether this matter is ripe for adjudication.  *See Reddy v. Foster*, 845 F.3d 493, 501 (1st Cir. 2017) ("Ripeness analysis has two prongs: 'fitness' and 'hardship.'") (quoting *Texas v. United States*, 523 U.S. 296, 300-01 (1998)).

the application confirms through the centralized voter registration database required by RSA 654:45 that the applicant is currently registered to vote in New Hampshire, the applicant shall prove identity and domicile, ***but shall not be required to prove his or her age or citizenship***.

RSA 654:12, III (emphasis added).  Youth Movement alleges that HB 1569 harms the Registered Voters because retrieving their passports and birth certificates is burdensome.  ECF No. 50, ¶¶ 20-25.  But this harm cannot occur because HB 1569 does not require the Registered Voters to retrieve this documentation in the future.  RSA 654:12, III.  So, the Amended Complaint lacks a plausible claim of a concrete injury.  *See All. for Hippocratic Med.*, 602 U.S. at 381.  Moreover, all voters share the Registered Voters' concern regarding retrieving passports and birth certificates, so the Registered Voters merely assert a generalized grievance (at best) with HB 1569's requirements.  *See Hochendoner*, 823 F.3d at 732.  Youth Movement has not identified a particularized harm to the Registered Voters.

Second, the harm of which Youth Movement complains is impermissibly speculative.  None of the Registered Voters have actually moved and no election authority is imminently requiring that they comply with HB 1569's requirements.  Youth Movement merely asserts that they ***intend*** to move.  ECF No. 50, ¶¶ 20-25.  A plaintiff's "few words of general intent" are not sufficient to establish injury-in-fact.  *Carney v. Adams*, 592 U.S. 53, 64 (2020).  The Amended Complaint does not allege that the Registered Voters' threatened injury is certainly impending.  *See Clapper*, 568 U.S. at 409.  Accordingly, as the Registered Voters do not have individual standing to challenge HB 1569, Youth Movement cannot establish associational standing to do so on their behalf.[25]

---

[25] Because the Registered Voters have not suffered injury-in-fact, injury cannot be fairly traced to HB 1569 and there is no harm for the Court to redress.  *See Dantzler, Inc.*, 958 F.3d at 47; *California*, 593 U.S. at 672-73.  Moreover, and as described in more detail in Section II(A)(3) below regarding Mr. Musick, Youth Movement has not explained what makes the Registered Voters' retrieval of birth certificates or passports (or other reasonable

### 3. Youth Movement Has Not Sufficiently Alleged Member Kai Musick Will Suffer Injury-in-Fact

The Amended Complaint alleges that Mr. Musick is a Youth Movement member, United States citizen, and that he intends to register to vote in New Hampshire sometime after he becomes age-eligible (the "Future Voter"). ECF No. 50, ¶ 26. Youth Movement asserts that HB 1569 will require the Future Voter to locate and present citizenship documentation upon registering to vote, and that he will be injured by HB 1569's elimination of the Qualified Voter Affidavit ("QVA") as an alternative to documentary proof of his citizenship eligibility. *See id.* ¶¶ 26-27. The organization alleges that other Future Voter-members will also be first-time voting registrants this year and that they will be burdened by retrieving their passports, birth certificates, or other reasonable citizenship documentation. *Id.*

The Future Voter will not suffer injury-in-fact for at least three related reasons. First, like the Registered Voters, the Future Voter merely asserts a generalized grievance (at best) with HB 1569's requirements. *See Hochendoner*, 823 F.3d at 732. Youth Movement has not identified a particularized harm to the Future Voter. Second, Youth Movement has not alleged a concrete harm to the Future Voter. It does not allege that the Future Voter will be ***more*** burdened by locating and presenting reasonable citizenship documentation than executing a QVA. ECF No. 50, ¶ 26.

Specificity with respect to the comparative burdens is necessary to establish injury-in-fact. The organization's objection to HB 1569 is that it repealed QVAs for prospective voters who (Youth Movement speculates) "keep these incredibly sensitive and important documents in

---

documentation) more burdensome than executing a QVA. Youth Movement asks the Court to declare HB 1569 unconstitutional and reinstate the QVA. ECF No. 50 at 32 (Prayer for Relief C & D). The Amended Complaint does not explain how that remedy would redress the Registered Voters' purportedly undue burden in presenting reasonable documentation, since the QVA also presents a relative burden for registering voters.

a place other than where they currently live." *Id.* ¶ 27. Youth Movement's theory is that HB 1569 causes prospective voters injury in the delta between the repealed affidavit-regime's burden and the new reasonable documentation-regime's burden. *Id.* The Future Voter has not explained what makes his locating and presenting reasonable documentation more burdensome than executing a QVA, nor has he even alleged that his documentation is "in a place other than where he currently live[s]." *Id.* Moreover, Youth Movement asks the Court to declare HB 1569 unconstitutional and reinstate the QVA. *Id.* at 32 (Prayer for Relief C & D). Without articulating the Future Voter's comparative burdens between presenting reasonable documentation and executing a QVA, the Amended Complaint fails to allege how reinstatement of the affidavit regime would provide the Future Voter with relief from the harm of which Youth Movement complains on the Future Voter's behalf.

Third, the only eligibility documentation requirement to which Youth Movement objects is that of citizenship. *Id.* ¶ 26. HB 1569 also requires applicants to provide documentary proof of age, domicile, and identity. RSA 654:12, I. Youth Movement does not allege any facts regarding how locating and presenting reasonable citizenship documentation burdens the Future Voter in a constitutionally impermissible way that age, domicile, and identity documentation do not.[26] ECF No. 50, ¶ 26. At best, the organization makes mere conclusory statements regarding the Future Voter's injury, which is not sufficient to establish injury-in-fact. *See Alston*, 988 F.3d at 571. Accordingly, as the Future Voter does not have individual standing to challenge HB 1569, Youth Movement cannot establish associational standing to do so on his behalf.[27]

---

[26] This is also a failing of the allegations related to the Registered Voters, but for the reasons explained in Section II(A)(2) above, HB 1569 does not apply to them in the first instance.

[27] Because the Future Voter will not suffer injury-in-fact, injury cannot be fairly traced to HB 1569 and there is no harm for the Court to redress. *See Dantzler, Inc.*, 958 F.3d at 47; *California*, 593 U.S. at 672-73.

4.      **Youth Movement's Registered and Future Voter Members Pose a Nonjusticiable Political Question Regarding the Best Policy to Ensure that Only Eligible Citizens Register to Vote**

Youth Movement's objection to HB 1569 is not that prospective voters must prove their eligibility when registering.  Rather, Youth Movement objects to the policy chosen by the political branches:

> [HB 1569] requires voters to show documentary proof of their citizenship—a birth certificate, passport, naturalization papers, or other unspecified documentation—before they can cast a ballot, without exception. Under prior law, a citizen without such documentation could vote by signing an affidavit attesting that they are a citizen. Now, those citizens are out of luck.

ECF No. 50, ¶ 1.  Youth Movement's Registered and Future Voter members may wish to execute QVAs rather than presenting reasonable documentation of citizenship, but that is a policy preference.  "There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters."  *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008).  The General Court chose reasonable documentation as the mechanism to ensure voters' eligibility.  This is a policy determination that is inextricable from the merits of this lawsuit "of a kind clearly for nonjudicial discretion[.]"  *See Castro v. N.H. Sec'y of State*, 701 F. Supp. 3d 176, 185-86 (D.N.H. 2023) (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)).  Accordingly, even if Youth Movement's members could establish individual standing, its members present a nonjusticiable political question.

B.      **Youth Movement's Organizational Purpose Is Not Germane to House Bill 1569's Proof-of-Citizenship Voter Registration Requirement**

The interests Youth Movement seeks to protect in this lawsuit must be germane to the organization's purpose, to confer associational standing and this Court's subject-matter jurisdiction.  *See Council of Ins. Agents & Brokers v. Juarbe-Jimenez*, 443 F.3d 103, 108 (1st Cir. 2006) (quoting *Hunt*, 432 U.S. at 343) (internal quotations and citations omitted).  In other

words, the lawsuit's objective must align with the organization's core purpose.  *See Me. People's All. v. Mallinckrodt, Inc.*, 471 F.3d 277, 283 (1st Cir. 2006) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).  Germaneness is an inquiry into whether a lawsuit reasonably tends "to further the general interests that individual members sought to vindicate in joining the association and … bears a reasonable connection to the association's knowledge and experience."  *Saget v. Trump*, 375 F. Supp. 3d 280, 336 (E.D.N.Y. 2019) (quoting *Bldg. & Constr. at Trades Council & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 149 (2d Cir. 2006)) (internal quotations omitted).  So, Youth Movement must demonstrate that this lawsuit's goals serve the *ex ante* aims that its members understood they would advance by joining.  *See Housatonic River*, 75 F.4th at 265 (citing *Hunt*, 432 U.S. at 343).  It does not.

Youth Movement's core purpose is "to strengthen the influence of its members and constituents who share common values by helping them navigate the political system and rise to positions of political power and governance."  ECF No. 50, ¶ 14.  Its members joined "to advance individual policy goals (which, by way of example, include increasing wages, decreasing costs of education, housing and medical care, and combatting climate change)."  *Id.*  Its mission is undeniably broad, but a broad mission of public policy advocacy does not mean that members joined to take on every conceivable issue in the realm of public debate.  *Cf. Katz*, 672 F.3d at 72 (explaining that prudential standing requires more than a generalized grievance shared by the public at large).  That is why "an organization cannot manufacture standing merely by defining its mission with hydra-like or extremely broad aspirational goals[.]"  *Nielsen v. Thornell*, No. 22-15302, 2024 U.S. App. LEXIS 16550, at *9 (9th Cir. July 8, 2024).  Were it otherwise, Article III standing would have little practical purpose, as every public policy advocacy group could contrive an injury in virtually any voting-related case.  *See id.*

19

HB 1569 does not relate to Youth Movement members' concerns regarding wages, costs of living, or climate change. As explained in Section I(A) above, Youth Movement does not allege that HB 1569 prevents it from advocating for such policies—it merely alleges that the new law requires it to alter its advocacy strategy and tactics. *See, e.g.*, ECF No. 50, ¶ 18 ("Youth Movement's voter registration program is more difficult because it must account for HB 1569's new documentation requirements and help would-be voters meet them."). And as explained in Section II(A)(4) above, Youth Movement **supports** citizenship as a voter registration requirement—it merely objects to the **mechanism** adopted by the political branches to ensure that registrants are citizens. *See id.* ¶ 5 ("Prior law was more than adequate to deter noncitizens from voting."). A favorable decision in this case would purportedly serve the interests of (1) unregistered prospective voters who (2) cannot produce reasonable documentation to establish citizenship. *See id.* ¶ 7. Youth Movement has not demonstrated that its members joined to achieve this result. Accordingly, the Amended Complaint does not establish germaneness as required for associational standing, so Youth Movement may not proceed in a representative capacity.

## C. Youth Movement's Challenge to House Bill 1569 May Require Youth Movement Members' Participation

For Youth Movement to proceed in a representative capacity, neither the claim asserted nor the relief requested in this case can require Youth Movement's members to individually participate. *See Council of Ins. Agents & Brokers*, 443 F.3d at 108 (quoting *Hunt*, 432 U.S. at 343) (internal quotations and citations omitted). This is a prudential test. *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 306 (1st Cir. 2005). Typically, individual member participation is not required in cases that seek only declaratory judgment and prospective injunctive relief. *See, e.g.*, *Coll. of Dental Surgs. of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 41 (1st Cir. 2009).

20

But plaintiffs are not entitled to an automatic pass simply because they do not seek damages. *N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 72 (1st Cir. 2006). Rather, the question is whether adjudicating the merits of an association's claim requires the court to engage in a "fact-intensive-individual inquiry." *Id.*

Here, Youth Movement failed to meet its burden to establish that either the Registered Voters or the Future Voter have individual standing. So, it has not provided sufficient information from which the Court could determine whether this case presents a "fact-intensive-individual inquiry" that would preclude associational standing as to them, or to other unnamed members. This is a pre-enforcement facial challenge to the constitutionality of a state law, where an "association must, at the very least, identify a member who has suffered the requisite harm." *See Draper*, 827 F.3d at 3 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)) (cleaned up). Moreover, heightened specificity regarding standing "is obligatory at the pleading stage." *Id.* (quoting *AVX Corp.*, 962 F.2d at 115) (quotations omitted). The Court cannot fill in the blanks for Youth Movement by extrapolating the allegations of the Registered Voters and the Future Voter to the remainder of the organization's members. Accordingly, Youth Movement has not satisfied its burden to demonstrate that its members' individual participation is not required, so Youth Movement may not proceed in a representative capacity.

## III.    Alternatively, Were the Court to Find that New Hampshire Youth Movement Has Sufficiently Alleged Standing, the Court Should Nevertheless Dismiss the Complaint Because It Fails to State a Claim Upon Which the Court May Grant Relief

"To survive a motion to dismiss for failure to state a claim, a complaint must contain factual allegations sufficient to 'raise a right to relief above the speculative level.'" *Morales-Tanon v. P.R. Elec. Power Auth.*, 524 F.3d 15, 18 (1st Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the pleadings stage, plausible allegations that a plaintiff is entitled to relief requires "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Id.* (citations omitted). Even were the Court to find that Youth Movement has organizational or associational standing, the Amended Complaint fails to state a claim upon which the Court may grant relief.

The First Circuit has made two things abundantly clear with respect to election law challenges. First, not all burdens on a citizen's right to vote are unconstitutional. *See Common Cause R.I. v. Gorbea*, 970 F.3d 11, 14 (1st Cir. 2020). Burdens may be constitutionally permissible where a state shows that it has an "important regulatory interest" that reasonably justifies the burden. *See id.* (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788-89 (1983) and *Burdick v. Takushi*, 504 U.S. 428, 430 (1992)). Second, a state's "regulatory interest" in preventing voting fraud and enhancing election integrity is "substantial and important." *Id.* at 15. So, to balance a citizen's interest in burden-free voting with a state's substantial and important interest in fraud prevention and election integrity, courts apply the *Anderson-Burdick* analytical framework. *See id.* at 14; *see also* ECF No. 50, ¶ 77 (citing *Burdick*, 504 U.S. at 434, *Anderson*, 460 U.S. at 789, and *Common Cause R.I.*, 970 F.3d at 14). *Anderson-Burdick* requires courts to "weigh the 'character and magnitude of the asserted injury to' the voters' rights against the 'precise interests put forward by the State as justifications for the burden imposed.'" *Common Cause R.I.*, 970 F.3d at 14 (quoting *Anderson*, 460 U.S. at 788-89).

As explained in Section I(A) above, HB 1569 does not regulate Youth Movement's mission or activities in any way, so it cannot plausibly allege a claim to relief. Youth Movement could have attached its officers' affidavits to identify which pre-existing core activities Youth Movement has abandoned as a direct consequence of HB 1569, but it did not. Instead, Youth Movement makes conclusory allegations regarding diversion of resources in response to—not as a consequence of—new state election law requirements. *See, e.g.*, ECF No. 50, ¶¶ 14-17. Such

threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, is not enough to state a claim for relief.  *See Alston*, 988 F.3d at 571.

The Amended Complaint also fails to articulate any prospective voter's burden with which to weigh the state's interest.  As explained in Section II(A) above, HB 1569 has not caused either the Registered Voters or the Future Voter injury-in-fact, so Youth Movement cannot plausibly allege a claim to relief in a representational capacity.  Instead of providing supporting factual allegations, Youth Movement cites cases standing for various legal propositions related to how the Court should apply the *Anderson-Burdick* balancing test, *extra contextum*.  *See, e.g.*, ECF No. 50, ¶¶ 7, 46, 78-79.

For example, the Amended Complaint asserts the conclusory allegation that "[b]y eliminating [affidavits] without any adequate alternative means to ensure that all voters have a means to register to vote, New Hampshire has imposed an unconstitutional burden on voters' fundamental right to vote in the state."  *Id.* ¶ 46.  Youth Movement could have attached a member's affidavit regarding his or her difficulty in proving citizenship by reasonable documentation or a member's inability to vote on election day, but it did not.  Instead, Youth Movement cites a First Circuit decision with a parenthetical reiterating the *Anderson-Burdick* balancing test.  *Id.*  That is not a supporting factual allegation, it is a legal conclusion.

Legal conclusions may only provide the framework of a complaint—they do not satisfy the pleading requirement of setting forth a plausible claim.  *See Medeiros*, 671 F. Supp. 3d at 103 (citing *Iqbal*, 556 U.S. at 679).  Youth Movement supports its assertions that it is entitled to relief (if at all) with conclusory statements that cannot support a reasonable inference that it has stated such a claim.  *See Alston*, 988 F.3d at 571 (quoting *Iqbal*, 556 U.S. at 678; *Garayalde-*

23

*Rijos*, 747 F.3d at 23).  Accordingly, the Court should dismiss the Amended Complaint for failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the First Amended Complaint in its entirety, with prejudice.

Respectfully submitted,

DEFENDANT DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State

By his attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

Date:  April 15, 2025

/s/ Michael P. DeGrandis
Michael P. DeGrandis, N.H. Bar  No. 277332
Assistant Attorney General
Catherine A. Denny, N.H. Bar No. 275344
Assistant Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, NH 03301
(603) 271-3650
michael.p.degrandis@doj.nh.gov
catherine.a.denny@doj.nh.gov

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all parties of record through the Court's e-filing system.

/s/ Michael P. DeGrandis
Michael P. DeGrandis