UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

New Hampshire Youth Movement,

    *Plaintiff*,

v.

David M. Scanlan, in his official capacity as New Hampshire Secretary of State,

    *Defendant*.

Case No. 1:24-cv-00291-SE-TSM

**PLAINTIFF'S RESPONSE TO REPUBLICAN AMICI'S BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**INTRODUCTION**

The amicus brief submitted by the Republican National Committee and the New Hampshire Republican Committee, ECF No. 55 ("Br."), strays far from the few merits arguments made by the Secretary and fails to engage with the detailed factual allegations in Youth Movement's Amended Complaint, ECF No. 50 ("Complaint"). The Court can largely disregard it, but Youth Movement briefly addresses Amici's arguments below.

**ARGUMENT**

**I.    Amici's arguments are not properly before the Court because only Amici make them.**

Much of the amicus brief should be disregarded because it goes far beyond the arguments made by the Secretary. "[A] district court should not consider arguments raised by amici that go beyond the issues properly raised by the parties." *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 564 n.8 (1st Cir. 2021). There is "no authority which allows an amicus to interject into a case issues which the litigants, whatever their reasons might be, have chosen to ignore." *McCoy v. Mass. Inst.*

*of Tech.*, 950 F.2d 13, 23 n.9 (1st Cir. 1991) (quoting *Lane v. First Nat'l Bank,* 871 F.2d 166, 175 (1st Cir.1989)).

The Secretary's motion to dismiss focused overwhelmingly on standing and devoted barely two pages to a threadbare argument challenging the merits. ECF No. 54-1 at 21–23. The amicus brief, in contrast, spends all of its 20 pages on the merits, making many arguments that appear nowhere in the Secretary's motion and are not properly before the Court. This includes Amici's arguments (1) that HB 1569 is, as a matter of law, a reasonable nondiscriminatory voting regulation, Br. 5–9, (2) that the effect of HB 1569 on same-day registration is irrelevant, *id.* at 9–12, (3) that Youth Movement improperly relies on "idiosyncratic burdens faced only by some voters," *id.* at 12–15, and (4) that strong state interests support HB 1569, *id.* at 15–20. None of those arguments appear anywhere in the Secretary's two-page failure-to-state-a-claim discussion, which argues primarily that Youth Movement's claims fail because it did not attach "affidavits" to its Complaint to corroborate its allegations of burden. ECF No. 54-1 at 22–24. The Court therefore "should not consider" Amici's additional arguments. *Victim Rts. L. Ctr.*, 988 F.3d at 564 n.8.

## II. Youth Movement has stated a claim for which relief may be granted.

Amici's arguments fail to support dismissal in any event. The Complaint includes detailed factual allegations regarding the severe burdens that HB 1569 imposes on voting and the scant justifications for them. *See* ECF No. 59 at 30–34. Those allegations provide more than "enough factual detail to make the asserted claim 'plausible on its face,'" and no more is required to survive dismissal. *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Rather than engage with Youth Movement's allegations, Amici focus on a series of legal arguments, none of which supports dismissal.

### A. Youth Movement properly challenges the current proof-of-citizenship requirements.

Amici first argue that Youth Movement's claim fails because there is "no constitutional right to establish citizenship by a qualified-voter affidavit." Br. 5. This misunderstands both the challenge and how New Hampshire got here. Youth Movement's challenge is to a session law—HB 1569—which repealed the affidavit option that had worked as a safeguard to ensure that qualified U.S. citizen voters who were unable to produce an acceptable form of documentary proof-of-citizenship in time to vote were not disenfranchised. As a result of that repeal, the General Court created a strict documentary proof-of-citizenship requirement that has no exceptions whatsoever. That newly-created regime will disenfranchise U.S. citizens—indeed, in the only elections to have taken place since the repeal has been in effect, that is exactly what happened. And it is that current regime that the Youth Movement challenges as unconstitutional. Compl. ¶¶ 19–26, 45–51, 55–57.

If Youth Movement succeeds on that claim, the proper remedy will be to find that HB 1569's repeal of the qualified voter affidavit—which is what created the unconstitutional regime—is void, leaving the affidavit option "in full force and operation *as if the repeal had never been attempted*." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 110 F.4th 295, 321–22 (1st Cir. 2024) (quoting *LaRoque v. Holder*, 650 F.3d 777, 791 (D.C. Cir. 2011)) (emphasis added). Not only is that the approach approved of by the First Circuit, *see id.*, it is exactly what the New Hampshire Supreme Court did after holding a different election law, SB 3, unconstitutional four years ago under an *Anderson-Burdick* analysis. *N.H. Democratic Party v. Sec'y of State*, 174 N.H. 312, 331, 262 A.3d 366, 382 (2021); *see also* N.H. Sec'y of State, Election Procedures Manual 177 (2024)[1]

---

[1] Available at https://www.sos.nh.gov/sites/g/files/ehbemt561/files/documents/2024-08/epm-2024-2025-final-ada-for-web.pdf (last visited 5/13/2025).

(explaining that "the courts have held SB3 unconstitutional, therefore the statute and forms as they existed before SB3 are the current law"). And such an approach would fully remedy Youth Movement's injury by restoring the prior status quo.

### B. Youth Movement's burden allegations must be taken as true.

Amici next argue that the burden imposed by the proof-of-citizenship requirement is "minimal" because Amici contends that there are "numerous options" available for proving citizenship, the costs of obtaining it are small, and New Hampshire residents have plenty of time to register to vote. Br. 5–7. But these arguments again not only ignore Youth Movement's detailed allegations describing specific burdens voters face as a result of the requirement, *see, e.g.*, Compl. ¶¶ 1–3, 47–57, they seek to *displace* those allegations with *Amici's own view of the facts*. This is improper; the Court must take Youth Movement's allegations as true at this stage. *Cardigan Mountain Sch.*, 787 F.3d at 84.

The cases Amici cite in denying that New Hampshire's strict documentary proof of citizenship requirement imposes a burden do not help them. Br. 7. For one, none involved a motion to dismiss. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 187 (2008) (appeal of summary judgment ruling); *Burns v. Fortson*, 410 U.S. 686, 686 (1973) (per curiam) (referring to "extensive evidence" offered by the state); *Marston v. Lewis*, 410 U.S. 679, 679 (1973) (per curiam) (appeal of permanent injunction); *Rosario v. Rockefeller*, 410 U.S. 752, 755 (1973) (appeal of declaratory judgment); *ACORN v. Bysiewicz*, 413 F. Supp. 2d 119, 124 (D. Conn. 2005) (decision after bench trial). The Supreme Court has emphasized that there is no "'litmus test'" to "neatly separate valid from invalid restrictions" in this area, meaning that courts "must identify and evaluate the interests put forward by the State as justifications for the burden imposed by its rule, and then make the 'hard judgment' that our adversary system demands." *Crawford*, 553 U.S. at 190. That "fact-sensitive" judgment cannot be made on a motion to dismiss, which is why

"dismissal under Rule 12(b)(6) is disfavored" for "*Anderson-Burdick* claims." *Mi Familia Vota v. Fontes*, No. CV-22-00509-PHX-SRB, 2023 WL 8183070, at *14 (D. Ariz. Feb. 16, 2023) (citing cases).

Moreover, none of the cases Amici cite regarding burden involved a strict documentary proof-of-citizenship requirement like New Hampshire's. All but one of the cases in this part of Amici's brief involved voter registration deadlines, which implicate different state interests and impose a different type of burden—effectively, a simple deadline that falls equally on all voters. *See Burns*, 410 U.S. at 686; *Marston*, 410 U.S. at 680; *Rosario*, 410 U.S. at 762; *ACORN*, 413 F. Supp. 2d at 149. That leaves *Crawford*, which involved a much less burdensome ordinary photo identification requirement—many Americans carry photo identification with them everywhere they go, but it is far more unusual to carry a passport or birth certificate. *Cf. Frank v. Walker*, 768 F.3d 744, 748 (7th Cir. 2014) (upholding photo identification requirement in part because "photo ID is essential to board an airplane, enter Canada or any other foreign nation, drive a car . . . , buy a beer, purchase pseudoephedrine for a stuffy nose or pick up a prescription at a pharmacy, open a bank account or cash a check at a currency exchange, buy a gun, or enter a courthouse . . . ."). Courts have therefore treated proof-of-citizenship requirements very differently from ordinary photo identification requirements. *See Bednasek v. Kobach*, 259 F. Supp. 3d 1193, 1208 (D. Kan. 2017) (denying summary judgment in proof-of-citizenship challenge in part because of argument that "citizenship documents are less frequently maintained, compared to photo IDs, which individuals tend to keep on their persons").

Amici's argument that burden is a question of law rather than fact also fails. The case on which Amici rely, *Ohio Democratic Party v. Husted*, 834 F.3d 620, 628 (6th Cir. 2016), in fact says that burden is a matter with "*both* legal and factual dimensions." *Id.* (quoting *Green Party of*

*Tenn. v. Hargett,* 767 F.3d 533, 547 (6th Cir. 2014)) (emphasis added). There—after a ten-day bench trial—the question for the Sixth Circuit was one of law, because the parties "d[id] not challenge the district court's findings of fact." *Id.*[2] But here, at the motion to dismiss stage, Youth Movement's allegations regarding the law's burden must be taken as true. *Cardigan Mountain Sch.*, 787 F.3d at 84. And Amici do not engage with those allegations, much less show that they are inadequate to support Youth Movement's claims.

Amici also argue that the proof-of-citizenship requirement is facially nondiscriminatory because it does not facially discriminate against a protected class. Br. at 7–8. Youth Movement never contended otherwise. Even facially nondiscriminatory voting laws are unconstitutional if the burden they impose is not "justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford*, 553 U.S. at 191 (quoting *Norman v. Reed*, 502 U.S. 279, 288–89 (1992). In *Libertarian Party of Virginia v. Alcorn*, the court's observation that the law was "facially neutral" was an aside, not a holding that only facially discriminatory laws could impose severe burdens on voters. 826 F.3d 708, 718 (4th Cir. 2016). And *Harlan v. Scholz* did not suggest that a plaintiff must provide "evidence of discriminatory intent" at the pleading stage for a law to be discriminatory, but simply held that the plaintiff was not entitled to a *preliminary injunction* because it both failed to prove discriminatory intent and had "come[] nowhere close to demonstrating that . . . voters would suffer any harm at all—let alone irreparable harm." 866 F.3d 754, 758 (7th Cir. 2017).

---

[2] Similarly, in *Daunt v. Benson*, 999 F.3d 299, 306, 313 (6th Cir. 2021), the facts were uncontested—the plaintiffs themselves insisted that "there [were] only legal questions at issue"—and the sole question was whether excluding citizens from serving on a redistricting commission violated their First and Fourteenth Amendment rights.

Under the relevant test, resolving Youth Movement's claims requires "weigh[ing] the character and magnitude of the asserted injury to the voters' rights against the precise interests put forward by the State as justifications for the burden imposed." *Common Cause R.I. v. Gorbea*, 970 F.3d 11 14, (1st Cir. 2020) (cleaned up). Youth Movement's allegations establish a severe burden here, Compl. ¶¶ 7, 47–57, but even if the Court ultimately finds—as a factual matter—some lesser burden, it will still have to weigh that burden against the state's asserted interests. *Crawford*, 553 U.S. at 191 (even a "slight" burden must be "justified" by a "sufficiently weighty" state interest); *see also, e.g.*, *Eakin v. Adams Cnty. Bd. of Elections*, No. 1:22-CV-340, 2025 WL 957525, at *8–*9 (W.D. Pa. Mar. 31, 2025) (invalidating provision requiring rejection of certain mail ballots despite "limited" and "slight" burden on voting rights). Amici's citation of cases upholding very different voting restrictions at later stages of litigation do nothing to suggest that—taking Youth Movement's allegations about the burdens imposed by *this* voting restriction as true—Youth Movement has not stated a claim for relief.

      **C.**     **The burdens of HB 1569 on same-day registration are relevant.**

Contrary to Amici's arguments, same-day registration is not a mere privilege in New Hampshire—it is a condition of the state's exemption from the National Voter Registration Act ("NVRA"). 52 U.S.C. § 20503(b)(2). If New Hampshire did not offer same-day registration, it would need to offer a much broader opportunity for voters to register before election day, including by mail, at departments of motor vehicles, at offices that administer public assistance programs, and accepting and using a federal voter registration form that does not require documentary proof of citizenship. *Id*. §§ 20504, 20505, 20506; *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 20 (2013). It would also need to abide by strict restrictions on the maintenance of its voter rolls. 52 U.S.C. § 20507. Offering election-day registration is therefore not optional for New Hampshire—it is the only reason New Hampshire can run its elections as it does, without making

registration easier and more widely available in other ways. To treat election-day registration as a matter of grace would let New Hampshire have its cake and eat it too—both evading the broad NVRA requirements and *also* hamstringing voters' ability to register on election day.

Amici are wrong to argue that other states with election day registration impose similar proof-of-citizenship requirements. Br. 11. The citations in their brief are to ordinary photo identification requirements, not proof-of-citizenship laws. *Id.* Of the states offering same-day registration, only Wyoming also requires proof-of-citizenship—a brand new requirement that has also been challenged in court. *See Equality State Pol'y Ctr. v. Wyo. Sec'y of State*, No. 1:25-cv-00117-SWS (D. Wyo. filed May 9, 2025).

Amici's effort to dismiss the effect of HB 1569 on same-day registrants as an idiosyncratic burden also fails. Same-day registration is a critical means of voter registration at the heart of New Hampshire's election administration regime. Amici's reliance on Justice Scalia's concurrence in *Crawford*, with its emphasis on "voters generally" rather than burdens faced by just "some," is also misplaced. *See* Br. 13 (quoting *Crawford*, 553 U.S. at 204, 206 (Scalia, J., concurring in judgment)). The four-justice plurality rejected that approach, holding that the appropriate question was whether the challenged law "impose[d] 'excessively burdensome requirements' *on any class of voters*." 553 U.S. at 202 (plurality op.) (quoting *Storer v. Brown,* 415 U.S. 724, 738 (1974)) (emphasis added). And Justices Souter's and Breyer's dissents were likewise focused on the burdens faced by the most vulnerable. *Id.* at 220–21 (Souter, J. dissenting); *id.* at 238–39 (Breyer, J., dissenting). A majority of the *Crawford* court therefore considered *all* burdens, not just those suffered by everyone. Applying this precedent, courts have routinely considered burdens on "subgroups" in assessing the character and magnitude of the alleged burden. Pl.'s Opp'n to Def.'s

Mot. to Dismiss at 32, ECF No. 59 (citing authority); *see also Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 146 (3d Cir. 2022); *Obama for Am. v. Husted*, 697 F.3d 423, 430 (6th Cir. 2012).

Amici's argument is also at odds with the allegations of the Complaint itself. On its face, the Complaint alleges far more than "peculiar burdens . . . on certain subclasses of voters." Br. 14 (citing only Compl. ¶¶ 53, 57, 80). As the Complaint explains, the proof-of-citizenship requirement "imposes severe burdens on the right to vote of all voters who register to vote in New Hampshire," each of whom must comply with a new requirement to provide a not-commonly-carried document any time they register to vote. Compl. ¶ 47; *see also id.* ¶¶ 48–57. The recent elections, in which 20% of new registrants in some towns were initially turned away, refutes any notion that this is a peculiar or rare issue. *Id.* ¶ 52.

## D. Amici's discussion of hypothetical state interests does not support dismissal.

Amici close their brief with a six page discussion of the state interests that they think HB 1569 serves. Br. 15–20. For the most part, these are arguments which Secretary—the state's chief elections officer—did not see fit to raise. And because this is a motion to dismiss, there is no evidence before the Court that the State actually enacted HB 1569 to serve those interests or that it actually *serves* any of those state interests. Instead, Amici's claims are contradicted by allegations in the Complaint that the Court must accept at this stage as true.

Amici ask the Court to assume that HB 1569 promotes orderly elections, for example. Br. 15. But nothing in the record supports that conclusion. Rather, the Complaint alleges the new law will "increase[] wait times at the polls on election day" and that it has already led large percentages of new registrants to be turned away from the polls. Compl. ¶¶ 52, 56. Similarly, nothing in the record supports Amici's argument that HB 1569 will do anything to promote "public confidence," and the Complaint alleges that it will cause chaos and difficulty voting that—if anything—is likely to undermine voter confidence, *id*. ¶¶ 52–56. And while Amici argue that HB 1569 will prevent

fraud, the Complaint alleges just the opposite, *id*. ¶¶ 67–75. At a later stage of the case, with a factual record, perhaps there will be evidence of state interests for the Court to weigh against the burdens HB 1569 imposes. But now, at this stage, there are only Plaintiff's allegations—Amici's arguments are backed by nothing at all.

In the absence of any evidence that HB 1569 actually serves Amici's hypothesized state interests, Amici quotes from various cases affirming the legitimacy of these state interests, but none can support dismissal. "[W]ithout any factual record at this stage, [the Court] cannot say that the [defendant's] justifications outweigh the constitutional burdens . . . as a matter of law." *Soltysik v. Padilla*, 910 F.3d 438, 446–48 (9th Cir. 2018) (reversing dismissal and remanding a case "for further factual development" because application of the *Anderson-Burdick* test "rests on the specific facts" of the case).

## CONCLUSION

The Court should deny the motion to dismiss.

| | |
|---|---|
| Dated: May 13, 2025 | Respectfully submitted,<br><br>/s/ Steven J. Dutton<br><br>Steven J. Dutton, NH Bar No. 17101<br>Connor W. Harding, NH Bar No. 276438<br>**McLANE MIDDLETON, P.A.**<br>900 Elm Street Manchester,<br>New Hampshire 03101<br>Telephone: (603) 628-1377<br>steven.dutton@mclane.com<br>connor.harding@mclane.com<br><br>David R. Fox*<br>Marcos Mocine-McQueen*<br>Mark R. Haidar*<br>**ELIAS LAW GROUP LLP**<br>250 Massachusetts Ave NW, Suite 400<br>Washington, D.C. 20001<br>Telephone: (202) 968-4490<br>dfox@elias.law<br>mmcqueen@elias.law<br>mhaidar@elias.law<br><br>Tyler L. Bishop*<br>**ELIAS LAW GROUP LLP**<br>1700 Seventh Avenue, Suite 2100<br>Seattle, Washington 98101<br>(206) 656-0177<br>tbishop@elias.law<br><br>*Counsel for Plaintiff*<br><br>* *Admitted Pro Hac Vice* |

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was served this 13th day of May 2025 on all parties of record via the Court's electronic filing system.

Dated: May 13, 2025                            /s/ Steven J. Dutton