UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

New Hampshire Youth Movement

      v.                                           Case No. 24-cv-291-SE
                                                        Opinion No. 2024 DNH 093
David M. Scanlan, in his official capacity
as New Hampshire Secretary of State

O R D E R

New Hampshire Youth Movement brings suit against the New Hampshire Secretary of State seeking a declaratory judgment that a provision of 2024 New Hampshire House Bill 1569 (HB 1569) violates the United States Constitution and requesting injunctive relief barring state officials from implementing that provision. The Secretary moves to dismiss the case, arguing that Youth Movement lacks standing to assert its claim and that the claim presents a nonjusticiable political question. He also contends that even if the court could reach the merits, the First Amended Complaint (complaint) fails to state a plausible claim for relief. After careful consideration, the court denies the Secretary's motion.

Standard of Review

Although review of a motion for "a Rule 12(b)(6) dismissal for failure to state a claim and review to ensure the existence of standing are conceptually distinct, the same basic principles apply in both situations." Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016); see Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). "Just as the plaintiff bears the burden of plausibly alleging a viable cause of action, so too the plaintiff bears the burden of pleading facts necessary to demonstrate standing." Hochendoner, 823 F.3d at 730 (citation

omitted). "Each element of standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" Id. (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)). Thus, the court applies "the plausibility standard applicable under Rule 12(b)(6) to standing determinations at the pleading stage." Id.

To review the sufficiency of the claims under that standard, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard "demands that a party do more than suggest in conclusory terms the existence of questions of fact about the elements of a claim." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013). The court must employ a two-step approach. First, it must identify and disregard statements that "merely offer 'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678 (alterations omitted)). Second, the court must credit as true all nonconclusory factual allegations and the reasonable inferences drawn from those allegations. See id. Only then can the court determine whether the "combined allegations, taken as true, . . . state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010).

Likewise, to assess standing, the court must "accept as true all well-pleaded factual averments in the . . . complaint and indulge all reasonable inferences therefrom." In re Fin. Oversight and Mgmt. Bd. for Puerto Rico, 110 F.4th 295, 308 (1st Cir. 2024) (alteration and citation omitted). The plaintiff "'need not definitively prove [its] injury or disprove the

[defendant's] defenses,' but need only 'plausibly plead on the face of [its] complaint' facts

supporting standing." Id. (quoting Tyler v. Hennepin County, 598 U.S. 631, 637 (2023)).


Background

On September 12, 2024, then-New Hampshire Governor Chris Sununu signed into law

HB 1569, which went into effect on November 11, 2024. HB 1569 made several changes to New

Hampshire's requirements relating to voter registration and identification. One of those changes

is at issue in this case.

Before HB 1569 became effective, a prospective voter could register to vote by

establishing her citizenship, identity, and age, either by presenting documentary evidence,

including "any other reasonable documentation," or, if she did not possess the necessary

documentation, by executing a Qualified Voter Affidavit. Voters who submitted the Qualified

Voter Affidavit attested to their qualifications under the penalties of voter fraud and perjury. HB

1569 eliminated the Qualified Voter Affidavit. A prospective voter now must present

documentary evidence, including "any other reasonable documentation," that establishes her

citizenship, identity, and age.[1] See New Hampshire Revised Statute Annotated (RSA) § 654:12,

I. If a prospective voter is unable to present such documentation, she will not be able to register

to vote.

Youth Movement "is a nonpartisan, nonprofit membership organization composed of

students and other young people in New Hampshire who are motivated to effectuate political

change through civic action and democratic participation." Doc. no. 50, ¶ 14. It runs several

programs that "help to ensure its members and constituents are able to exercise their right to

---

[1] "Reasonable documentation" is not defined in the statute.

vote," including pledge-to-vote, voter-registration, and get-out-the-vote events. Id. Youth

Movement has 129 dues-paying members, many of whom organize and execute these events

throughout the state. Id., ¶¶ 14-15. Through these events, Youth Movement educates and

supports "voters in completing the voter registration process" and provides rides to the polls for

voters, many of whom are students. Id., ¶ 17.

Youth Movement alleges that HB 1569's elimination of the Qualified Voter Affidavit

constitutes an unjustifiable burden on the right to vote in violation of the First and Fourteenth

Amendments.


Discussion

The Secretary moves to dismiss Youth Movement's claim. He argues that Youth

Movement does not have standing to assert its claim in this case and that the claim presents a

nonjusticiable political question. He also contends that the complaint does not allege a plausible

claim for relief even if the court could consider the merits of the claim.   "[B]ecause standing is a

prerequisite to a federal court's subject matter jurisdiction and [it] must assure [itself] of [its]

jurisdiction under the federal Constitution before [it] proceed[s] to the merits of a case," the court

begins by addressing the Secretary's standing arguments. Dantzler, Inc. v. Empresas Berríos

Inventory & Operations, Inc., 958 F.3d 38, 46 (1st Cir. 2020) (quotations and citation omitted).


I.    Standing

"Standing doctrine assures respect for the Constitution's limitation of '[t]he judicial

Power' to 'Cases' and 'Controversies.'" Hochendoner, 823 F.3d at 731 (quoting U.S. Const. art.

III, § 2, cl. 1). "For there to be a case or controversy under Article III, the [plaintiff] must have a

personal stake in the case—in other words, standing." Town of Milton v. Fed. Aviation Admin., 87 F.4th 91, 95 (1st Cir. 2023) (quoting TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (further quotations omitted)).

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion, 594 U.S. at 423. "When an organization . . . seeks to establish Article III standing, it may proceed in one of two ways: it may show that it has 'organizational standing' to sue on its own behalf, or it may demonstrate that it has 'associational standing' to sue on behalf of its members." Mayor & City Council of Baltimore v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 738 F. Supp. 3d 1, 7 (D.D.C. 2024); see Equal Means Equal v. Ferriero, 3 F.4th 24, 29 (1st Cir. 2021).

The Secretary argues that Youth Movement has not alleged that it has either organizational or associational standing. Youth Movement asserts that it has adequately alleged both.

A.    <u>Organizational Standing</u>

The Secretary contends that the complaint fails to allege all three prongs of the standing analysis with respect to organizational standing. In other words, he argues that Youth Movement has failed to allege that it will directly suffer a sufficient injury in fact, that the Secretary is the cause of the injury, or that the injury would likely be redressed by judicial relief. The court addresses each factor in turn.

1.    Injury in Fact

Youth Movement asserts that the complaint sufficiently alleges that it has suffered a concrete and particularized injury in fact under a theory of standing derived largely from Havens Realty Corporation v. Coleman, 455 U.S. 363 (1982). The Secretary acknowledges Havens Realty but argues that it does not support Youth Movement's theory of standing, relying on the Supreme Court's more recent holding in Food & Drug Administration v. Alliance for Hippocratic Medicine, 602 U.S. 367 (2024).

In Havens Realty, the defendant (Havens) allegedly engaged in a practice called racial steering, giving prospective home renters and buyers false information to direct them toward housing near others of the same race and away from housing near individuals of other races, thereby maintaining racial housing segregation. 455 U.S. at 366 & n.1. Several plaintiffs, including a housing organization called HOME, which provided housing counseling and referral services to prospective buyers and renters, sued Havens, alleging a violation of the Fair Housing Act. Id. at 367.

The Supreme Court held that HOME had organizational standing to pursue its claim because the complaint alleged that Havens's "steering practices . . . perceptibly impaired HOME's ability to provide counseling and referral services for low-and moderate-income homeseekers." Id. at 379. The Supreme Court stated that "[s]uch concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests." Id.

Recently, the Supreme Court clarified Havens Realty's holding. In Alliance for Hippocratic Medicine, several anti-abortion medical organizations sought to challenge a Food

and Drug Administration action that eased regulations related to mifepristone, a drug used to terminate pregnancies. 602 U.S. at 376-77. The organizations relied on a <u>Havens Realty</u> theory to establish standing, alleging that the FDA had "impaired their ability to provide services and achieve their organizational mission" and that they had to "divert[] [their] resources in response to" the FDA's actions. <u>Id.</u> at 394-95 (quotations omitted). The Supreme Court rejected this argument, re-affirming that mere issue advocacy, even when accompanied by expenditures, could not alone establish standing. <u>Id.</u> at 395. Distinguishing <u>Havens Realty</u>, the Court highlighted that HOME "not only was an issue-advocacy organization, but also operated a housing counseling service." <u>Id.</u> So, "when Havens gave . . . false information about apartment availability," it "directly affected and interfered with HOME's core business activities" because it "impaired HOME's ability to provide counseling and referral services . . . ." <u>Id.</u> The Supreme Court noted that the plaintiffs in <u>Alliance for Hippocratic Medicine</u> did not allege that the FDA's action "imposed any similar impediment to the [plaintiffs'] advocacy business" and, therefore, they lacked standing. <u>Id.</u>

        Whether Youth Movement has alleged an injury in fact thus turns on whether it has alleged that HB 1569 will directly affect and interfere with its core business activities. The complaint alleges that HB 1569 will harm, and has already harmed, several of Youth Movement's programs. For example, Youth Movement must add steps to ensure that its voters who pledge to vote, and voters whom it transports to the polls, have the required documentary evidence necessary to register to vote. Doc. no. 50, ¶ 18. Youth Movement's voter registration program will become more difficult to implement because it must account for HB 1569's new documentation requirements, and the organization must revise its voter education program to cover the new requirements. <u>Id.</u> Youth Movement alleges that without these steps, which will

require it to divert resources away from its existing efforts, "its core programs would be fatally undermined." Id.

Giving Youth Movement all reasonable inferences, it has adequately alleged that HB 1569 will directly affect and interfere with its core business activities. On this point, League of United Latin Am. Citizens (LULAC) v. Exec. Off. of the President, No. CV 25-0946 (CKK), 2025 WL 1187730 (D.D.C. Apr. 24, 2025) is illustrative. In that case, several organizations, including nonpartisan, not-for-profit voting rights organizations (Nonpartisan Plaintiffs), moved for a preliminary injunction to enjoin the implementation of certain provisions of an executive order "purporting to change the rules of federal elections." Id. at *1. Much like HB 1569, one of the challenged provisions directed the Election Assistance Commission to require people registering to vote using a federal form "to submit 'documentary proof of United States citizenship'" instead of permitting registration through attestation alone. Id. at *11.

The district court for the District of Columbia held that the Nonpartisan Plaintiffs likely had organizational standing to challenge the documentary proof provision "because that provision would directly interfere with their core activities, including providing voter registration services throughout the Nation." Id. at *31. The court noted that each of the Nonpartisan Plaintiffs had "introduced evidence that registering eligible voters for federal elections is a core part of its mission." Id. Specifically, the court noted that the organizations would have to update or replace online tools and educational materials that they had developed and re-train their staff and volunteers to comply with the challenged provision of the Executive Order. Id. The court concluded that the organizations' injuries were analogous to those of HOME in Havens Realty and thus found that the organizations had shown a substantial likelihood that they had organizational standing. Id. at *32.

Here, the complaint alleges that HB 1569's elimination of the Qualified Voter Affidavit harms Youth Movement's "core, mission-critical" pledge-to-vote, voter registration, get-out-the-vote, and voter education programs. Doc. no. 50, ¶ 18. Youth Movement must change each of these programs, adding steps to ensure that voters who pledge to register or whom it transports to the polls have the required documentation. Helping would-be voters meet the new requirement makes its efforts more difficult. Youth Movement must also revise its voter education program to address the new requirements. Drawing all reasonable inferences in Youth Movement's favor, these contentions are sufficient to allege that HB 1569's elimination of the Qualified Voter Affidavit directly interferes with Youth Movement's core activities. LULAC, 2025 WL 1187730, at *31-32; Get Loud Ark. v. Thurston, 748 F. Supp. 3d 630, 653-54 (W.D. Ark. 2024) (plaintiff that provided voter registration services had standing to challenge Election Commission Rule changing signature requirement because the Rule "'perceptibly impaired' [the plaintiff's] ability to provide voter registration services to Arkansans, as evidenced by the precipitous decline in registrations through [the plaintiff] since the Rule was put into place"); see also Republican Nat'l Comm. v. North Carolina State Bd. of Elections, 120 F.4th 390, 397 (4th Cir. 2024) (state action that inhibited committee's ability to "counsel voters to support Republican candidates" caused injury sufficient to confer standing because it affected and interfered with organizational mission).

Therefore, Youth Movement has alleged an injury in fact.

        2.     <u>Causation and Redressability</u>

In addition to challenging the sufficiency of Youth Movement's allegations of injury, the Secretary also argues, in cursory fashion, that Youth Movement cannot satisfy the remaining

prongs of the standing analysis. He argues that Youth Movement cannot establish causation, stating that the organization's "alleged injuries are too attenuated from HB 1569's regulation of third parties—prospective voters—to fairly trace Youth Movement's purported harm to HB 1569." Doc. no. 54-1 at 10. He adds that "since redressability is a function of injury, there is nothing for this Court to redress in a favorable decision." Id. Neither of these arguments has merit.

"The second and third standing requirements—causation and redressability—are often flip sides of the same coin." Hippocratic Med., 602 U.S. at 380 (quotation omitted). "If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury." Id. at 381. Youth Movement satisfies these prongs of the standing inquiry easily. As discussed above, HB 1569 eliminates the Qualified Voter Affidavit, which directly causes Youth Movement to incur an injury by interfering with its core activities. As for the related redressability inquiry, a court order enjoining the elimination of the Qualified Voter Affidavit would "redress the professed injur[ies]." Dantzler, 958 F.3d at 47.

For these reasons, Youth Movement has alleged adequate facts to support all three prongs of the standing analysis and has organizational standing to pursue its claim.


 B. <u>Associational Standing</u>

Even if Youth Movement did not allege organizational standing, it would still be able to bring its claim because it has alleged associational standing. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual

members in the lawsuit." United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.,
517 U.S. 544, 553 (1996).

          1.       <u>Membership Standing</u>

To establish that it has associational standing, Youth Movement must allege that "at least
one of its members would have standing to sue as an individual." Housatonic River Initiative v.
EPA, New England Region, 75 F.4th 248, 265 (1st Cir. 2023) (quotation omitted). If the court
determines that any member has standing, it need not address whether any of Youth Movement's
other named members also has standing. <u>Id.</u> To make that determination, the court employs the
familiar standing analysis and considers whether Youth Movement has adequately alleged that at
least one of its members (1) has suffered or will imminently suffer a concrete and particularized
injury which (2) has been or will imminently be caused by the defendant that (3) is likely to be
redressed by a favorable judicial decision. TransUnion, 594 U.S. at 423. Though Youth
Movement identifies five members in its complaint (Kara Montagano, Taylor Barry, Ty Wyman,
Tess Sumner, and Kai Musick), the court begins and ends its analysis with Musick, the only
identified Youth Movement member who has not yet registered to vote. Because this case is in a
pre-enforcement posture with respect to Musick, Youth Movement must adequately assert that
the alleged harm is "certainly impending" or that Musick faces a "substantial risk" of injury.
Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017) (quoting Susan B. Anthony List v. Driehaus,
573 U.S. 149, 158 (2014)); see Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409, 414 n.5
(2013).

Musick is a 17-year-old U.S. citizen resident of Dover, New Hampshire. Musick will
become eligible to vote ahead of the 2026 primary and general elections and intends to register to

vote and participate in those elections in New Hampshire. At that time, Musick will need to satisfy HB 1569's proof-of-citizenship requirement by locating and bringing documentary evidence that establishes their citizenship, identity, and age.

The Secretary contends that the complaint's allegations regarding Musick are insufficient to meet the injury-in-fact prong of the standing analysis for three reasons. First, he argues that the complaint alleges that Musick has only "a generalized grievance (at best) with HB 1569's requirements." Doc. no. 54-1 at 16. But that is not the case. The complaint alleges that Musick intends to register to vote in New Hampshire when they become eligible before the 2026 primary and general elections. Doc. no. 50, ¶ 26. HB 1569's proof-of-citizenship requirement will force Musick to locate and bring documentary evidence of citizenship that they would not otherwise need to provide. Although, as the Secretary argues and Youth Movement acknowledges, several of Youth Movement's members and other New Hampshire citizens will be in the same situation, the "fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance." Spokeo, Inc. v. Robins, 578 U.S. 330, 339 n.7 (2016). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." Id. at 339 (quotations omitted). "Thus, it does not matter that the injury is 'widely shared,' so long as the plaintiff 'suffers a particularized harm.'" People First of Ala. v. Merrill, 467 F. Supp. 3d 1179, 1198 (N.D. Ala. 2020) (quoting Spokeo, 578 U.S. at 339 n.7). Here, the complaint alleges that Musick will suffer the particularized harm discussed above. See, e.g., Common Cause/Georgia v. Billups, 554 F.3d 1340, 1351-52 (11th Cir. 2009) ("Requiring a registered voter either to produce photo identification to vote in person or to cast an absentee or provisional ballot is an injury sufficient for standing.").

Second, the Secretary contends that the complaint does not allege a concrete harm to Musick because it "does not allege that [Musick] will be **more** burdened by locating and presenting reasonable citizenship documentation than executing a [Qualified Voter Affidavit]." Doc. no. 54-1 at 16. This argument conflates standing with the merits of the claim. As discussed further below, the magnitude of the burden HB 1569 imposes upon the plaintiff is more properly analyzed in the context of a challenge to the merits of Youth Movement's claim. See Fish v. Schwab, 957 F.3d 1105, 1121-36 (10th Cir. 2020). Standing does not require such a comparison point; instead, it "merely requires that the plaintiff be 'adversely affected' or 'aggrieved,' which can be established through 'an identifiable trifle.'" Sagar v. Kelly Auto. Gp., Inc., Civ. Action No. 21-cv-10540-PBS, 2021 WL 5567408, at *2 (D. Mass. Nov. 29, 2021) (quoting United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 689 n.14 (1973)); see Conservation L. Found., Inc. v. Acad. Express, LLC, 129 F.4th 78, 86-87 (1st Cir. 2025). The complaint satisfies that requirement with respect to Musick.

Finally, the Secretary argues that the complaint does not allege an injury in fact with respect to Musick because it challenges only HB 1569's requirement that a voter provide documentary proof of citizenship but does not challenge the requirement that a voter provide documentary proof of age, domicile, and identity. Unsurprisingly, the Secretary offers no support for the theory that a plaintiff must challenge every aspect of law to have standing to bring a claim. The Secretary's third argument is unavailing.

The complaint alleges that Musick will suffer an injury in fact from HB 1569's elimination of the Qualified Voter Affidavit. Because Musick intends to register to vote as soon as they are able and before the 2026 primary and general elections, their injury is substantially

likely to occur. Reddy, 845 F.3d at 500. Therefore, the complaint has sufficiently alleged that Musick satisfies the first prong of the standing analysis.

The Secretary states in a footnote that "[b]ecause [Musick] will not suffer injury-in-fact, injury cannot be fairly traced to HB 1569 and there is no harm for the court to redress." Doc. no. 54-1 at 17 n.27. Because the court has determined that the complaint alleges that Musick has alleged a cognizable injury, the Secretary's argument is without merit. Regardless, Musick's injury from the elimination of the Qualified Voter Affidavit is plainly traceable to the Secretary's enforcement of HB 1569 and would be redressed by a court order enjoining the elimination of the Affidavit. Therefore, Musick has standing to assert the claim in this case.

### 2.    Germaneness

The Secretary argues that the interests Youth Movement seeks to protect in this litigation are not germane to its purpose. He quotes Youth Movement's allegation that its "mission is to strengthen the influence of its members and constituents who share common values by helping them navigate the political system and rise to positions of political power and governance." Doc. no. 50, ¶ 14. He further notes that Youth Movement alleges that it "supports its members and constituents who seek to advance individual policy goals (which, by way of example, including increasing wages, decreasing costs of education, housing and medical care, and combatting climate change)." Id. According to the Secretary, the interests that Youth Movement purportedly seeks to protect in this case—the rights of unregistered prospective voters who cannot produce reasonable documentation to establish citizenship—are not germane to its stated purpose.

The Secretary reads the second requirement of the associational standing analysis too narrowly and cherry-picks statements in the complaint to try to fit his interpretation. To satisfy

the second prong of the analysis, a plaintiff must allege that "[t]he 'interests at stake'" are "related to [its] core purposes." Housatonic River Initiative, 75 F.4th at 265 (quotation omitted). The complaint alleges that Youth Movement runs several programs that "help to ensure its members and constituents are able to exercise their right to vote." Doc. no. 50, ¶ 14. Its members "plan, organize, and execute events aimed at uplifting the voice and influence of its constituency in their communities—especially on major days of action and during key elections, including but not limited to the 2024 primary and general elections as well as the upcoming 2026 mid-term elections." Id., ¶ 16. In addition to helping individuals register to vote and actually transporting them to the polls on election day, Youth Movement "provides education on policy issues central to its mission of ensuring that as many students and other young people as possible are able to vote and participate in government. In 2024, Youth Movement's voter education programs reached more than 115,000 people in the state." Id., ¶ 17. Where, as here, an organization challenging a law effecting voting rights has "core purposes [that] involve registering voters, voter education, [and] encouraging electoral participation," the lawsuit is germane to the organization's purpose. League of Women Voters of Fla., Inc. v. Lee, 576 F. Supp. 3d 1004, 1009 (N.D. Fla. 2021); see La Unión del Pueblo Entero v. Abbott, 614 F. Supp. 3d 509, 526 (W.D. Tex. 2022) (organization challenging voting law that wanted to "ensure that its members can register [to vote] and educate voters" was seeking to protect interests that were germane to its purpose).

### 3.    Individual Members' Participation

The Secretary acknowledges that individual member participation is generally not required in cases where, as here, a plaintiff seeks a declaratory judgment and injunctive relief.

See Housatonic River Initiative, 75 F.4th at 265. Nevertheless, he notes that whether individual members must participate requires a "fact-intensive-individual inquiry," N.H. Motor Transp. Ass'n v. Rowe, 448 F.3d 66, 72 (1st Cir. 2006), aff'd, 552 U.S. 364 (2008), and argues that Youth Movement "has not satisfied its burden to demonstrate that its members' individual participation is not required," doc. no. 54-1 at 21.

The Secretary's argument requires little discussion. Other than stating that Youth Movement has failed to show that any of its members has standing—an assertion that the court rejects for the reasons stated above—the Secretary offers no reason to suggest that individual members' participation is necessary in this case. Indeed, courts analyzing organizations' associational standing to bring voting rights claims have routinely found that individual members need not participate in those lawsuits because "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." Fla. State Conf. of Branches & Youth Units of the NAACP v. Cord Byrd, No. 4:23CV215-MW/MAF, 2024 WL 2699899, at *5 (N.D. Fla. Mar. 5, 2024) (quoting Warth v. Seldin, 422 U.S. 490, 515 (1975)); Greater Birmingham Ministries v. Sec'y of State for State of Alabama, 992 F.3d 1299, 1316 (11th Cir. 2021) ("Finally, we cannot say that the constitutional and voting rights claims asserted, or the declaratory or injunctive relief requested, require the participation of the individual members in this lawsuit"); Republican Party of N.M. v. Herrera for Cnty. of Bernalillo N.M., No. CV 06-0834-MLB, 2006 WL 8443574, at *4 (D.N.M. Oct. 11, 2006); see generally Louis D. Brandeis Ctr. for Hum. Rts. Under L. v. President & Fellows of Harvard Coll., No. CV 24-11354-RGS, 2024 WL 4681802, at *4 (D. Mass. Nov. 5, 2024) (noting that even if "claims will require individualized consideration of these members' experiences, this is no bar to

associational standing because the requested injunctive relief will inure to the benefit of all injured . . . members").

For these reasons, Youth Movement has sufficiently alleged each prong of the associational standing analysis.[2] Therefore, the court concludes that Youth Movement has associational standing to bring its claim, in addition to and independent from its organizational standing, which the court has already discussed.


II.    Political Question

The Secretary argues briefly that the court should dismiss Youth Movement's claim because it poses a nonjusticiable political question. In short, he contends that the choice to require documentary evidence of citizenship was a "policy determination that is inextricable from the merits of this lawsuit" and cannot be adjudicated by a court. Doc. no. 54-1 at 18. The Secretary is incorrect.

"The political question doctrine bars courts from adjudicating issues that are 'entrusted to one of the political branches or involve[ ] no judicially enforceable rights.'" Castro v. New Hampshire Sec'y of State, 701 F. Supp. 3d 176, 185 (D.N.H.) (quoting Vieth v. Jubelirer, 541 U.S. 267, 277 (2004)), aff'd sub nom. Castro v. Scanlan, 86 F.4th 947 (1st Cir. 2023). Here, Youth Movement brings a constitutional challenge to HB 1569 based on its allegation that the

---

[2] The Secretary argues in his reply that associational standing is unavailable for claims brought under 42 U.S.C. § 1983. Doc. no. 70 at 2-3. "Arguments raised for the first time in a reply brief, however, are waived." Kia Am., Inc. v. DMO Auto Acquisitions, LLC, 775 F. Supp. 3d 607, 622 n.6 (D.N.H. 2025) (quotations omitted). Regardless, that argument relies on precedent from the Second Circuit, see doc. no. 70 at 2 (citing Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011)), which the First Circuit has not adopted and which is contrary to First Circuit precedent, R.I. Bd. of Corr. Officers v. Rhode Island, 357 F.3d 42, 48 (1st Cir. 2004) (noting that "section 1983 claims are governed by *federal* standing rules, which allow an association to sue on behalf of its members").

law constitutes an unjustifiable burden on the right to vote. To find that such a challenge raises a nonjusticiable political question "would result in the court abdicating from its role to address disputes that arise under the Constitution or federal statutes." People First of Ala., 467 F. Supp. 3d at 1205 (rejecting argument that constitutional and statutory claims challenging election laws burdening the right to vote raised nonjusticiable political questions); Tex. Democratic Party v. Abbott, 961 F.3d 389, 398-99 (5th Cir. 2020) (rejecting argument that case presented a nonjusticiable political question because the court "must decide only whether the challenged provisions of the Texas Election Code run afoul of the Constitution, not whether they offend the policy preferences of a federal district judge. The standards for resolving such claims are familiar and manageable, and federal courts routinely entertain suits to vindicate voting rights."); Fair Fight Action, Inc. v. Raffensperger, 634 F. Supp. 3d 1128, 1195-96 (N.D. Ga. 2022) (holding that the defendants have not shown that the political question doctrine bars the plaintiffs' claims noting that the case is about "voting rights and whether Georgia's election laws and policies unduly burden individuals' right to vote. Clearly, there are judicially manageable standards for evaluating such complaints—the Anderson-Burdick framework exists for precisely this purpose."). Youth Movement's claim does not present a nonjusticiable political question.

III.    Merits

The Secretary also argues that the complaint should be dismissed because it fails to state a viable claim for relief. As discussed above, Youth Movement alleges that HB 1569 unjustifiably burdens the right to vote in violation of the First and Fourteenth Amendments by eliminating the Qualified Voter Affidavit. The parties agree that election law challenges such as these are analyzed under the so-called Anderson-Burdick framework. See Anderson v.

Celebrezze, 460 U.S. 780 (1983); Burdick v. Takushi, 504 U.S. 428 (1992). Anderson-Burdick

requires the court to "weigh the 'character and magnitude of the asserted injury to' the voters'

rights against the 'precise interests put forward by the State as justifications for the burden

imposed.'" Common Cause R.I. v. Gorbea, 970 F.3d 11, 14 (1st Cir. 2020) (per curiam) (quoting

Anderson, 460 U.S. at 789); see Crawford v. Marion County Election Bd., 553 U.S. 181, 190

(2008). To determine the burdens placed on voters, the court looks to "the statute's broad

application to all . . . voters," as well as the "'limited number of persons' on whom '[t]he burdens

that are relevant to the issue before [the court]' will be 'somewhat heavier.'" Fish, 957 F.3d at

1127 (ellipsis in original) (quoting Crawford, 553 U.S. at 202-03, 198-99).

The Secretary essentially argues that Youth Movement's allegations as to the burdens HB

1569 imposes are conclusory or otherwise insufficient. That argument ignores the adequately-

pleaded burdens discussed throughout the complaint. See, e.g., doc. no. 50, ¶¶ 14-27. The Amici

Parties[3] expand on the Secretary's argument, adding that Youth Movement's claim fails because

"it relies on idiosyncratic burdens on voters who wait until election day to register; and any

alleged burdens are outweighed by the State's compelling interests in election integrity and

security." Doc. no. 55 at 4. Specifically, the Amici Parties contend that the elimination of the

Qualified Voter Affidavit is either not a burden or is, at worst, an "idiosyncratic burden" on

election-day registrants because: 1) the Constitution does not require New Hampshire to provide

the Affidavit, and 2) most voters have documentary proof of citizenship "at the ready" or "they

can get them quickly and easily." Id. at 2.

---

[3] The Amici Parties are the Republican National Committee and the New Hampshire
Republican State Committee.

The Amici Parties raised identical arguments in a companion case, Coalition for Open Democracy v. Scanlan, No. 24-CV-312-SE (D.N.H.), in which they are also Amici Parties. This court recently addressed those arguments and denied the defendants' motion to dismiss, explaining that the Amici Parties' "arguments either misunderstand the Anderson-Burdick framework, misunderstand the plaintiffs' burden at the pleading stage, or both." Coal. for Open Democracy v. Scanlan, No. 24-CV-312-SE, 2025 WL 2147159, at *13 (D.N.H. July 29, 2025). The court need not repeat its analysis here but suffice it to say, the arguments fail here for the same reasons. Youth Movement has adequately alleged that HB 1569's elimination of the Qualified Voter Affidavit unjustifiably burdens the right to vote in violation of the First and Fourteenth Amendment. The Secretary's motion to dismiss Youth Movement's claim on the merits is denied.

## Conclusion

For the foregoing reasons, the court denies the defendant's motion to dismiss the first amended complaint (doc. no. 54).

SO ORDERED

_____
Samantha D. Elliott
United States District Judge

August 13, 2025

cc:  Counsel of Record.

20