## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW HAMPSHIRE

NEW HAMPSHIRE YOUTH MOVEMENT,

    *Plaintiff*,

    v.

DAVID M. SCANLAN, in his official capacity
as New Hampshire Secretary of State,

    *Defendant*.

Consolidated Cases
Case No. 1:24-cv-00291-SE-TSM

COALITION FOR OPEN DEMOCRACY, *et al.*,

    *Plaintiffs*,

    v.

DAVID M. SCANLAN, in his official capacity
as New Hampshire Secretary of State, *et al.*,

    *Defendants*.

## CONSOLIDATED PLAINTIFFS' MOTION TO COMPEL RESPONSIVE DOCUMENTS

## (Expedited Treatment Requested Under Local Rule 7.1(f))

The Consolidated Plaintiffs in these lawsuits move to compel Defendants Secretary of State David M. Scanlan and Attorney General John M. Formella (together the "Defendants") to search for, collect, and produce documents generated after June 1, 2025 concerning HB 464 and its implementation. Given the looming February 9, 2026 trial and Defendants' pending motion for summary judgment, Plaintiffs respectfully request expedited consideration of this motion.

## INTRODUCTION

The Governor signed HB 464 on August 1, 2025, amending certain provisions originally changed or crafted by HB 1569. In response to Plaintiffs' discovery requests about HB 464, Defendants have asserted they will not search for, collect, or produce documents generated after June 1, 2025 concerning HB 464 because "[s]uch a search and collection would be irrelevant" given that "this lawsuit challenges the constitutionality of HB 1569, not HB 464." *Exhibit B*, at 12. Now that discovery has closed, Defendants have reversed course and seek to rely on HB 464, including in their motion for summary judgment. *See generally* ECF No. 88-1, at 2, 5–6, 29.

Defendants have only agreed to produce documents on which they will affirmatively rely at trial concerning HB 464—namely, as they stated in a November 20, 2025 email to Plaintiffs, forthcoming "final guidance, policies, or agreements issued by the State Department implementing HB 464" when completed in the ordinary course. Yet Defendants do not even know when that guidance will be finalized (let alone produced to Plaintiffs), and some relevant portions of the law do not take effect until just days before trial. This raises a high likelihood that Defendants will wait until the eve of trial to produce critical information—even though some of it is relevant and in their possession today. Furthermore, Defendants may not properly pick and choose and produce only evidence upon which they plan to rely. If the subject is relevant—and by affirmatively relying on it, Defendants have conceded it is—Plaintiffs are entitled to *all* discovery relevant to HB 464's

1

implementation, including documents and testimony that may conflict with Defendants' preferred narratives. *See* Fed. R. Civ. P. 26(b)(1).  Plaintiffs have repeatedly sought this information before the November 3, 2025 discovery deadline, and Defendants' obligation to supplement their discovery responses applies even after this deadline.

Defendants' apparent effort to invoke the deliberative process privilege to shield relevant discovery concerning HB 464 fails at each step. *First*, even if this Court were to embrace the questionable proposition that the deliberative process privilege can be invoked in federal court by state agencies, the privilege was not properly invoked here, as Defendants failed to meet all procedural requirements. *Second*, if the privilege has been properly invoked, it is nonetheless outweighed by Plaintiffs' compelling evidentiary need, especially given Defendants' attempt to rely on HB 464 while shielding potentially harmful discovery. *Third*, Defendants waived the privilege through selective deposition testimony and public statements on the implementation of HB 464. *Finally*, even if the privilege applied to *internal* agency materials and was not waived, this Court should order Defendants to search for and produce discovery that is undisputably not protected by the deliberative process privilege: namely, *external* communications and factual material concerning the implementation of HB 464.

In short, Defendants cannot have it both ways: Having now—after the close of discovery—contradicted their prior insistence that HB 464 is irrelevant, injected HB 464 into their defense, and declared their intent to rely on HB 464 at trial, the prompt production of records concerning the implementation of HB 464 is necessary to prevent prejudice.

## BACKGROUND

While this lawsuit was pending, the legislature enacted HB 464 (*Exhibit A*), which amended several statutory provisions relevant to HB 1569's changes. The Governor signed it into

law on August 1, 2025. HB 464 modifies New Hampshire's voting requirements in several ways.

*First*, Sections 3 and 4 of HB 464—effective September 30, 2025—make changes to reflect officials' ability to rely on official records of prior New Hampshire voter registration as proof of citizenship. *See* Ch. 277:3 (amending RSA 654:12, I(a)); Ch. 277:4 (amending RSA 654:12, III).

*Second*, Section 5 of HB 464—effective February 1, 2026—adds Paragraph VI to RSA 654:12 to authorize local election officials' access to databases, including the Statewide Voter Registration System ("SVRS"), Department of Motor Vehicles ("DMV"), and New Hampshire Vital Records, "to assist voters in providing proof of citizenship, age, domicile, and identity to the city and town clerks." Ch. 277:5 (enacting RSA 654:12, VI). This new paragraph further provides that "[t]he secretary of state shall work with the city and town clerks to ensure access [to these resources] on election day at the polling location." *Id.* (enacting RSA 654:12, VI).

*Third*, Section 10 of HB 464—which will become effective on December 31, 2025—states at new RSA 5-C:9, X that "[t]he New Hampshire department of state, city clerks, town clerks, and supervisors of the checklist shall have a direct and tangible interest in a limited data set of birth, death, marriage, and divorce information of individuals registering to vote and maintaining voter records as provided in RSA 654:45, IV."[1]

After HB 464's enactment, the Open Democracy Plaintiffs asked Defendants to supplement their discovery responses. On August 18, 2025, they wrote to Defendants: "[R]egarding House Bill 464, we believe this is covered by RFPD 15, and Interrogatories 9 and 12. . . . [W]e'd hope your clients would supplement their responses to those with respect to HB

---

[1] *See also* HB 464 Chs. 277:2 (Voter Database; Components for Voter Eligibility Determination) (effective September 30, 2025); 277:9 ("New Paragraph; Social Security Numbers; Driver's License Records") (effective December 31, 2025).

464, by September 2 . . . ." The next day, Plaintiff New Hampshire Youth Movement emailed Defendants stating that they shared this view.

On September 30, 2025, Defendants produced 33 documents purportedly located using the search term "HB 464" and indicated that this production contained "[d]ocuments and communications created after HB 464 was introduced, collected between March and August 2025, not previously produced in this lawsuit." However, of the approximately 33 documents produced using the "HB 464" search term, almost all the communications produced pre-dated June 1, 2025, and approximately five other emails were sent or received in early June 2025. To date, Defendants have produced no other documents created since early June 2025 concerning HB 464's implementation.[2]

Further, Defendants formally stated in supplemental responses on October 9, 2025 that they refuse to search for, collect, or produce documents generated after June 1, 2025 concerning HB 464 and its implementation. "Such a search and collection," according to Defendants, "would be _irrelevant_, unduly burdensome, and disproportionate to the needs of the case," and Defendants insisted they "will not conduct additional document collection." _See Exhibit B_, at 12, 14 (emphasis added).[3] On October 13, 2025, Open Democracy Plaintiffs responded:

> We've received your responses regarding HB 464. We understand your clients are refusing to conduct a new search as irrelevant, unduly burdensome, and disproportionate. Our view is that we're entitled to probe any evidence your clients may seek to introduce at trial. So, if your clients are intending to argue on the merits that HB 464 and/or its implementation lessen the burden on voters, we are going to object to that evidence/argument on the basis that they have refused to provide discovery.

---

[2] Many of the documents appear to be emails from the same email thread, and 9 of the 33 documents produced were heavily or entirely redacted so that they reflect virtually no substantive information about the State's implementation of HB 464. Further, on October 22, 2025, Defendants produced the New Hampshire Secretary of State's completed guidance to city and town clerks, dated October 17, 2025, regarding Vital Records' assistance to the voter registration process.

[3] _See also Exhibit C_, at 2 (objecting to all requests that "would require recollection of documents generated after June 1, 2025, as unduly burdensome and disproportionate to the needs of the case.").

Defendants' responded that day indicating they would "talk about the few remaining open

issues internally and get back to [Plaintiffs] with any additional thoughts."

After the conclusion of depositions where litigants in this case conducted approximately

15 depositions in less than three weeks, on October 28, 2025—six days before the close of

discovery on November 3, 2025—the Open Democracy Plaintiffs followed up with Defendants,

requesting, in part, "[m]aterials/notes from any trainings/webinars/other meetings with election

officials where HB 1569 (or 464) was a topic" and "[a]ny recent communications/materials on

implementing 464."

Subsequently, Defendants' November 7, 2025 summary judgment motion confirmed

Defendants' intent to rely on HB 464 in defending the constitutionality of HB 1569. As a result,

Plaintiffs contacted Defendants on November 14, 2025 to confer on this matter. Following a

November 18, 2025 conference, Defendants affirmed their position in a November 20, 2025 email

where they refused to conduct a new search and only agreed to produce "final guidance, policies,

or agreements issued by the State Department." Accordingly, Plaintiffs seek an order from this

Court compelling this discovery.

## DISCOVERY REQUESTS AT ISSUE

Pursuant to Local Rule 37.1(a), the requests and responses at issue are reproduced here,

with emphasis added:

> **Open Democracy Plaintiffs Request No. 15 (_Exhibit B_ at 12)**: All documents and
> communications related to policies, practices, or procedures concerning any processes,
> other than those related to the enforcement or implementation of HB 1569, that could be
> used to identify whether voter registration applicants are U.S.-citizens, including but not
> limited to actual or possible use of the federal SAVE database, the federal Social Security
> Number Verification Service, the New Hampshire Vital Records Information Network
> (NHVRIN), the New Hampshire Division of Motor Vehicles records, or any other database
> containing birth, immigration, or citizenship information.

**Defendant's [October 9, 2025 Supplemental] Objections:** Defendants incorporate by reference the general and specific objections to this Request as stated in Defendants' First Supplemental & Amended Responses. Since that first supplement, Plaintiffs requested that Defendants supplement and amend this Response to address the enactment of HB 464. Defendants object to Plaintiffs' request for supplementation because Request No. 15 is specific to HB 1569. HB 464 modifies many of the same laws amended by HB 1569, *but this lawsuit challenges the constitutionality of HB 1569, not HB 464. Thus, Defendants also object to producing documents and communications if Plaintiffs expect Defendants to conduct a new search and collection of responsive documents. Such a search and collection would be irrelevant, unduly burdensome, and disproportionate to the needs of the case.* Subject to and without waiving the foregoing objections, Defendants respond as follows: ….

[and]

**Defendant's [Supplemental] General Objections [at 2]**: …. Plaintiffs' counsel requested that Defendants supplement their document production, at least regarding Request No. 15, as HB 464 could modify that Response and production of documents. *Defendants object to all Requests to which document production would require recollection of documents generated after June 1, 2025, as unduly burdensome and disproportionate to the needs of the case.*

\*       \*       \*

**Youth Movement Plaintiff Request No. 4 (*Exhibit C* at 4)**: All documents relating to any policy, practice, or procedure for investigating or confirming the citizenship status of New Hampshire voters or voter registration applicants.

**Defendant's [Supplemental October 9, 2025] Objections**: Defendant incorporates by reference the general and specific objections to this Request as stated in Defendant's First Supplemental & Amended Responses. Subject to and without waiving those objections, Defendant responds as follows:

**Defendant's [Supplemental October 9, 2025] Response**: The Office has completed its reasonably diligent search for responsive documents, which may be found in the Second, Third, Fourth, Eighth, and Eleventh Productions. All responsive records have either been produced or withheld for the reasons stated in Defendant's privilege log. Please also refer to OD Reqs. Prod. Docs. Resps. Nos. 12 and 15.

[and]

**Defendant's [Supplemental] General Objections [at 2]**: …. Plaintiffs' counsel requested that Defendants supplement their document production, at least regarding the Open Democracy Plaintiffs' Request No. 15, as HB 464 could modify that Response and production of documents. *Defendants object to all Requests to which document production*

*would require recollection of documents generated after June 1, 2025, as unduly burdensome and disproportionate to the needs of the cas*e.

## MOTION TO COMPEL

"Information is generally discoverable if it is: (1) non-privileged; (2) relevant to any party's claim or defense; and (3) proportional to the needs of the case." *Fraser Eng'g Co. v. IPS-Integrated Project Servs.*, No. 17-cv-102-JD, 2018 U.S. Dist. LEXIS 110312, at *3–4 (D.N.H. Jan. 22, 2018) (citing Fed. R. Civ. P. 26(b)(1)); *see* Fed. R. Civ. P. 26(b)(1). "When a party refuses to produce a document when requested, the party seeking that document may move to compel its production." *Fraser Eng'g Co.*, 2018 U.S. Dist. LEXIS 110312, at *3–4 (citing Fed. R. Civ. P. 37(a)(3)(B)(iv)). "The movant bears the initial burden of proving that the information it seeks is relevant for the purposes of discovery." *Id.* Evidence is relevant if it "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (referencing Rule 26(b)(1) before 2015 amendment).[4] "Once a showing of relevance has been made, the objecting party bears the burden of showing that [the] request is improper." *Cont'l W. Ins. v. Opechee Constr. Corp.*, No. 15-cv-006-JD, 2016 U.S. Dist. LEXIS 54716, at *3 (D.N.H. Apr. 25, 2016).

"The purpose of pretrial discovery is to make trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Wamala v. City of Nashua*, No. 09-cv-304-JD, 2010 U.S. Dist. LEXIS 105229, at *1 (D.N.H. Sept. 20, 2010) (internal quotation marks omitted). In that spirit, "[u]nder Rule 26(e), parties have an ongoing obligation to continuously supplement their discovery responses," and "[t]hat obligation is in no way limited by the discovery deadlines imposed by the Court's Scheduling Order …." *United States v. Louisiana*, No. CV 11-470-JWD-RLB, 2015 WL 5595630, 2015 U.S. Dist. LEXIS

---

[4] *See also Martin v. Evans*, No. 16-cv-11362-PBS, 2018 U.S. Dist. LEXIS 233381, at *4 (D. Mass. Feb. 6, 2018).

125691, at \*5 (M.D. La. Sept. 21, 2015).  Because Defendants have failed to meet their discovery obligations with respect to HB 464, an order is warranted compelling the supplement that Plaintiffs request.

## I.    Plaintiffs Seek to Compel Relevant and Timely Discovery.

This motion is straightforward. Defendants have made HB 464 central to their defense, but they refuse to supplement discovery responses and produce documents generated after June 1, 2025—including those generated after HB 464 was signed into law on August 1, 2025. Defendants refuse because they believe "[s]uch a search and collection would be irrelevant, unduly burdensome, and disproportionate to the needs of the case," *Exhibit B*, at 12, and because, as they stated in a November 20, 2025 email to Plaintiffs, "discovery closed almost 3 weeks ago" on November 3, 2025.   These objections are without merit: documents concerning HB 464's implementation will feature critically in Defendants' defense, and certainly "bear[] on" or "reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund*, 437 U.S. at 351. And Defendants have a continuing obligation to update their responses and supplement their productions regardless of the close of discovery. *See Klonoski v. Mahlab*, 156 F.3d 255, 272 (1st Cir. 1998) ("The fact that a party had not actually obtained certain documents before the discovery deadline does not excuse a violation.").[5]

This relevancy is confirmed by Defendants' November 7, 2025 Motion for Summary Judgment, which relies on HB 464. For example, Defendants' memorandum states:

> HB 1569 replaced affidavit-based attestations with flexible documentation requirements to confirm registering voters' qualifications. *House Bill 464 ("HB 464") refined the framework by providing additional resources from which voter eligibility may be determined quickly and easily—in some instances, without the voter lifting a finger.*

---

[5] *See also FDIC v. Arrillaga-Torrens*, 212 F. Supp. 3d 312, 367 (D.P.R. 2016) ("The duty extends past the discovery cut-off date."); *Pizza Pub. Co. v. Tricon Glob. Rests., Inc.*, 99 Civ. 12056 (BSJ)(MHD), 2000 U.S. Dist. LEXIS 14252, at \*4 (S.D.N.Y. Sep. 28, 2000) (concluding as "plainly wrong" under Rule 26(e) "that the obligation to supplement does not extend to documents that come into the party's possession after the close of discovery").

> *Together, these reforms ensure that New Hampshire maintains an accessible yet secure voter registration process.*

ECF No. 88-1, at 2 (emphasis added); *see also id.* at 5–6. And Defendants argue that "*[t]he Open Democracy Plaintiffs have not articulated* whether this Court should enjoin enforcement of all provisions of HB 1569 or *how that relief would impact the amendments to state law, enacted by HB 464*," *id.* at 29 (emphasis added)—despite previously asserting in discovery that HB 464 is "irrelevant" because "this lawsuit challenges the constitutionality of HB 1569, not HB 464." Other language in that brief reveals that HB 464 will almost certainly feature even more prominently in their defense when this Court addresses the merits at trial. *See generally id.*

Furthermore, given that Section 5 of HB 464—which seeks to provide election workers with access to certain databases to confirm citizenship—becomes effective on February 1, 2026, Defendants are almost certain to promulgate "final" guidance on the eve of the February 9, 2026 trial and wield those documents as a defense. Such a late disclosure of how the State intends to comply with HB 464 would be especially prejudicial to Plaintiffs where Defendants' counsel frequently and broadly invoked the deliberative process privilege to avoid answering questions on HB 464's implementation. For example, at the October 21, 2025 deposition of Kristin Martino, the Director & Registry of Vital Records at the Secretary of State's Office, Defendants' counsel objected to any testimony about any internal discussions regarding HB 464's implementation:

> Q. Did you have a discussion with the other individuals listed on the email here about this message [concerning HB 464]?
> A. I don't know if it was about this message in particular, but it was about [HB] 464, yes. I don't know if [Assistant Secretary of State employee] Kaley Dion, who's copied on this message, was necessarily involved, but --
> Q. Can you tell me about that discussion?
> MR. BROADHEAD: *Objection. Deliberative process and possibly attorney-client privileged, depending on who was there.* If you had discussions with legislators, you can talk about that, but --
> THE WITNESS: I --
> MR. BROADHEAD: -- *internal discussions don't talk about.*

THE WITNESS: Yeah. I didn't talk to any legislators ….

Q. Again, without getting any privileged conversations, if possible, did you discuss during
that meeting the implementation of HB 464?
MR. BROADHEAD: *Objection. Please, don't answer it. Deliberative process*, attorney-
client privilege.
BY MR. ATKINS:
Q. Did you provide any advice on its implementation?
MR. BROADHEAD: Objection. Same.
BY MR. ATKINS:
Q. Apart from this particular discussion, but more broadly, have you raised
any concerns to Mr. Scanlan about challenges associated with implementing HB   464?
MR. BROADHEAD: Objection. Same.

Martino Dep. at 112:24–113:18, 115:8–116:1 (*Exhibit D*) (emphasis added).

While Defendants have now indicated that they are only willing to produce any document

on which they intend to rely at trial when it becomes "final"—namely, forthcoming guidance

concerning implementation of HB 464—that does not comply with Rule 26. Defendants have not

said when such guidance might be finalized, and some relevant portions of the law do not take

effect until February 1, 2026, just days before trial. Moreover, Plaintiffs are entitled to more than

just the exhibits upon which Defendants plan to rely; rather, Plaintiffs are entitled to *all discovery*

relevant to HB 464, including documents and testimony that may conflict with Defendants'

preferred narratives. *See* Fed. R. Civ. P. 26(b)(1).[6] Plaintiffs have established relevance.

## II.    Defendants Cannot Show that the Discovery Sought is Otherwise Improper.

During and after the parties' meet-and-confer, Defendants indicated their intent to

primarily rest on their assertion that a "deliberative process" privilege relieves them of the

obligation to search for and produce documents generated after June 1, 2025 concerning HB 464's

implementation. This argument fails for several reasons.

---

[6] *See also Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) (magistrate judge granting motion to compel when defendant "leaves the plaintiff wondering what documents are being produced and what documents are being withheld," and seeks "to be the sole arbiter of [the] decision" whether to turn over discovery).

**1.      Even Assuming that the Deliberative Process Privilege Applies Here, Defendants Have Not Properly Invoked the Privilege**. While at least one district court in New Hampshire has examined the federal deliberative process privilege without considering the threshold question of whether this privilege can be invoked by state and local entities in federal court, *see Gomez v. Nashua*, 126 F.R.D. 432, 434 (D.N.H. 1989), the ability of state agencies to assert the privilege here is questionable.  *See, e.g., Buford v. Holladay*, 133 F.R.D. 487, 494 (S.D. Miss. 1990) (noting that the federal "deliberative process privilege has traditionally been applied only to communications relating to policy formulations at the highest levels of the federal executive branch").[7]  The ability to assert the deliberative process privilege here is especially suspect where New Hampshire law has not formally recognized this privilege at common law.[8]

---

[7] *See also, e.g., Fish v. Kobach*, No. 16-2105-JAR, 2017 WL 1373882, 2017 U.S. Dist. LEXIS 58280, at *15 (D. Kan. Apr. 17, 2017); *BBC Baymeadows, LLC v. City of Ridgeland*, No. 3:14-cv-676, 2015 WL 5943250, 2015 U.S. Dist. LEXIS 139217, at *15–16 (S.D. Miss. Oct. 13, 2015); *Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.*, No. 1:15-MC-39-SEB-DKL, 2015 WL 6695510, 2015 U.S. Dist. LEXIS 148678, at *13 (S.D. Ind. Nov. 3, 2015).

[8] Federal courts do not extend comity to state privileges that the state itself does not recognize. *See Buford*, 133 F.R.D. at 494 (rejecting comity-based recognition of a deliberative process privilege for state agency where the court could find "no evidence of a privilege for the deliberative processes of a state governmental agency" under state law); *see also Murdock v. City of Chicago*, 565 F. Supp. 3d 1037, 1042–44 (N.D. Ill. 2021) (because Illinois does not recognize the deliberative process privilege, declining to recognize such a privilege out of comity); *Valbruna*, 2015 U.S. Dist. LEXIS 148678, at *14–15 ("if a state does not recognize the privilege and does not afford its own agencies that protection, then comity does not impel a federal court to apply the privilege in federal-question cases, and there is no evident independent federal interest or purpose that is served in doing so"). And here, "[t]he deliberative process privilege has not been recognized by the New Hampshire Supreme Court." *State v. Hess Corp.*, No. 03-C-0550, 2009 WL 8129777 (N.H. Super. Ct., Merrimack Cty. Nov. 20, 2009) ("At this time, the Court declines to adopt the deliberative process privilege, especially in light of the defendants out-of-jurisdiction case law to support their argument that such a privilege would not be applicable to the DOJ.  Because the Court has declined to adopt the deliberative process privilege . . . the [agency] plaintiff is to produce all responsive, non-privileged documents from the DOJ."); *see also New Hampshire Republican State Comm. v. Hassan*, No. 2016-CV-612, 2017 WL 751984, 2017 N.H. Super. LEXIS 3, at *14 n.3 (N.H. Super. Ct., Merrimack Cty., Jan. 17, 2017) (in a public records case, noting that "[t]he New Hampshire Rules of Evidence contain almost identical language" to those of other states that have "declined to recognize a deliberative privilege").

While New Hampshire's Right to Know Law creates a *statutory* exemption from public records requests for certain preliminary drafts, *see* RSA 91-A:5, IX, that privilege applies "in civil proceedings under the authority of [the Right to Know Law]."  *See* Order, NH Dep't of State, *In re Local Gov' Ctr., Inc.*, Case No. C-2011000036, at *4 (Feb. 21, 2012), https://www.sos.nh.gov/sites/g/files/ehbemt561/files/inline-documents/sonh/2-21-12-order-regarding-additional-production-of-bsr-documents.pdf.  And even the N.H. Department of State has concluded that it "is less settled in New Hampshire" whether the deliberative process privilege could extend beyond such bounds.  *Id.*

But even if Defendants could assert a federal privilege over state agency records, it was
not properly invoked. "[A] series of procedural requirements" must be met "to properly invoke the
deliberative process privilege: (i) the head of an agency or a properly chosen subordinate must
invoke the privilege; (ii) the agency head or delegate must specifically identify which records are
subject to the privilege; and (iii) the agency head or delegate must provide specific reasons for
withholding the requested document." *In re Upstream Addicks & Barker (Texas) Flood-Control
Reservoirs*, 152 Fed. Cl. 114, 121 (2021); *see also, e.g.*, *In re McKesson Governmental Entities
Average Wholesale Price Litig.*, 264 F.R.D. 595, 601 (N.D. Cal. 2009). "[C]ourt[s] carefully
scrutinize[] the manner of assertion of the [deliberative process] privilege." *Pac. Gas & Elec. Co.
v. United States*, 70 Fed. Cl. 128, 134 (2006) (quoting *Revelle v. Trigg*, No. 95-5885, 1999 U.S.
Dist. LEXIS 890, at *4-5 (E.D. Pa. Feb. 2, 1999)), *modified on reconsideration*, 71 Fed. Cl. 205
(2006). "Generally, the deliberative process privilege may be invoked only by the agency head
after personally reviewing the documents for which the privilege is asserted." *In re McKesson*, 264
F.R.D. at 601. In some circumstances, "the head of an Agency can, when carefully undertaken,
delegate authority to invoke the deliberative process privilege on the Agency's behalf." *Pac. Gas
& Elec. Co.*, 70 Fed. Cl. at 134 (quoting *Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d
1302, 1308 (Fed. Cir. 2006)). But "[m]any courts have found that the deliberative process privilege
may not be asserted by government counsel." *Id.* at 135 (collecting cases). Critically, "the agency
head or delegate may only invoke the privilege after 'thorough' and 'personal review.'" *In re
Upstream Addicks*, 152 Fed. Cl. at 122 (quoting *Marriott Int'l Resorts*, 437 F.3d at 1307).

The agency head's affidavit further "must state with particularity" precisely what
"information or documents [are] sought to be shielded." *Pac. Gas & Elec. Co.*, 70 Fed. Cl. at 135
(cleaned up). Moreover, "the agency must supply the court with precise and certain reasons for

maintaining the confidentiality of the requested document." *Id*. (internal quotation marks omitted). Thus, "[b]lanket assertions of the privilege are insufficient." *Id.*[9]

Defendants have failed each procedural requirement. The privilege was invoked by counsel, not the agency head or a carefully selected designate. In fact, although the agency official designated to testify under Rule 30(b)(6) on deposition topics related to HB 464 spoke about HB 464's implementation without asserting an objection, *see* Piecuch Dep. at 275:4–300:15 (*Exhibit D*), defense counsel repeatedly cut off testimony by another agency official involved in the implementation of HB 464, instructing her not to answer under the deliberative process privilege, *see* Martino Dep. at 112:24–113:18, 115:8–116:1 (*Exhibit D*). Defendants have produced no affidavit and have made no efforts to describe the information withheld under the privilege. Nor have Defendants justified with particularity why each item is privileged. Rather, they have asserted a blanket privilege and refused to even attempt a supplemental search for such documents.[10]

**2.    Any Privilege is Overcome**. Even if Defendants could make a showing that the privilege applied[11], it is outweighed by a compelling evidentiary need—as demonstrated by Defendants' reliance on HB 464 in their defense of this case. The deliberative process privilege is a narrowly construed, qualified privilege, and courts are obligated to balance conflicting interests

---

[9] *See also, e.g.*, *Kannaday v. Ball*, 292 F.R.D. 640, 645 (D. Kan. 2013) (discussing required showing for privilege); *Chesapeake Operating v. Skyblue Enters.*, No. 19-CV-043-J, 2021 U.S. Dist. LEXIS 134376, at *8 (D. Wyo. Mar. 26, 2021) (same).

[10] Nothing Defendants might attach in their opposition to this motion to compel would remedy these deficiencies. "[T]he time to make the showing that certain information is privileged is at the time the privilege is asserted, not months later when the matter is before the Court on a motion to compel." *Anderson v. Marion Cnty. Sheriff's Dep't*, 220 F.R.D. 555, 562 n.5 (S.D. Ind. 2004); *see Pac. Gas & Elec. Co.*, 70 Fed. Cl. at 135-36 (collecting cases).

[11] "The deliberative process privilege protects the internal deliberations of an agency in order to prevent 'injury to the quality of agency decisions.'" *Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438, 1458 (1st Cir. 1992) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975)). In order for the privilege to apply, the information must meet two requirements: it must be (1) pre-decisional—that is, antecedent to the adoption of agency policy—and (2) deliberative—that is, related to the process by which policies are formulated. *Texaco Puerto Rico, Inc., v. Dep't of Consumer Affs.*, 60 F.3d 867, 884 (1st Cir. 1995) (internal quotations omitted). "Because the . . . privilege is restricted to the intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process, factual statements or post-decisional documents explaining or justifying a decision already made are not shielded." *Id.* at 884–85.

on a case-by-case basis.[12] Defendants cannot use the privilege as both a sword and a shield. As explained throughout this motion, allowing Defendants to rely on favorable evidence related to HB 464 but hide other relevant information on privilege grounds will prejudice Plaintiffs.

**3.      Any Privilege Has Been Waived.** Even setting aside these deficiencies, any assertion of the deliberative process privilege related to HB 464 has been waived. *See United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 684–86 (1st Cir. 1997) (noting that voluntary disclosure of privileged material may result in a waiver). Notwithstanding the deliberative process objections at Ms. Martino's deposition, Patricia Piecuch, the Director of Elections at the New Hampshire Secretary of State's Office, testified later that same day on the implementation of HB 464. Ms. Piecuch testified to some aspects of the Secretary of State's Office's efforts to implement HB 464, including how the agency was still working on "gathering all the data fields and the requirement necessary in order to get the information from vital records and to build it into their statewide voter registration database." Piecuch Dep. at 279:19-280:6 (*Exhibit D*); *see* HB 464 Ch. 277:10 (*Exhibit A*); *see generally* Piecuch Dep. at 275:4-300:15 (*Exhibit D*).

Defendants' public statements also amount to waivers of privilege. *See Shell Oil Co. v. IRS*, 772 F. Supp. 202, 211 (D. Del. 1991) (agency waived deliberative process privilege for draft definition when employee read definition aloud at public meeting). For instance, on August 5, 2025—several days after the Governor signed HB 464—Secretary Scanlan gave a presentation to the National Association of Secretaries of State on "Voter Education and Assistance for New Voter Citizenship Requirements," at which he discussed aspects of HB 464's implementation.[13] Yet the

---

[12] *See Texaco Puerto Rico, Inc.*, 60 F.3d at 885 ("Thus, in determining whether to honor an assertion of the privilege, a court must weigh competing interests. At bottom, then, the deliberative process privilege is a discretionary one.") (internal quotations omitted); *see also Gomez*, 126 F.R.D. at 434 (noting "case-by-case basis").
[13] *See* N.H. Sec'y of State David M. Scanlan, *Voter Edcuation and Assistance for New Voter Citizenship Requirements*, https://www.nass.org/sites/default/files/Summer%202025%20Presentations/presentation-nh-summer25.pdf

Secretary will not disclose anything except "final" materials with Plaintiffs. The Secretary should not be permitted to invoke a privilege over information he shared with a convention of his peers.

    **4.**      **Defendants Must Search for Responsive Records**. Finally, Defendants should be required to search for and produce records or portions of records that are not plausibly covered by the deliberative process privilege in any form. For one, Defendants have refused to produce (or even search for) communications or records shared _externally_ concerning the implementation of HB 464 that would _not_ be protected by the privilege. Further, factual material contained in deliberative documents falls outside of the privilege to the extent that it is severable.[14] Accordingly, even if this Court found that the privilege applied, was properly asserted, and not waived, it should at minimum grant Plaintiffs' motion as to any external and factual material contained in the deliberative materials.[15]

    WHEREFORE, for the reasons stated above, Plaintiffs request that the Court:

    a) Compel Defendants to search for, collect, and produce documents generated after June 1, 2025 concerning HB 464 and its implementation by Defendants within seven (7) of the date of the Court's order;

    b) Allow Plaintiffs to re-open discovery for the limited purpose of deposing Defendants or their Rule 30(b)(6) designee(s) about HB 464 and any documents produced in response to any order to compel production issued by this Court; and

    c) Other and further relief as this Court deems just and proper in the circumstances.

---

[https://perma.cc/F6P4-5R9Y] (last accessed Nov. 19, 2025). According to a slide titled "Implementation: City Elections this fall through Mid-Terms," he spoke about plans to implement several aspects of HB 464's new requirements, including "verify[ing] qualifications with Secretary of State links to various databases such as . . . NH DMV [records]," namely "Real ID citizenship verification records," and New Hampshire "Vital Records."

[14] _See Anderson_, 220 F.R.D. at 562 ("The privilege does not extend to factual or objective material or to documents that the agency adopts as its position on an issue.") (quoting _K.L. v. Edgar_, 964 F. Supp. 1206, 1208 (N.D. Ill. 1997)); _see also Texaco Puerto Rico, Inc._, 60 F.3d at 885.

[15] _See In re Upstream Addicks_, 152 Fed. Cl. at 125 (granting motion to compel "as to factual material contained within the draft documents that does not reveal the recommendations or conclusions of the authors of the draft").

Respectfully submitted,

COALITION FOR OPEN DEMOCRACY, LEAGUE OF WOMEN VOTERS OF NEW HAMPSHIRE, THE FORWARD FOUNDATION, MILES BORNE, ALEXANDER MUIRHEAD, BY HIS NEXT FRIEND RUSSELL MUIRHEAD, AND LILA MUIRHEAD, BY HER NEXT FRIEND RUSSELL MUIRHEAD

By and through their attorneys,

*/s/ Gilles Bissonnette*
Henry R. Klementowicz (N.H. Bar No. 21177)
Gilles R. Bissonnette (N.H. Bar No. 265393)
AMERICAN CIVIL LIBERTIES UNION OF NEW
HAMPSHIRE FOUNDATION
18 Low Avenue
Concord, NH 03301
(603) 333-2201
henry@aclu-nh.org
gilles@aclu-nh.org

Jacob van Leer*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street NW
Washington, D.C. 20005
(202) 715-0815
jvanleer@aclu.org

16

Ming Cheung*
Clayton Pierce*
Ethan Herenstein*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street
New York, NY 10004
(212) 549-2500
mcheung@aclu.org
cpierce@aclu.org
eherenstein@aclu.org
slakin@aclu.org

Geoffrey M. Atkins*
John T. Montgomery*
Desiree M. Pelletier*
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000
Geoffrey.Atkins@ropesgray.com
John.Montgomery@ropesgray.com
Desiree.Pelletier@ropesgray.com

17

NEW HAMPSHIRE YOUTH MOVEMENT

By and through its attorneys,

*/s/ Steven J. Dutton*
Steven J. Dutton (N.H. Bar No. 17101)
Connor W. Harding (N.H. Bar No. 276438)
MCLANE MIDDLETON, P.A.
900 Elm Street
Manchester, NH 03101
(603) 628-1377
steven.dutton@mclane.com
connor.harding@mclane.com

David R. Fox*
ELIAS LAW GROUP LLP
250 Massachusetts Avenue, N.W.
Suite 400
Washington, D.C. 20001
(202) 968-4490
dfox@elias.law

Tyler L. Bishop*
ELIAS LAW GROUP LLP
1700 Seventh Avenue
Suite 2100
Seattle, WA 98101
(206) 656-0177
tbishop@elias.law

*Admitted *pro hac vice*

November 21, 2025

**CERTIFICATION**

Pursuant to L.R 7.1(c), the undersigned certifies a good faith attempt was made to obtain concurrence in the relief sought. Defendants object. On November 14, 2025, Plaintiffs' counsel wrote Defendants' counsel seeking to narrow the dispute. Counsel conferred on November 18, 2025 by video and continued to correspond by email until November 20, 2025. However, the parties were unable to resolve the dispute without this Court's intervention.

*/s/ Gilles Bissonnette*
Gilles R. Bissonnette (N.H. Bar No. 265393)