**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| NEW HAMPSHIRE YOUTH MOVEMENT,<br><br>    *Plaintiff*,<br><br>v.<br><br>DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State,<br><br>    *Defendant*. | Consolidated Cases<br>Case No. 1:24-cv-00291-SE-TSM |
| COALITION FOR OPEN DEMOCRACY, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State, and JOHN M. FORMELLA, in his official capacity as New Hampshire Attorney General,<br><br>    *Defendants*. | |

**DEFENDANTS' OBJECTION TO PLAINTIFFS' MOTION TO
PARTIALLY EXCLUDE DAVID M. SCANLAN AS AN EXPERT WITNESS**

**INTRODUCTION**

Defendants offer Secretary of State David M. Scanlan as an expert on the subject matter topics of election integrity and voter interests. Defs.' Suppl. Expert Discl. at 1, ECF No. 91-3 at 1. Secretary Scanlan has more than 20 years of hands-on operational election administration experience, affording him specialized knowledge and skill unavailable to a layperson or to an academic observer. His testimony will aid the Court's understanding of the complex dynamics of election administration and contextualize the facts to be tried in this case. Moreover, as a

Defendant in his official capacity, Secretary Scanlan has ground-level involvement in the facts to be tried.

Plaintiffs advance an unduly narrow conception of Secretary Scanlan's field of expertise. Plaintiffs agree that the Secretary is an expert in New Hampshire election administration. *See* Consol. Pls.' Mem. Law in Supp. of Mot. to Partially Exclude, ECF No. 91-1, at 2 (Nov. 17, 2025) ("Pls.' Mem. Law"). Yet, Plaintiffs ask the Court to disqualify his expert opinion on matters of voter confidence and legislative purpose because Plaintiffs believe these topics to lie outside his experience. *See id.* at 1. Plaintiffs' framing is incorrect. These topics are not distinct academic fields, but real-world components of the practice of election administration. Election administration is inextricably intertwined with public confidence in election systems and processes. *See* EAC, *Post-Election Tabulation Audits* at 4.[1] Also, federal courts routinely recognize that state election administrators necessarily interpret and apply a legislature's policy objectives, when implementing election statutes. *See, e.g.*, *Common Cause R.I. v. Gorbea*, 970 F.3d 11, 17 (1st Cir. 2020) (recognizing the Rhode Island Secretary of State as the official who interprets state law and decides how to implement it); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 237–39 (4th Cir. 2014) (describing the state board's role in interpreting and administering election statutes).

Secretary Scanlan's methodology is also fundamentally reliable. Plaintiffs assert that his opinions regarding the purpose of House Bill 1569 ("HB 1569") "are unsupported by any methodology and rely exclusively on anecdotal conversations and other hearsay." Pls.' Mem. Law at 13. But Plaintiffs misunderstand the nature of the opinions and Plaintiffs misidentify the

---

[1] U.S. EAC, *Post-Election Tabulation Audits: A Practical Guide for Beginners & Beyond* (Oct. 2024), available at https://www.eac.gov/sites/default/files/2024-11/Post_Election_Tabulation_Audit_Guide_508.pdf (last visited Dec. 5, 2025). Attached as Exhibit A.

proper standard for reliability. An expert may base opinions on facts that he personally observed, if the facts are of the type commonly relied upon in his field. Fed. R. Evid. 703. Secretary Scanlan offers only his expert understanding of HB 1569's legislative purpose from the viewpoint of the administrator to whom the General Court assigned responsibility for implementation. Secretary Scanlan will not testify about the subjective motivations of individual legislators, nor will he opine about how the law should be viewed constitutionally. *See* Scanlan Vol. II Tr. 517:12-13 ("No. My concern [regarding the purpose of HB 1569] has been the administration.").[2] His testimony concerns HB 1569's administrative purpose and real-world implementation of election laws—interpretive responsibilities inherent in his role as the head of a decentralized system of more than 300 voting jurisdictions. *See id.*

Considering the totality of circumstances surrounding the claims and defenses in this lawsuit, Secretary Scanlan's knowledge and experience, the subject matter of his proffered testimony and its reliability, Defendants respectfully request that the Court deny Plaintiffs' Motion to Partially Exclude the Secretary's expert testimony.

## STANDARD OF REVIEW

Under Rule 702 of the Federal Rules of Evidence, an expert witness may provide opinion testimony in limited circumstances. *See* Fed. R. Evid. 702. Expert opinion testimony requires that the witness be "qualified as an expert by knowledge, skill, experience, training, or education[.]" *Id.* The proponent of the expert's testimony must demonstrate that it is "more likely than not" that the proffered testimony has four characteristics: (a) scientific, technical, or other specialized knowledge that will help the factfinder understand the evidence or to determine

---

[2] Plaintiffs filed excerpts from Secretary Scanlan's deposition transcript Volume II as an exhibit to their Motion to Partially Exclude at ECF No. 91-5. Defendants cite additional testimony from Volume II in this Objection, and have filed the entirety of Secretary Scanlan's Volume II transcript as Exhibit B.

a fact at issue; with (b) testimony that is based on sufficient facts or data; that is (c) the product of reliable principles and methods; which (d) the expert reliably applies to the facts of the case. *See id.* "[E]xperts come in various shapes and sizes; there is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field." *Santos v. Posadas De P.R. Assocs.*, 452 F.3d 59, 63 (1st Cir. 2006). "The test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases enumerated in Rule 702 -- knowledge, skill, experience, training, or education." *Id.* at 64.

Like a court's assessment of qualifications, its reliability review cannot be mechanically applied. *See id.* ("[A]n inquiring court may consider a wide array of factors[.]"). This flexibility is especially important for witnesses whose expertise derives primarily from long-term operational experience rather than scientific or technical methodology. *See id.* ("In the last analysis, the reliability inquiry must be flexible and case-specific.") (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594 (1993)). For example, an expert who was not retained by a party for a lawsuit, "who is actually involved in the events giving rise to the litigation plays in the development of the factual underpinnings of a case[,]" has qualitatively different testimony from that of a retained expert. *See Downey v. Bob's Disc. Furniture Holdings*, 633 F.3d 1, 7 (1st Cir. 2011). Witnesses whose expert opinions are grounded in personal knowledge and experience, rather than his or her own methodology or third-party facts, may offer opinion testimony regarding matters related to his or her expertise and observations. *See id.*

## BACKGROUND

David M. Scanlan joined the New Hampshire Department of State on June 8, 2002 as its Deputy Secretary of State. ECF No. 91-3 at 2. On January 10, 2022, he became the Secretary of State—New Hampshire's chief election officer. *Id.* Secretary Scanlan has devoted nearly a

4

quarter-century to the administration, supervision, and continuous improvement of New Hampshire's election system. *Id.* at 2-3.

### A.     Secretary of State Scanlan's Election Administration Experience

Through the course of Secretary Scanlan's tenure at the State Department, he has overseen the preparation and execution of 30 statewide general, primary, and presidential primary elections. In his four years as Secretary of State, he has executed plans and provided guidance on more than 25 legislative amendments to election administration. For example, the legislature has enacted amendments to absentee voting (2023 HB 244), affidavit ballots (2022 SB 418-FN), addressing the Americans with Disabilities Act (2024 HB 1264), ballot accessibility (2024 HB 1098), ballot counting audits (2024 SB 489), ballot design (2023 HB 336), cybersecurity (2022 HB 1157), election integrity (2022 SB 242), party conventions (2022 HB 55), post-election processes (2022 HB 1467), public vote tabulations (2024 HB 243), statewide voter registration system access and information (2022 HB 1010), supervisors of the checklist meetings (2024 HB 1310), voter registration (2024 HB 1569; 2025 HB 464), and voting technology (2022 SB 366). As the chief election officer, Secretary Scanlan is responsible for executing state law by establishing policy and guidance that is consistent with legislative purpose. *See* RSA 652:22. The breadth of Secretary Scanlan's experience supervising, advising, and guiding the interdependent complexities of New Hampshire election administration is unparalleled in this state.

### B.     Secretary of State Scanlan's Statutory Duties

Secretary Scanlan's statutory duties include, but are not limited to, providing the public with voter-registration information; maintaining and securing the statewide voter database; issuing and updating the election procedure manual; auditing voting machines; enhancing cybersecurity protections; prescribing the format of returns; canvassing votes; and allocating

5

resources from the state election fund to support voter education, election-official training, and election administration infrastructure. *See, e.g.*, RSA 5:6-a; RSA 5:6-d; RSA 652:22–23; RSA 654:45; RSA 659:73; RSA 659:81; RSA 660:33. These responsibilities require continuous engagement with local election officials, federal election officials and law enforcement, the New Hampshire Department of Justice, and the general public.

      **C.**      **Secretary of State Scanlan's Dynamic Operational Experience**

Secretary Scanlan's expertise is grounded in decades of direct operational responsibility for safeguarding election integrity—work that necessarily involves observing, responding to, and managing the conditions that influence voter confidence. His experience encompasses a broad spectrum of election administration activities, including detecting and deterring voter fraud, implementing eligibility verification procedures, planning with local election officials on logistics and communications, and responding to and addressing the public regarding voter fraud and irregularities. As a result, he has accumulated practical, experience-based knowledge about how threats—real or perceived—affect public trust and how to design administrative safeguards to mitigate those effects. Secretary Scanlan's operational strategies, policies, and guidance are informed by local official and public communications, media reports, polls and surveys, and engagement with election officials in other states and at the federal level. *See, e.g.*, Scanlan Vol. II Tr. 547:11-24 & 546:15-547:1; SOS-ST-3912208.[3] The breadth of his responsibilities is precisely the type of long-term operational engagement that Rule 702 contemplates when recognizing expertise rooted in experience.

---

[3] Attached as Exhibit C.

**ARGUMENT**

The Court should deny Plaintiffs' Motion to Partially Exclude Secretary of State David Scanlan's testimony for at least three reasons. First, Secretary Scanlan's expertise in election administration will likely help the factfinder consider the practical administrative dynamics of New Hampshire election procedure as it relates to HB 1569. Second, the bases for Secretary Scanlan's testimony are reliably grounded in his decades-long experience. Third, at best, Plaintiffs challenge only the weight of the Secretary's proffered testimony, not its admissibility.

**I.     Secretary Scanlan Is an Expert in Election Administration**

Secretary Scanlan is eminently qualified to address all components of election administration, including voter confidence and legislative purposes. Plaintiffs concede that the Secretary's long tenure as a New Hampshire Department of State election official qualifies him as an expert in New Hampshire election administration. *See* Pls.' Mem. Law at 1. Without citation, however, Plaintiffs characterize state "election administration" as a "narrow field." *Id.* On the contrary, "election administration" is a broad field—a field that routinely requires integration of legal requirements, voter behavior, administrative logistics, and public-facing communication. Secretary Scanlan's extensive experience at the New Hampshire State Department evinces his knowledge, skill, and training in election administration-related topics of voter confidence and legislative purpose.

**A.     Election Administration Is a Complex Web of Interrelated Responsibilities that Requires Interpreting Legislative Purposes and Engaging with Voters**

The U.S. Government Accountability Office describes "election administration" as operations related to registering voters, maintaining and updating voter registration lists, qualifying candidates, preparing voting materials, selecting polling locations, recruiting and training poll workers, testing voting equipment, transmitting absentee and vote-by-mail ballots,

7

opening and closing polling places, setting up voting machines and voting booths, checking in voters and verifying registration status, and providing opportunities for voters to mark and cast ballots. GAO, *Elections* at 3.[4] These duties vary by jurisdiction, but collectively demonstrate that election administration is an interdisciplinary and far-reaching field—not the narrow task Plaintiffs portray.

GAO explains further that these are just examples election administration components. *Id.* They "do not constitute an all-inclusive list of election administration activities." *Id.* Indeed, "certain pre-election activities may overlap with Election Day activities, such as in states that offer same-day voter registration[.]" *Id.* Election administration also includes "voter education and outreach." GAO, *State & Local Perspectives*, Intro.[5] "Election administration requires careful attention to security to maintain the integrity of the entire voting process." EAC.gov, *Election Technology Security*.[6] So, "[e]lection officials must develop and follow procedures to ensure the security of all components of the election process—from voter registration through final results certification." *Id.* Officials must always be aware of factors relating to voter confidence because

> [e]lections are an essential tool for democracy, but trust in elections is what makes democracy work. The legitimacy of an elected official's position in office and the peaceful transfer of power ***requires public trust*** that elections are fair and the results are correct."

*See* EAC, Ex. A at 4 (emphasis added). These interrelated activities require election administrators to analyze, interpret, and implement applicable laws, rules, policies, and

---

[4] U.S. GAO, *Elections: Observations on State Laws & Perspectives on Holding Special Elections to Fill House Vacancies* (Dec. 16, 2024), available at https://www.gao.gov/assets/880/874360.pdf (last visited Dec. 5, 2025). Attached as Exhibit D.

[5] U.S. GAO, *State & Local Perspectives on Election Admin. During the COVID-19 Pandemic* (July 2022), available at https://www.gao.gov/assets/gao-22-104731.pdf (last visited Dec. 5, 2025). Attached as Exhibit E.

[6] Available at https://www.eac.gov/election-officials/election-technology-security (last visited Dec. 5, 2025).

8

procedures. *See* EAC, *EAVS Report* at 2 (June 2025);[7] *Common Cause R.I.*, 970 F.3d at 17 (recognizing the Rhode Island Secretary of State as the official who interprets state law and decides how to implement it); *League of Women Voters of N.C.*, 769 F.3d at 237-39 (describing the state board's role in interpreting and administering election statutes); *cf. Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394-95 (2024) (holding that federal agencies necessarily interpret statutes and exercise executory discretion, but courts ultimately resolve statutory ambiguities).

### B. Secretary Scanlan Is Qualified to Testify About Voter Confidence and the Purpose and Principles Underlying the State's Statutory Election Scheme

Secretary Scanlan is qualified to testify regarding voter confidence and legislative purpose regarding the realities of election administration because he has knowledge, skill, experience, and training in those topics for the reasons explained above. *See Santos*, 452 F.3d at 64. Moreover, the Secretary's testimony will help the factfinder understand how public confidence in election results is integral to New Hampshire's election administration and how HB 1569 fits into the statutory scheme as applied. Plaintiffs are wrong to assert that he has no experiential basis upon which to base his opinion that "actual voter fraud, as well as unsubstantiated rumors of voter fraud, have eroded trust in our elections[.]" *Contra* Pls.' Mem. Law at 5 (quoting Defs.' Suppl. Expert Discl. at 2) (quotations omitted). Secretary Scanlan's insights arise from decades of ground-level operational responsibilities that inherently require assessing and responding to public confidence, and understanding the legislative purpose of discrete amendments to state election laws that must be applied in a manner consistent with the overall statutory scheme. *See, e.g.*, Scanlan Vol. II Tr. 414:4-18; 433: 454:1-23; 478:15-22; 503:20-504:6; 534:23-535:18.

---

[7] U.S. EAC, *Election Admin. & Voting Survey 2024 Comprehensive Report*, available at https://www.eac.gov/sites/default/files/2025-07/2024_EAVS_Report_508.pdf (last visited Dec. 5, 2025). Attached as Exhibit F.

9

So, as New Hampshire's chief election officer, understanding voter confidence and implementing laws designed to enhance voter confidence have been essential aspects of Secretary Scanlan's work for two decades. EAC, Ex. A at 4 ("The legitimacy of an elected official's position in office and the peaceful transfer of power requires public trust that elections are fair and the results are correct."). For instance, Secretary Scanlan administered an amendment to RSA 659:63 requiring public tabulation of ballots. 2024 Laws Ch. 178, HB 243.[8] This amendment served voter confidence alone—it did not amend any ballot counting or aggregation, nor did it specify new chains of custody or security measures. *See id.* Notably, the Secretary is a "percipient witness who happens to be an expert." *Saucedo v. Gardner*, No. 17-cv-183-LM, 2018 U.S. Dist. LEXIS 35175, *3 (D.N.H. Mar. 5, 2018) (quoting *Downey*, 633 F.3d at 6) (quotations omitted). As this Court noted in *Saucedo v. Gardner*, Secretary Scanlan's expert qualifications arise "from his ground-level involvement in the events giving rise to the litigation." *Id.* (holding that then-Deputy Secretary Scanlan was not required to produce an expert report). The Court further noted that:

> as the court reads defendants' expert disclosure, Scanlan's opinions appear to be grounded in, and couched in terms of, his personal knowledge of the State's interpretation and implementation of RSA 659:50. *See Downey*, 633 F.3d at 7. He does not come to the litigation as a "stranger," drawing his opinion from an independent methodology and "facts supplied by others," but as a longtime participant in the State's practices with respect to the statute. *Id.* He is thus not a retained expert, even if some of his ultimate opinions relate to matters that arose from this litigation. *See id.*

*Id.* at *4-5. His testimony regarding legislative purpose comes from an administrator's viewpoint—it is not offered as insight into legislators' philosophical, personal, or political motives. *See* Scanlan Vol. II Tr. 517:12-13 ("No. My concern [regarding the purpose of HB 1569] has been the administration.").

---

[8] Attached as Exhibit G.

## II.   Rule 703 Expressly Allows Secretary Scanlan's Opinion Testimony that Is Grounded Solely or Primarily on His Experience as an Election Administrator

Secretary Scanlan's opinions about voter confidence and legislative purpose are reliable because they are drawn from facts and data that he has personally observed, and they are of the type routinely relied upon by state election administrators.  The Federal Rules expressly allow for expert opinions on this basis.  Fed. R. Civ. 703.  Plaintiffs' assertion that Secretary Scanlan's opinions "are unsupported by any methodology and rely exclusively on anecdotal conversations and other hearsay" is both factually wrong and a misunderstanding of the applicable law.  *Contra* Pls.' Mem. Law at 13.  A witness relying solely or primarily on his experience as his expert qualification—as Secretary Scanlan is here—demonstrates reliability by explaining why the experience relates to the opinion and how the experience applies to the facts of the case.  *See* Fed. R. Evid. 702, cmt. (2000 amend.).  Experience-based experts are not required to employ scientific or technical methodologies.  *See id.*  Instead, their opinions are evaluated by the fit between their practical experience and the conclusions they draw.  *See id.*  That is because Secretary Scanlan, "does not come to the litigation as a 'stranger,' drawing his opinion from an independent methodology and 'facts supplied by others,' but as a longtime participant in the State's practices with respect to the statute."  *Saucedo*, 2018 U.S. Dist. LEXIS 35175, *4-5.

Secretary Scanlan offers only his expert understanding of HB 1569's legislative purpose from the viewpoint of the administrator to whom the General Court assigned responsibility for implementation.  Secretary Scanlan will not testify about the subjective motivations of individual legislators, nor will he opine on how the law should be viewed constitutionally.  *See* Scanlan Vol. II Tr. 517:12-13.  His testimony concerns the administrative purpose and real-world implementation of election laws—interpretive responsibilities inherent in his role as the head of a decentralized system of more than 300 voting jurisdictions.  *See id.*  For example, Secretary

11

Scanlan explained the importance of election transparency and how it relates to voter confidence and fits into the overall statutory scheme. *See id.* 438:16-440:16. These have been critical components of the Secretary's implementation of duties delegated to him by the legislature. *See id.* 531:1-532:5.

Secretary Scanlan's opinions about voter confidence are drawn from facts and data that he has personally observed over 20+ years as an administrator of New Hampshire's elections. ECF No. 91-3. For example, in 2022, the Secretary created the Special Committee on Voter Confidence to hear from political leaders, academics, pollsters, and the general public. Scanlan Vol. II Tr. 438:16-439:11. His principal takeaway regarding stakeholders' concerns "was that we had to make the election process as transparent as possible, and we had to educate the voting population on just exactly how elections were run." *Id.* 439:12-17. This experience is one basis for Secretary Scanlan's opinions regarding HB 1569's administration, its potential impact on voter confidence, and related legislative purpose.

The Secretary also relies on media reports and surveys, including the surveys conducted by Andy Smith at the University of New Hampshire. *See, e.g.*, *id.* 437:1-24. Secretary Scanlan is not offering media reports or surveys for the proof of the matter, and these publicly available third party records do not require quantitative analysis here. *See* Fed. R. Evid. 703 (explaining that expert reliance on inadmissible evidence does not render the expert's testimony inadmissible). Rather, the Secretary explains that these are typical sources used by election administrators to inform their decisions regarding their discretionary acts as delegated by law. *See* Scanlan Vol. II Tr. 544:7-18. He relies upon reports from the Attorney General, communications with local election officials, and complaints from the public regarding voter fraud and actual and potential voting irregularities. He has decades of experience training

election officials and maintaining the statewide voter registration system.  These experiences and sources are reliable bases from which to opine on HB 1569's administration, its potential impact on voter confidence, and related legislative purpose.

Secretary Scanlan's method—deriving conclusions from accumulated experience, case examples, and supplemental data—is consistent with how experts in government and public policy routinely form opinions.  *See Crowe v. Marchand*, 506 F.3d 13, 17-18 (1st Cir. 2007) (recognizing that doctors need not independently verify reports upon which they rely to opine on causation) (collecting cases).  The Rules of Evidence do not require him to produce a written report, perform a regression analysis, or publish peer-reviewed study because he is not coming to this case as a stranger.  *Saucedo*, 2018 U.S. Dist. LEXIS 35175, *5.  The Rules require only that the explanation of his approach demonstrate that it is reliable, which he has done.  The Court, sitting as factfinder, can readily follow the logic of Secretary Scanlan's testimony.

### III.  Plaintiffs' Objection Is Relevant Only to the Weight, Not the Admissibility, of Secretary Scanlan's Testimony

At bottom, Plaintiffs' critiques—that Secretary Scanlan's opinions are based partly on hearsay, that he did not use a quantifiable methodology, and that his disclosures were scant—are all factors the Court can consider in weighing the Secretary's testimony, if it chooses.  They are not reasons to bar Secretary Scanlan's testimony regarding voter confidence or legislative purpose.  *See United States v. Vargas*, 471 F.3d 255, 264 (1st Cir. 2006) ("*Daubert* does not require that the party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct.") (quotation and citation omitted).  At a bench trial, the Court is fully capable of assessing the appropriate weight it should afford operational, experience-based testimony about election administration.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Partially Exclude the testimony of Secretary of State Scanlan.

Respectfully submitted,

DEFENDANTS DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State and JOHN M. FORMELLA, in his official capacity as New Hampshire Attorney General

By their attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

Date: December 8, 2025

/s/ Michael P. DeGrandis
Michael P. DeGrandis, N.H. Bar No. 277332
Assistant Attorney General
Matthew T. Broadhead, N.H. Bar No. 19808
Associate Attorney General
Catherine A. Denny, N.H. Bar No. 275344
Assistant Attorney General
Office of the Attorney General, Civil Bureau
1 Granite Place South
Concord, NH 03301
(603) 271-3650
michael.p.degrandis@doj.nh.gov
matthew.t.broadhead@doj.nh.gov
catherine.a.denny@doj.nh.gov

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all parties of record in the consolidated cases, *New Hampshire Youth Movement v. Scanlan* (1:24-cv-00291-SE-TSM) and *Coalition for Open Democracy, et al. v. Scanlan, et al.* (1:24-cv-00312-SE-TSM), through the Court's e-filing system.

/s/ Michael P. DeGrandis
Michael P. DeGrandis