UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| New Hampshire Youth Movement,<br><br>   *Plaintiff*,<br> v.<br><br>David M. Scanlan, in his official capacity as New Hampshire Secretary of State,<br><br>   *Defendant*. | Consolidated Cases<br>Case No. 1:24-cv-291-SE-TSM |
| Coalition for Open Democracy, *et al.*,<br><br>   *Plaintiffs*,<br> v.<br><br>David M. Scanlan, in his official capacity as New Hampshire Secretary of State, *et al.*,<br><br>   *Defendants*. | Case No. 1:24-cv-312-SE-TSM |

**CONSOLIDATED PLAINTIFFS' SUPPLEMENTAL MOTION TO COMPEL RESPONSIVE DOCUMENTS**

**(Expedited Treatment Requested Under Local Rule 7.1(f))**

## INTRODUCTION

On November 21, 2025, the Consolidated Plaintiffs in these cases moved to compel Defendants Secretary of State David M. Scanlan and Attorney General John M. Formella (together, the "Defendants") to search for, collect, and produce documents generated after June 1, 2025 concerning House Bill 464 ("HB 464") and its implementation. *See* ECF No. 96. Following Defendants' Objection and a hearing, the Court granted Plaintiffs' motion in part, ordering Defendants to search for and produce responsive records. Endorsed Order (Dec. 2, 2025).

Defendants produced 410 documents on December 16, approximately 232 of which were entirely or heavily redacted. On December 19, Defendants produced a belated privilege log and declaration from Secretary Scanlan. On December 22, the Court held a status conference, at which it heard further argument from the parties on Defendants' purported reliance on deliberative process privilege. The Court granted Plaintiffs' oral motion to renew their motion to compel and ordered Defendants to provide the Court with the 410 unredacted documents, privilege log, and Scanlan Declaration, for the Court's *in camera* review. Endorsed Order (Dec. 22, 2025).

As previewed at the status conference, Plaintiffs now move to compel Defendants to produce unredacted or less redacted versions of 94 documents that were purportedly redacted on the basis of the attorney-client communications or work product privileges. Because of the imminent February 9, 2026 trial and possible additional discovery these documents may precipitate, Plaintiffs respectfully request expedited consideration of this motion. Plaintiffs understand that the Court will address the assertions of deliberative process privilege separately, which the parties acknowledged at the status conference they have now fully briefed.

## MOTION TO COMPEL

Plaintiffs do not object to Defendants' invocation of the attorney-client privilege for 46 documents.[1] Given Defendants' heavy redactions and boilerplate privilege log descriptions,

---

[1] Those documents are: SOS-3948296; SOS-3948308; SOS-3948309; SOS-3948343; SOS-3948548; SOS-3948578; SOS-3948610; SOS-3948645; SOS-3948916; SOS-3948921; SOS-3948925; SOS-3948929; SOS-3949043; SOS-3949086; SOS-3949088; SOS-3949092; SOS-3949137; SOS-3949211; SOS-3949216; SOS-3949219; SOS-3949226; SOS-3949229; SOS-3949233; SOS-3949238; SOS-3949246; SOS-3949260; SOS-3949264; SOS-3949284; SOS-3949310; SOS-3949337; SOS-3949367; SOS-3949395; SOS-3949427;

1

Plaintiffs cannot be certain that the privilege is properly invoked for each of these documents, but in an effort to lessen the scope of objections for the Court's review, Plaintiffs do not dispute the invocation for these documents.

The remainder of documents redacted for attorney-client privilege require *in camera* review because: (a) Defendants waived attorney-client privilege; (b) the production is not covered by attorney-client privilege; or (c) Defendants have not provided sufficient information in their privilege log to support assertion of the privilege, and the particular circumstances of the redacted documents—combined with Defendants' otherwise overbroad privilege assertions—raise serious concerns about the content hidden behind these boilerplate assertions.

### I. The attorney-client privilege does not support Defendants' overbroad assertions.

Attorney-client privilege "protects 'only those communications that are confidential and are made for the purpose of seeking or receiving legal advice.'" *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 (1st Cir. 2011) (quoting *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 38 F.3d 16, 22 (1st Cir. 2003)).[2]

#### a. Defendants have waived attorney-client privilege for several documents.

The protection of attorney-client privilege "ceases, or is often said to be 'waived,' when otherwise privileged communications are disclosed to a third party." *Lluberes*, 663 F.3d at 24 (quoting *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997)); *see Cavallaro*

---

SOS-3949515; SOS-3949543; SOS-3949549; SOS-3949642; SOS-3949698; SOS-3949774; SOS-3949903; SOS-3949904; SOS-3950040; SOS-3950042; SOS-3950136; SOS-3950164; SOS-3950611.

[2] Notably, Defendants assert attorney work-product privilege for only one document: SOS-3948381. As explained in the decision cited by Defendants in their objection to Plaintiffs' motion to compel, attorney work-product doctrine and attorney-client communications privilege are distinct doctrines requiring independent showings. *See* Defs.' Obj. to Pls.' Mot. to Compel 12, ECF No. 97 (citing *Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 70 (1st Cir. 2002)); *Maine*, 298 F.3d at 66–71 (describing how the "attorney work-product privilege . . . codified in Fed. R. Civ. P. Rule 26(b)(3) for civil discovery, protects from disclosure materials prepared by attorneys 'in anticipation of litigation'" while the distinct attorney-client privilege "protects confidential communications made by a client to his attorney" and "documents provided by an attorney if the party asserting the privilege shows: (1) that he was or sought to be a client of [the attorney]; (2) that [the attorney] in connection with the [document] acted as a lawyer; (3) that the [document] *relates to facts communicated for the purpose of securing a legal opinion, legal services or assistance in legal proceedings*; and (4) that the privilege has not been waived") (emphasis added) (quoting *United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 27–28 (1st Cir. 1989)). Where Defendants assert attorney-client communications privilege over a document that appears to be attorney work-product, Plaintiffs assume in good faith Defendants intended to rely on the attorney work-product privilege.

*v. United States*, 284 F.3d 236, 246–47 (1st Cir. 2002) ("Generally, disclosing attorney-client communications to a third party undermines the privilege.").

"An exception to this general rule exists for third parties employed to assist a lawyer in rendering legal advice." *Cavallaro*, 284 F.3d at 247. But the privilege only extends to third parties "who act as the attorney's agents" and not "if the advice sought is [the third party's] rather than the lawyer's." *Id.* (quoting *United States v. Kovel*, 296 F.2d 918, 921, 922 (2d Cir. 1961)). Thus, only when a third party is "necessary, or at least highly useful" "for the purpose of obtaining legal advice from the lawyer" does the privilege remain intact. *Id.* (quoting *Kovel*, 296 F.2d at 922). "The involvement of the third party must be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications." *Id.* at 249 (quoting E.S. Epstein, *The Attorney-Client Privilege and the Work Product Doctrine* 187 (4th ed. 2001)). If that showing is not made, the privilege is waived: "That ends the matter." *Id*.

Defendants included third-party information technology vendors on at least 13 email chains redacted for attorney-client privilege, without explaining how those third parties could have been "necessary, or at least highly useful" to the provision of legal advice.[3] *Id.* at 247 (quoting *Kovel*, 296 F.2d at 922). Based on what little is left unredacted, it is not feasible that these consultants were hired to act as the attorney's agent for the purpose of offering legal advice. The attorney barely participates in these conversations, if at all. It appears highly likely these vendors were consulted to provide their *own* technological advice. Accordingly, Defendants have waived

---

[3] To the extent Defendants set out post-hoc justifications for the third parties' purported necessity (or any of the other issues identified in this motion), the Court should be wary of such justifications not provided in the privilege log. *See Begley v. Windsor Surry Co.*, No. 17-CV-317-LM, 2020 WL 5036105, at *3 (D.N.H. July 6, 2020) (the party "claiming privilege" bears the "burden . . . to provide a privilege log that 'describe[s] the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim") (quoting Fed. R. Civ. P. 26(b)(5)); *id.* ("placing a label of 'attorney-client privilege' on a privilege log, without more, does not meet a party's burden," and necessitates the court's "inspecting each document, one by one, to determine whether it is privileged") (quoting *Walker v. N.H. Admin. Off. of the Cts.*, No. 11-CV-421-PB, 2013 WL 672584, *8 (D.N.H. Feb. 22, 2013)) (cleaned up); *FDIC v. Nash*, No. 97-CV-187, 1998 WL 34061514, at *2 (D.N.H. Sept. 25, 1998) ("the party seeking protection of privilege must provide sufficient information to allow the court to make a reasoned judgment on the privilege claim"); *Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) ("Failure to furnish an adequate privilege log is grounds for rejecting a claim of attorney client privilege."); *In re Grand Jury Subpoena*, 274 F.3d 563, 575–76 (1st Cir. 2001).

3

attorney-client privilege—if it ever existed—for: SOS-3948381; SOS-3949080; SOS-3950047; SOS-3950056; SOS-3950429; SOS-3950432; SOS-3950435; SOS-3950469; SOS-3950617; SOS-3950631; SOS-3950633; SOS-3950675; SOS-3950718.

### b. The privilege log and productions make clear attorney-client privilege doesn't apply for many documents.

From the limited privilege log descriptions and unredacted email fields Defendants provided, Plaintiffs can glean that the following documents are not covered by attorney-client privilege because they were not made for the purpose of seeking or receiving legal advice. *See Lluberes*, 663 F.3d at 24. Instead, they seem to "merely communicate information obtained from independent sources" or are "documents prepared by non-attorneys and addressed to non-attorneys with copies routed to counsel," neither of which are privileged "since they are not communications made primarily for legal advice." *Begley*, 2020 WL 5036105, at *3 (quoting *Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491, 510–11 (D.N.H. 1996).

The following 22 non-email documents were created by non-attorneys and the privilege log does not denote how each document contains attorney-client privileged communications, nor does it identify an attorney who might have provided legal advice through a document drafted by a non-attorney: SOS-3948441; SOS-3948464; SOS-3948485; SOS-3948507; SOS-3948529; SOS-3948786; SOS-3948816; SOS-3948818; SOS-3948848; SOS-3948850; SOS-3948880; SOS-3948897; SOS-3948950; SOS-3949029; SOS-3949076; SOS-3949280; SOS-3949454; SOS-3949484; SOS-3949672; SOS-3949788; SOS-3950097; SOS-3950533. These documents include, *inter alia*, PowerPoint presentations created by the Secretary of State's Communications Director, an Excel spreadsheet that the privilege log states was created by and for non-attorneys, and various word documents created by non-attorneys.

The following five documents are email communications sent by non-attorneys to several recipients, including an attorney, but they do not appear to seek legal advice, especially given that no attorney responds in the email chain: SOS-3950345; SOS-3950348; SOS-3950507; SOS-3950510; SOS-3950513. Each document is from the same or similar email chain concerning

4

technical implementation related to proof of citizenship and the requirements of HB 464. Simply copying an attorney as a non-participant recipient in an email chain falls far short of satisfying the burden required to protect a document under attorney-client privilege, which "attaches only when the attorney acts in that capacity." *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affs.*, 60 F.3d 867, 884 (1st Cir. 1995); *see Begley*, 2020 WL 5036105, at *3.

        **c. Defendants' overbroad privilege assertions and lacking privilege log require *in camera* review of other documents.**

Defendants failed to describe the nature of their heavily (or entirely) redacted productions in sufficient detail to permit Plaintiffs or the Court to assess their privilege claims. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii). Instead, Defendants have done scant more than "plac[e] a label of 'attorney-client privilege' on a privilege log" and include bare assertions that communications relate to legal advice. *Walker*, 2013 WL 672584, at *8.

Most of the following documents are redacted for their entire substance or are effectively withheld—a black box with nothing but the Bates Number. Defendants neither explain how these communications relate to legal advice, nor, in many instances, identify any attorney at all. For many of these documents, Defendants assert both attorney-client and deliberative process privilege without explaining which privileges they assert for which specific portions of the document. Based on these boilerplate assertions of privilege and overbroad redactions, Plaintiffs are unable to ascertain whether the following documents are properly protected by attorney-client privilege and are concerned that Defendants have redacted all emails and documents that even mention or copy an attorney. Indeed, from what is visible—*e.g.*, the identities of who initiates or responds to emails, subject headers, and the occasional unredacted email of substance—none of these records bears indicia of privilege.

These 54 documents thus merit *in camera* review: SOS-3948300; SOS-3948306; SOS-3948376; SOS-3948460; SOS-3948462; SOS-3948483; SOS-3948504; SOS-3948526; SOS-3948606; SOS-3948608; SOS-3948638; SOS-3948641; SOS-2948673; SOS-3948678; SOS-3948683; SOS-3948689; SOS-3948696; SOS-3948732; SOS-03948740; SOS-3948749;

5

SOS-3948914; SOS-3948935; SOS-3948945; SOS-3948961; SOS-3948963; SOS-3948966; SOS-3949083; SOS-3949138; SOS-3949142; SOS-3949148; SOS-3949150; SOS-3949159; SOS-3949163; SOS-3949167; SOS-3949198; SOS-3949200; SOS-3949243; SOS-3949364; SOS-3949423; SOS-3949513; SOS-3949601; SOS-3949604; SOS-3949651; SOS-3949655; SOS-3949660; SOS-3949691; SOS-3949842; SOS-3950078; SOS-3950081; SOS-3950127; SOS-3950168; SOS-3950445; SOS-3950502; SOS-3950851. These documents consist of, *inter alia*: entirely redacted email chains where—at most—one or two emails involve an attorney or may relate to legal advice;[4] emails from non-attorneys regarding press releases; documents created by non-attorneys that purport to relate to legal advice, without identifying an attorney or the kinds of advice they provided; and "impressions of draft HB 464 implementation" sent from one non-attorney to another, which likely do not constitute seeking or receiving legal advice.

## II. *In camera* review is appropriate to determine whether the documents at issue should be produced.

"[T]he decision whether to engage in *in camera* review rests in the sound discretion of the district court." *United States v. Zolin*, 491 U.S. 554, 572 (1989). Moreover, "a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege." *Id.* And where, as here, "the assertion of privilege is subject to legitimate dispute, the desirability of in camera review is heightened." *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 70 (1st Cir. 2011). The Court previously ordered Defendants' entire Fifteenth Production be

---

[4] To provide one example, as previewed at the status conference, many of these redacted documents are versions of the same email chain, with the subject line "HB464," largely between the Secretary of State's Elections Director and two IT specialists at the Department of State and Department of Safety. This email is then forwarded by Elections Counsel to an administrator at the Department of Safety, and they confer about a Memorandum of Understanding (Consistent with the rest of the log, Defendants made no attempt to declare whether they treat the administrator—who appears to have a J.D. but ceased working as "counsel" in 2018—as advising counsel for privilege purposes). Defendants' redactions and confidentiality designations of these documents are highly inconsistent. In one document, the underlying communications between IT specialists are left unredacted, revealing they do not remotely relate to seeking or providing legal advice. *See* SOS-3948340 (unredacted); *but see, e.g.*, SOS-3948300; SOS-3948376 (redacted). In another iteration of this thread, the attorney responds, but the IT professionals' request is re-redacted, while the attorney's direct response is not. *See* SOS-3948306. In yet a third version, a back-and-forth regarding the Memorandum of Understanding is left unredacted (these same emails are redacted in other versions), and, ironically, the Elections Counsel and Department of Safety administrator discuss how the underlying (and regularly redacted) email exchange among "our respective OIT folks" was not about legal advice, but a technical discussion about "testing the exchange of fields" between agency databases. SOS-3949138.

provided for *in camera* review. Endorsed Order (Dec. 22, 2025). Given the overlapping assertions of privilege, the Court will already be reviewing many—if not most—of these documents. Plaintiffs respectfully request that the Court review *in camera* the 94 documents described above for which Plaintiffs object to Defendants' assertion of attorney-client privilege.

      WHEREFORE, for the reasons stated above, Plaintiffs request that the Court:

      (a)      Conduct an *in camera* review of the aforementioned documents for which Plaintiffs object to Defendants' assertions of the attorney work-product and attorney-client communications privileges;

      (b)      Order Defendants to produce unredacted versions of documents or portions of documents not protected by attorney work-product or attorney-client privilege, including documents where the privilege is waived; and

      (c)      Order such further relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

COALITION FOR OPEN DEMOCRACY, LEAGUE OF WOMEN VOTERS OF NEW HAMPSHIRE, THE FORWARD FOUNDATION, MILES BORNE, ALEXANDER MUIRHEAD, BY HIS NEXT FRIEND RUSSELL MUIRHEAD, AND LILA MUIRHEAD, BY HER NEXT FRIEND RUSSELL MUIRHEAD

By and through their attorneys,

*/s/ Henry R. Klementowicz*
Henry R. Klementowicz (N.H. Bar No. 21177)
Gilles R. Bissonnette (N.H. Bar No. 265393)
AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE FOUNDATION
18 Low Avenue
Concord, NH 03301
(603) 333-2201
henry@aclu-nh.org
gilles@aclu-nh.org

Jacob van Leer*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street NW
Washington, D.C. 20005
(202) 715-0815
jvanleer@aclu.org

Ming Cheung*
Clayton Pierce*
Ethan Herenstein*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street
New York, NY 10004
(212) 549-2500
mcheung@aclu.org
cpierce@aclu.org
eherenstein@aclu.org
slakin@aclu.org

Geoffrey M. Atkins*
John T. Montgomery*
Desiree M. Pelletier*
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000
Geoffrey.Atkins@ropesgray.com
John.Montgomery@ropesgray.com
Desiree.Pelletier@ropesgray.com

NEW HAMPSHIRE YOUTH MOVEMENT

By and through its attorneys,

*/s/ Steven J. Dutton*
Steven J. Dutton (N.H. Bar No. 17101)
Connor W. Harding (N.H. Bar No. 276438)
MCLANE MIDDLETON, P.A.
900 Elm Street
Manchester, NH 03101
(603) 628-1377
steven.dutton@mclane.com
connor.harding@mclane.com

8

David R. Fox*
ELIAS LAW GROUP LLP
250 Massachusetts Avenue, N.W.
Suite 400
Washington, D.C. 20001
(202) 968-4490
dfox@elias.law

Tyler L. Bishop*
ELIAS LAW GROUP LLP
1700 Seventh Avenue
Suite 2100
Seattle, WA 98101
(206) 656-0177
tbishop@elias.law

*Admitted *pro hac vice*

December 24, 2025

## CERTIFICATE OF SERVICE

I certify that on today's date, I caused a copy of the foregoing to be served on all counsel of record through the Court's ECF filing system.

*/s/ Henry Klementowicz*

Henry Klementowicz
