UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>New Hampshire Youth Movement</u>

  v.

<u>David M. Scanlan, in his official capacity</u>
<u>as New Hampshire Secretary of State</u>

_____

<u>Coalition for Open Democracy et al.</u>

  v.

<u>David Scanlan in his official capacity</u>
<u>as New Hampshire Secretary of State et al.</u>

Case No. 24-cv-291-SE
Opinion No. 2026 DNH 006

O R D E R

  In this consolidated action, several organizations and individuals bring suit against the New Hampshire Secretary of State and the New Hampshire Attorney General seeking a declaratory judgment that the provisions of 2024 New Hampshire House Bill 1569 (HB 1569) violate the United States Constitution. The plaintiffs request injunctive relief barring state officials from implementing those provisions.

  The plaintiffs moved to compel the production of documents related to New Hampshire House Bill 464 (HB 464), which Governor Kelly Ayotte signed into law after this litigation began. Doc. no. 96. HB 464 amended or modified certain of HB 1569's provisions. The plaintiffs stated that the defendants refused to produce documents related to HB 464, in part based on their blanket assertion that the deliberative process privilege protected any such documents from disclosure.

The court held a video hearing on December 2, 2025, and orally granted the motion to compel in part and denied it in part without prejudice. As ordered, the defendants produced documents generated after June 1, 2025, concerning HB 464 and its implementation and which were responsive to the plaintiffs' discovery requests, as well as a privilege log identifying documents that the defendants withheld or redacted and the basis for doing so.

The court held a discovery status conference with the parties on December 22, 2025. During that conference, the plaintiffs made an oral motion to renew their motion to compel documents that the defendants withheld or redacted pursuant to an asserted deliberative process privilege and to reopen certain depositions. The court took the motion under advisement and ordered the defendants to provide the court with any documents withheld or redacted relating to their production made pursuant to the court's December 2, 2025 order, as well as the privilege log and Secretary of State David Scanlan's declaration for *in camera* review.

On December 24, 2025, the plaintiffs filed a supplemental motion to compel. Doc. no. 114. In their supplemental motion, the plaintiffs broaden the scope of their request. In addition to requesting that the court order the defendants to produce all responsive documents related to HB 464 which the defendants withheld or redacted based on the deliberative process privilege, they also seek unredacted copies of 94 responsive documents that the defendants purportedly redacted on the basis of the attorney-client or work product privileges.[1] The defendants object to the supplemental motion in its entirety.

The court has reviewed the defendants' production *in camera*, mindful that in "a discovery dispute, the burden to establish an applicable privilege rests with the party resisting

---

[1] The plaintiffs provided the court with a copy of the redacted versions of documents that the defendants produced.

discovery." F.D.I.C. v. Ogden Corp., 202 F.3d 454, 460 (1st Cir. 2000). For the reasons set forth below, the plaintiffs' supplemental motion to compel is granted in part and denied in part.

I.     Deliberative Process Privilege

Initially, the court notes that the plaintiffs categorize the defendants' position that state and local agencies can invoke the deliberative process privilege in federal court as "questionable" and "suspect." Doc. no. 96 at 12. But they offer no developed argument to show that the deliberative process privilege is inapplicable in the circumstances of this case. Therefore, consistent with other orders from this district, the court presumes that the deliberative process privilege may protect against disclosure in these circumstances. See, e.g., Gomez v. City of Nashua, N.H., 126 F.R.D. 432, 434 (D.N.H. 1989).

Further, the plaintiffs argue that the defendants did not properly invoke or otherwise waived the right to assert the deliberative process privilege. Doc. no. 96 at 13-15. The court ultimately disagrees. Although the defendants' initial assertion of the privilege was lacking as discussed during the December 2, 2025 video hearing, the defendants' subsequent privilege log, together with Secretary Scanlan's declaration, address that deficiency. In addition, the court does not agree that the defendants' public statements referenced in the plaintiffs' motion to compel amount to a blanket waiver of the privilege for all documents. For those reasons, the court will consider the defendants' invocation of the deliberative process privilege on a document-by-document basis despite the plaintiffs' blanket objections.

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions . . . by protecting

open and frank discussion among those who make them within the Government." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8–9 (2001) (quotations and citation omitted). "[T]o qualify for the privilege, a document must be (1) predecisional, that is, 'antecedent to the adoption of agency policy,' and (2) deliberative, that is, actually 'related to the process by which policies are formulated.'" In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 390 F. Supp. 3d 311, 319 (D.P.R. 2019) (quoting Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 884 (1st Cir. 1995)).

A document is deliberative if it "(i) formed an essential link in a specified consultative process, (ii) reflect[s] the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." Providence Journal Co. v. U.S. Dep't of Army, 981 F.2d 552, 559 (1st Cir. 1992) (quotation omitted). Purely factual documents, "segregable factual portions" of documents, and any documents that would not inaccurately reflect the views of a state office are not protected. See id.; Bethune-Hill v. Virginia State Bd. of Elections, 114 F. Supp. 3d 323, 335-39 (E.D. Va. 2015).

Documents that are pre-decisional and deliberative do not receive blanket protection; rather, the deliberative process privilege merely grants the court discretion to block access to such documents. See Texaco Puerto Rico, Inc., 60 F.3d at 885. When exercising that discretion, "an inquiring court should consider, among other things, the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government." Id.

The defendants' privilege log identifies nearly 100 documents that the defendants withheld or redacted solely based on their assertion of the deliberative process privilege. After

4

conducting an *in camera* review, the court concludes that the privilege applies to none of those documents. The defendants appear to consider nearly any communication related to HB 464's implementation, including documents discussing information technology requirements or confirming the accuracy of training materials, as subject to the deliberative process privilege because they are "necessary for the provision of predecisional advice and recommendations essential to Dept.'s consultative process." E.g., doc. no. 116-1 at 52. That interpretation, however, ignores the very crux of the privilege: the document must be deliberative. Not one of the documents that the defendants withheld or redacted based solely on the deliberative process privilege relates to the process by which policies are formulated, discusses any opinion or, if released, would inaccurately reflect or prematurely disclose the views of the agency. The defendants categorically fail to identify a decision or opinion of an agency that was dependent on or reflected in these documents. Therefore, the defendants shall produce unredacted copies of all documents that they withheld or redacted based solely on the deliberative process privilege.

II.     Attorney-Client Privilege

The attorney-client privilege "protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." United States v. SpineFrontier, Inc., 160 F.4th 212, 220 (1st Cir. 2025) (quotations omitted). "At its core, the privilege is intended to promote full and free discussion between client and counsel to better enable the client to conform his conduct to the dictates of the law." Id. (quotations and alterations omitted). "But because it presents a considerable obstacle to the search for truth, courts must construe the privilege narrowly." Id. (quotations omitted). A person asserting the attorney-client privilege must make four showings:

> (1) that he was or sought to be a client of [the attorney]; (2) that [the attorney] in connection with the [document] acted as a lawyer; (3) that the [document] relates to facts communicated for the purpose of securing a legal opinion, legal services or assistance in a legal proceeding; and (4) that the privilege has not been waived.

United States v. Bay State Ambulance & Hosp. Rental Serv., Inc., 874 F.2d 20, 27–28 (1st Cir. 1989).

The defendants withheld or redacted several documents from their most recent production on the basis of the attorney-client privilege. The plaintiffs challenge the defendants' invocation of that privilege for 94 documents on three separate grounds: (1) the defendants waived the privilege by including third-party information technology vendors on the communications (13 documents); (2) the description of the document in the privilege log demonstrates that the attorney-client privilege does not apply (27 documents); and (3) the privilege log does not provide sufficient information to support the assertion of the privilege (54 documents).

The defendants' objection narrowed the universe of challenged documents by noting the large number of documents within each challenged group that were mostly or entirely duplicative. The court agrees that many of the challenged documents are duplicates or close variations of others and confines its discussion to the representative documents that the defendants identify in their objection.

A.    Waiver

The attorney-client privilege "protection ceases, or is often said to be 'waived,' when otherwise privileged communications are disclosed to a third party." Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 24 (1st Cir. 2011). "The rationale is that such disclosure destroys the confidentiality upon which the privilege is premised." Id. (quotations omitted).

6

"An exception to this general rule exists for third parties employed to assist a lawyer in rendering legal advice." Cavallaro v. United States, 284 F.3d 236, 247 (1st Cir. 2002). For the exception to apply, "the involvement of the third party must be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications." Id. at 249. "The party invoking the privilege must show both that it applies and that it has not been waived." Lluberes, 663 F.3d at 24.

The plaintiffs argue that the defendants waived their claim of attorney-client privilege for 13 documents because those documents consist of email chains that include third-party information technology vendors. The defendants counter that the vendors' presence on the email chains does not constitute a waiver of the privilege because the vendors are "indispensable to the provision of legal advice." Doc. no. 116 at 7.

The 13 documents for which the plaintiffs contend that the defendants have waived the attorney-client privilege consist of three separate email chains, represented in three sets of documents beginning with the following numbers: SOS-3948381, SOS-3950435, and SOS-3950469. After *in camera* review, the court finds that to the extent that the documents contain information that would be protected by the attorney-client privilege, the defendants have waived the privilege for each document, other than a single page.

The third-party vendors included on the email chains are not indispensable to or facilitating an attorney-client communication. There is no indication that the information in the emails including the vendor is being sent or requested for the purpose of securing legal advice. Thus, the court finds that the emails are not privileged in the first instance. Moreover, the relevant email chains largely discuss the vendor's preference for what should or should not be included in the vendor's contract with the defendants, which is a public document, or discuss

purely technical issues regarding software functionality and testing. There is no explanation or evidence that the presence of the third-party vendor on these email chains or the information was "necessary, or at least highly useful" for the purpose of obtaining legal advice. Cavallaro, 284 F.3d at 247. In short, the defendants have not carried their burden. As such, even if the emails contained information protected by the attorney-client privilege, the defendants waived the privilege for the email chains contained in those 13 documents.[2]

That conclusion does not require the production of every challenged page, however. The top email on page SOS-3948381 contains an internal email among employees in the New Hampshire Secretary of State's office, including legal counsel, that was not part of the original chain. It is a communication made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice. Therefore, the defendants may redact the top email on page SOS-39348381. They shall produce the remainder of the 13 documents unredacted.[3]

B. <u>Application of the Attorney-Client Privilege</u>

The plaintiffs challenge the defendants' invocation of the attorney-client privilege for 27 documents on the ground that the privilege log demonstrates that the document or email chain was not created for the purpose of seeking or receiving legal advice. Those 27 documents fall

---

[2] The court notes for the sake of clarity that the defendants did not argue that its third-party vendor was the "functional equivalent" of an employee. See, e.g., United States ex rel. Long v. Janssen Biotech, Inc., 788 F. Supp. 3d 167, 171 (D. Mass. 2025). Regardless, the First Circuit has not yet adopted the functional equivalent doctrine so it is unclear that it would apply in these circumstances. Id.

[3] The defendants also withheld each of the 13 documents on the basis of the deliberative process privilege. For the same reasons discussed above, the deliberative process privilege does not apply to any of the above-referenced 13 documents.

into two categories: 1) non-email documents created by non-attorneys (22 documents) and 2) emails sent by non-attorneys that do not appear to seek legal advice (5 documents).

1. <u>Non-Email Documents</u>

The 22 non-email documents that the plaintiffs challenge consist of copies or slight variations of five separate documents: SOS-3948529, SOS-3948786, SOS-3948816, SOS-3948950, and SOS-3949029.

After a review of the defendants' entire production *in camera*, the court concludes that the following documents and their variations are protected by the attorney-client privilege because they were prepared either at the defendants' counsel's direction or otherwise reflect counsel's legal advice: SOS-3948786, SOS-3948816, and SOS-3949029.

The same is not true for SOS-3948529. The defendants' privilege log describes this document as a "[d]raft analysis of election bills in the General Court in 2025." Doc. no. 116-1 at 7. It adds that the document "[i]dentifies amendments to election laws and shared between Dept. staff and ELC, seeking and providing legal advice . . . ." <u>Id.</u> However, there does not appear to be anything in the defendants' production to suggest that this document was shared with legal counsel at all, much less done so for the purpose of seeking legal advice. The document is factual in nature and merely identifies changes in certain election laws. Absent more, neither this document nor any of its variations fall under the attorney-client privilege.[4]

Similarly, absent more, the defendants have not shown that SOS-3948950 is subject to the attorney-client privilege. The privilege log describes the document as a draft form titled

---

[4] The defendants also withheld this document under the deliberative process privilege. Again, the document appears factual in nature and is not deliberative. The privilege therefore does not apply.

"REGISTERING TO VOTE IN NEW HAMPSHIRE – DETERMINING THE QUALIFICATIONS OF APPLICANT (RSA 654:12)," which is "seeking, providing, or facilitating legal services between client and attorney or their respective agents, or intended to be shared with counsel to facilitate the provision of legal services." Doc. no. 116-1 at 19. The log further states that the "[d]raft reflects legal advice and seeks legal advice regarding current voter registration state laws." Id. But, like SOS-3948529, there does not appear to be anything in the defendants' production to suggest that legal counsel had input into this document, that it reflects legal advice, or that it was shared with legal counsel at all, much less done so for the purpose of seeking legal advice.

It is possible that the defendants' production includes a separate document showing that SOS-3948529 or SOS-3948950 and their variations were shared with legal counsel for the purpose of seeking or providing legal advice. The defendants' production submitted for *in camera* review consists of several thousand pages and contains many emails that were separated from any attachments. As discussed further below, the defendants shall have an opportunity to identify documents that support their description in the privilege log before producing unredacted copies of SOS-3948529, SOS-3948950, or their variations.

    2.  Email Documents

The five emails sent by non-attorneys that the plaintiffs challenge are all a variation of a single email chain. The defendants identify SOS-3950348 as representative of the chain.

The email chain is a series of several emails, the first few of which include the defendants' counsel as a recipient. The defendants redacted every email in the chain and state in their privilege log that the initial email was "providing information and direction necessary for

10

the provision of legal advice." Doc. no. 116-1 at 44. They further state that "[e]ach email seeks or reflects legal advice." Id. In their objection to the defendants' motion, they also assert that the email chain includes election law counsel who "seeks information necessary to provide legal advice" and that, above all, the "subject matter of implementing a new law evinces a request to provide legal advice." Doc. no. 116 at 9.

The defendants have not carried their burden to show that the referenced email chains are subject to the attorney-client privilege. Although a lawyer is present on certain of the emails, nothing in the content of the emails suggests that the lawyer requested or used this information, much less did so for the purpose of providing legal advice. And there is nothing to demonstrate that emails later in the chain on which the lawyer is not included reflect any legal advice. Simply put, the defendants have not shown that any of the emails on the referenced chain were made for the purposes of seeking or providing legal advice. The five email documents are not protected from disclosure by the attorney-client privilege.

The defendants also claimed the five emails were protected by the deliberative process privilege. The email chain, however, does not relate to the formation of any policy and disclosure of the emails would not inaccurately reflect or prematurely reveal the defendants' views. The deliberative process privilege does not apply to the emails, and the defendants shall produce unredacted copies of the five documents referenced above.

    C.    <u>Insufficient Description in Privilege Log</u>

The plaintiffs challenge 54 additional documents that the defendants withheld on the basis of the attorney-client privilege. The plaintiffs argue that the defendants' description of

11

these documents in their privilege log is lacking and does not provide the plaintiffs with enough information to ascertain whether the defendants have properly asserted the privileged.

The 54 documents are variations or copies of a total of 17 documents, which the defendants reference in their objection. See doc. no. 116 at 5. The plaintiffs' challenges are resolved as follows.

The defendants properly invoked the attorney-client privilege for the following ten documents and their similar email chains as noted on the privilege log: SOS-3948526, SOS-3948673, SOS-3948678, SOS-3948914, SOS-3948935, SOS-3948945, SOS-3949138, SOS-3949513, SOS-3949842, SOS-3950445. The defendants have not carried their burden to show that the remaining seven documents or their variations are protected by the attorney-client privilege. As discussed further below, the defendants shall have an opportunity to supplement their explanation regarding application of the attorney-client privilege.

### 1. Communications With Other Agencies

The following three documents contain communications between employees of and counsel for the New Hampshire Secretary of State's office and employees of or counsel for the New Hampshire Department of Safety and its agencies: SOS-3948300, SOS-3948306, and SOS-3949142. It is likely that including Department of Safety employees on these communications destroys the attorney-client privilege. The defendants have not addressed that issue either in their privilege log or their objection.

Similarly, the defendants have not addressed whether including New Hampshire Attorney General's Office employees on the communications contained in SOS-3949691 and its variations

destroys the attorney-client privilege.[5] Absent more, the defendants have not carried their burden to show that the attorney-client privilege applies to these documents. The defendants also claimed the deliberative process privilege over SOS-3948300, SOS-3948306, and SOS-3949691. That privilege does not apply to those documents for the same reasons discussed above.

          2.    <u>Insufficient Information</u>

The defendants have not carried their burden to show that the remaining three documents that the plaintiffs challenge are protected by the attorney-client privilege.

The defendants describe SOS-3948966 in their privilege log as confidential communications "seeking, providing, or facilitating the provision of legal services between client and attorney or their respective agents, or intended to be shared with counsel to facilitate the provision of legal services" Doc. no. 116-1 at 20. However, although a lawyer is included on each email, the chain appears to discuss primarily non-legal issues. The email on page SOS-394-8966 does discuss and attach other communications, including those with an attorney, but those attachments are not included with the document, and the discussion does not reveal the contents of the prior communications so the court cannot ascertain the nature of those communications. Based on the defendants' privilege log, the only portion of the email chain that appears to reflect a communication sent for the purpose of receiving legal advice is the second bullet point on the email reflected in SOS-3948967. Therefore, absent further justification from the defendants, the

---

[5] The court notes that other communications involving the Attorney General's Office, such as those reflected in SOS-3949138, appear to suggest that an attorney-client relationship does not exist between that office and the Secretary of State's Office with respect to the issues contained in the documents during the relevant timeframe.

only portion of the email chain that may be redacted under the attorney-client privilege is that single bullet point.

SOS-3950168 is similar to a document which the court has already addressed above, SOS-3948529, except that it addresses New Hampshire General Court bills from 2024 rather than 2025. The privilege log descriptions for the two documents are nearly identical. Compare doc. no. 116-1 at 43, and id. at 7. As with SOS-3948529, the document in factual in nature and does not appear to have been shared with legal counsel. Absent more, neither this document nor any of its variations fall under the attorney-client privilege

The entry on the privilege log of SOS-3950851 covers that page through SOS-3950861. Other than SOS-3950859, which they produced unredacted, the defendants redacted each page under either the attorney-client privilege or the deliberative process privilege. After review, the court concludes that the defendants properly withheld pages SOS-3950851 through SOS-3950858 under the attorney-client privilege. However, it is unclear whether the attorney-client privilege, the deliberative process privilege, or both apply to the final two pages. Without more, based on a review of the documents and the defendants' description in the privilege log, the court cannot ascertain the relationship between the final two pages and the remainder of the document or the context in which these two pages were created.

III. Depositions

The plaintiffs request in their motion to compel that the court "[a]llow Plaintiffs to re-open discovery for the limited purpose of deposing Defendants or their Rule 30(b)(6) designee(s) about HB 464 and any documents produced in response to any order to compel production issued by this Court." Doc. no. 96 at 16. The court denied that request without prejudice, and the

plaintiffs orally renewed their motion during the December 22, 2025 status conference. In light of the court's *in camera* review, that request is granted.

Conclusion

For the foregoing reasons, the court grants the plaintiffs' renewed motion to compel (doc. no. 96) to the extent that it seeks to reopen certain depositions. The court grants the motion in part to the extent that the court rules that the defendants have not appropriately asserted the deliberative process privilege with respect to any document.[6] The court grants in part and denies in part the plaintiffs' supplemental motion to compel (doc. no. 114) in accordance with this order.

The court referenced certain documents and their variations for which the defendants would be offered the opportunity to supplement their argument as to the application of one or more privileges. The court notes that although the defendants failed to carry their burden with respect to these documents, the defendants had little time to create their privilege log. Moreover, their descriptions in the log and assertions of privilege do not appear to be an effort to obfuscate or intentionally delay the discovery process. Consequently, the court grants the defendants an opportunity to supplement their assertions of privilege with respect to the documents beginning at the following pages: SOS-3948529, SOS-3948950, SOS-3948300, SOS-3948306, SOS-3949142, SOS-3949691, SOS-3948966, SOS-3950168, and SOS-3950860-61. On or before January 20, 2026, the defendants shall either produce to the plaintiffs unredacted copies of those documents and their variations or file a supplemental objection explaining why any privilege

---

[6] The court grants the motion as to all but two pages of documents that the defendants withheld based on the deliberative process privilege. It holds in abeyance its ruling as to whether the defendants properly asserted the deliberative process privilege over SOS-3950860-61.

applies to those documents. The plaintiffs need not file a response. The court shall promptly issue an order addressing any supplement.

The defendants shall produce to the plaintiffs unredacted copies of all other documents and their variations addressed in this order on or before January 20, 2026.

SO ORDERED

_____
Samantha D. Elliott
United States District Judge

January 15, 2026

cc: Counsel of Record.