# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

New Hampshire Youth Movement,               \*
                                            \*
    Plaintiff,                               \*
                                            \*
    v.                                       \*       Civil No. 1:24-cv-00291-SE-TSM
                                            \*
David Scanlan, in his official capacity, et al.,\*
                                            \*
    Defendants                               \*
                                            \*
                                            \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Coalition for Open Democracy, et al.,       \*
                                            \*
       Plaintiffs,                        \*
    v.                                       \*       Civil No. 1:24-cv-00312-SE-TSM
                                            \*
David Scanlan, in his official capacity, et al.,\*
                                            \*
       Defendants.                        \*
                                            \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEFENDANTS' OBJECTION TO THE OPEN DEMOCRACY PLAINTIFS' MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(c)

Defendants, David M. Scanlan, in his official capacity as New Hampshire Secretary of State, and John M. Formella, in his official capacity as New Hampshire Attorney General ("State Defendants"), submit the following Objection to the Open Democracy Plaintiffs' Motion for Sanctions, stating as follows:

### INTRODUCTION

The Open Democracy Plaintiffs ("OD Plaintiffs") chose to raise a discovery deficiency issue on day 5 of their case-in-chief, after they had called their experts. The Open Democracy Plaintiffs failed to place Defendants on notice of their allegations of deficient discovery by

pointing to any rule that Defendants had violated, what documents or discovery responses were deficient, and what testimony or documents should therefore receive an "adverse inference" throughout the trial or in their motion. Indeed, Plaintiffs have failed to meet the threshold of showing a violation of a discovery rule in fact occurred, let alone that sanctions should result. Finally, the OD Plaintiffs' requested relief, to treat certain witnesses' testimony as "less credible" or to give their testimony "lesser weight" due to unidentified discovery deficiencies, is unprecedented and unsupportable. ECF 167 at 13.

## **FACTUAL BACKGROUND**

The Secretary of State's 30(b)(6) deposition was scheduled for February 4, 2026 by agreement of the parties. On January 9, 2026, the parties engaged in a meet and confer to discuss many pretrial matters, including the factual cut-off date. Denny Dec. ¶ 9.  At that time, the parties tentatively discussed the factual cut-off date of January 6, 2026. *Id.* During the meeting, the parties agreed that the Secretary of State would be re-deposed after the Plaintiffs received the new and final supplemental discovery responses. *Id.* at ¶ 4. The parties later agreed that the factual cut-off date would be January 20, 2026 because there were elections held on that date. *Id.* at ¶ 5. The parties agreed to hold the Secretary of State's deposition on February 4, 2026 so that Plaintiffs would have the supplemental discovery and because the Secretary of State could not attend the week prior because he was attending a conference. *Id.* at ¶ 6.

The parties eventually settled on February 4, 2026 for the deposition date. *Id.* at 7.  By request of Defendants, Plaintiffs sent a new deposition notice on January 29, 2026, which identified the following broad topics:

> 1. House Bill 464 and its implementation; and
> 2. Any documents produced in response to the Plaintiffs' motion to compel and supplemental motion to compel (ECF No. 96 and 114).

2

Ex. 1. The deposition was approximately three hours in person at the New Hampshire Department of Justice. After the deposition, counsel for the parties discussed exhibit stipulations for another hour or so in person. Denny Dec. at ¶ 9. In the week leading up to trial, the parties had nearly daily interactions regarding stipulations. *Id.* Plaintiffs did not raise any concerns regarding inadequate answers to the 30(b)(6) testimony or other discovery deficiencies during any of these meetings. *Id.*

On February 5, 2026, OD Plaintiffs raised one issue only as a follow up to the 30(b)(6) deposition: regarding how *the New Hampshire Division of Motor Vehicles* collects its data. The email from the OD Plaintiffs to Defendants stated as follows:

> Thanks for chatting with me today.  Thank you, also, for flagging the issue of the Secretary not being prepared to discuss how DMV gathers and transmits citizenship data to the SVRS (my words, not yours). As I had previously forecast [sic] for you, Dr. Mayer is preparing a short supplement based on his review of the forthcoming Scanlan deposition transcript and other HB 464 information. We look forward to your email on the issue, as we won't be able to get you that supplemental report until we have the answer.

Ex. 2. In response to OD Plaintiffs' February 5 email, Defendants gathered the requested information from the DMV (as it is the DMV, not the Secretary of State's office, that "gathers and transmits citizenship data"). Ex. 3. Defendants emailed the requested information, including a memorandum prepared by the DMV, to Plaintiffs on February 6, 2026. *Id.* There were no further requests for information from Plaintiffs.  The OD Plaintiffs produced the supplemental report of their expert, Dr. Mayer, the following day, February 7, 2026. Ex. 4.

During trial, Dr. Mayer criticized the new DMV and Vital Records inquiries based on several misconceptions, none of which were due to inadequacies of Defendants' discovery responses. When Dr. Mayer testified on the second day of trial, February 10, 2026, he described aspects of the DMV and Vital Records inquiries on SVRS as "confusing" and "not entirely clear." (Tr. Day 2 a.m., 125:20-126:7) (Dr. Mayer criticizes that the DMV and Vital Records

3

inquiry authorization form for asking for "confusing information" such as the prospective voter's name and their parents' name); Tr. Day 2 a.m., 129:23-130:12 (Dr. Mayer raises the issue of exact matches and claims that the instructions were "not entirely clear," and he goes on to criticize the system for its inability to pick up nicknames). Dr. Mayer also appeared not to have reviewed the unredacted instructions provided to him as Tr. Ex. 177 (introduced by Defendants as Trial Exhibit VV1), because he seemed to believe that the results of a Vital Records or DMV inquiry will simply show a yes/no match, or potentially, a probabilistic match. Tr. Day 2 a.m., 134:3-12 ("It's either a match or not a match."). Dr. Mayer also seemed to believe that the only information that would show up in a result for a birth record search is a voter's name and date of birth, leading to concern about an election official receiving multiple matches and the "election official [not] know[ing] which one is which." Tr. Day 2 p.m., 20:2-23. This testimony clearly conflicts with the results portion of the DMV and Vital Records instructions for inquiries of birth records, showing the results fields including parents' names and city or town of birth. Tr. Ex. VV1 at SOS-3950884. Therefore, if an election official inputs a voters' name and date of birth, the official can easily rectify multiple matches by reviewing the parents' names included on the voter's completed authorization form. Tr. Ex. WW.

Defendants, in seeking to rebut the inaccurate and misleading testimony of Plaintiffs' expert, sought to have Elections Director Patricia Piecuch testify as to the DMV and Vital Records inquiries, using dummy data on SVRS as an illustrative aid to demonstrate how the search will work. This "playground" of dummy data for DMV and Vital Records inquiries was only created the day before in order to train election officials and was neither subject to discovery responses nor was subject to the parties' stipulation as to disclosures of documents. *See* Tr. Day 5 p.m., 62:3-16; *see* ECF 133.

4

In the morning on Friday, February 13, 2026, Defendants asked Plaintiffs' position on using the "playground" as an illustrative aid. It was only in objecting to Defendants' request to use the "playground" on the afternoon of February 13th, and only after Plaintiffs' witnesses had completed their testimony, that the OD Plaintiffs raised with the Court their concerns regarding perceived deficiencies in Secretary Scanlan's February 4 deposition testimony.

After the Court denied Defendants' request to show the SVRS "playground" as a demonstrative, Defendants requested to use an unredacted version of Defendants' Exhibit VV (same as Plaintiffs' Exhibit 177) during Director Piecuch's testimony, in a closed courtroom. Plaintiffs did not assent to a closed courtroom, but Plaintiffs did not object to the admission of the unredacted Exhibit VV.[1] Tr. Day 5 p.m., 71:16-72:14.

That same day, Defendants called counsel for the OD Plaintiffs to ask counsel to cite to the perceived deficiencies with the Secretary's February 4 deposition, but counsel declined to do so. Broadhead Dec. On Saturday, February 14, 2026, before any witness for the Defendants took the stand, Defendants emailed Plaintiffs, again asking Plaintiffs to "identify which portions of the deposition you have concerns about." Ex. 5.

On Sunday, February 15, instead of providing citations to the transcript, counsel for Plaintiffs sent a list of broad subject areas, none of which were noticed and many of which had nothing to do with HB 464:

> 1) whether a person who is in removed status for being unqualified can have their citizenship confirmed in SVRS, 2) whether certain emails from LEOs were responded to,

---

[1] Plaintiffs' footnote 3, describing "Defendants' use of confidentiality designations as a shield at trial was improper" is facially incorrect. Both parties reserved their right to introduce an unredacted version of Exhibit VV. ECF 133. Plaintiffs never sought to do so. Plaintiffs did not object when Defendants introduced Exhibit VV1 into evidence. Tr. Day 8 a.m. 86:24-87:10. Moreover, confidentiality prohibited unauthorized access to Exhibit VV. It did not "shield" Exhibit VV's contents from Plaintiffs or Plaintiffs' experts.

3) how incomplete or accurate vital records or DMV records are, 4) what type of playground opportunities there are for SVRS, 5) what percentage of NH vital records can be found in SVRS, 6) whether SVRS includes data from citizens who attested to citizenship without providing DPOC, 7) what percentage of people in NH have a REAL ID, 8) whether cities have enough people with SVRS access, 9) if a person needed multiple documents from SVRS (i.e. a birth certificate and marriage license) how many times they'd have to fill out the form, and how many times the search would need to be run), 10) how much staff time was involved in implementing HB 464.

Ex. 6.

On Tuesday, February 17, 2026, the Defendants presented their first witness, Deputy Secretary of State Brendan O'Donnell. Plaintiffs objected to Deputy O'Donnell's testimony regarding his own training on performing DMV and Vital Records inquiries on SVRS. *See* Tr. Day 6 p.m., 13:10-15:9. Of note, the Secretary of State was not asked during his 30(b)(6) deposition if anyone had been trained to perform these inquiries. *See generally* ECF 167-8. Nevertheless, the Court rightly stated at the time that inconsistencies between a 30(b)(6) deponents' testimony and that of any witness "that could go to the weight of the evidence, it could go to the court's determination of the facts in the case, but I haven't seen anything that gives me the ability to preclude testimony simply because it contradicts a 30(b)(6) witness." Tr. Day 6 p.m. 13:14-15:9.

The Court stated, more than once, that Plaintiffs would need to identify what discovery rule or rule of evidence that Defendants purportedly violated, to impose sanctions. Tr. Day 6 p.m., 127:8-11 ("I don't even know that any discovery rule or rule of evidence has been violated, nevertheless what the appropriate sanction would be under those circumstances."); Tr. Day 6 p.m., 125:22-24 ("I don't have enough information about what requests they didn't respond to, why you think this fits into or is appropriate for sanctions…"; Tr. Day 6 p.m., 126:12-14 ("I can't order any sanctions unless I'm positive that there's been a violation of something."). The Court

6

also offered Plaintiffs the opportunity to perform additional depositions; Plaintiffs declined. Tr. Day 6 p.m., 127:19-128:2.

Even at the close of trial, the Court again notified Plaintiffs that, once Plaintiffs rest their case, the Court "can no longer give [Plaintiffs] depositions or additional witnesses" as potential sanctions, if the Court "agree[s] that there's been a violation of some kind, which [the Court has] not agreed." Both Plaintiffs indicated their understanding. Tr. Day 9, 86:2-87:7.

The Open Democracy Plaintiffs filed this Motion for Sanctions on February 26, 2026.

## ARGUMENT

The OD Plaintiffs filed their Motion solely based on Rule 37(c). Notably, Plaintiffs did not identify any rule or specific discovery request that Defendants failed to comply with during trial and still fall short here. The OD Plaintiffs still have failed to identify with any specificity what testimony or documents that Defendants should have disclosed, or what testimony was implicated by this alleged nondisclosure. The OD Plaintiffs request the following in their Motion:

> First, where a defense witness's testimony conflicts with that of Secretary Scanlan (or seeks to cure his averred lack of knowledge) on issues regarding the implementation of HB 464, the Open Democracy Plaintiffs seek a reasonable inference that the other witness is less credible on those subject matters… Second, the OD Democracy Plaintiffs request that, in light of Defendants' failure to supplement and Plaintiffs result inability to more fully probe the evidence inadequacies of the HB 464 system, the Court give appropriate, lesser weight to testimony which was based on undisclosed responsive information.

ECF 167 at 3. The OD Plaintiffs never identify what testimony should be "less credible" or receive "lesser weight," but add a footnote, claiming that "Plaintiffs will endeavor to identify such conflicting testimony in their Proposed Findings of Fact." ECF at 3, n. 1.

   I.    **30(b)(6) Testimony Not Governed by Rule 37(c); Waived**

7

Federal Rule of Civil Procedure 37(c) concerns, in relevant part, failures by a party "to provide information or identify a witness as required by Rule 26(a) or (e)." Rule 37(c) does not apply to perceived deficiencies in deposition testimony. Tr. Day 6 p.m. 117:22-23 ("26(e) does not apply to deposition testimony.").

Plaintiff's method of raising Secretary Scanlan's deposition is procedurally improper and unjustified. In *Party Book Hill Park, LLC v. Travelers Prop. Cas. Co. of Am.*, the plaintiff's 30(b)(6) witness refused to answer questions on all nine topics notified by defendant on account of attorney-client privilege. No. 18-1179 (GMM), 2023 U.S. Dist. LEXIS 168811, at *9-10 (D.P.R. July 17, 2023). Defendant Travelers only raised the issue with the 30(b)(6) notice in a motion in limine, seeking to exclude "all documentary evidence and other testimonial evidence" related to the 30(b)(6) topics. *Id.* at *12. The court held in *Party Book Hill Park, LLC* that the motion in limine was "untimely and procedurally improper" and that a party must move for an order compelling discovery including "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court intervention." *Id.* at *12-13, citing Rule 37(a)(1); *Brenford Envtl. Sys. L.P. v. Pipeliners of P.R.*, 269 F.R.D. 143, 147 (D.P.R. 2010).

Here, Plaintiffs failed to raise issues concerning Secretary Scanlan's deposition testimony until after they completed the examination of their witnesses. Plaintiffs did not file a motion to compel or motion in limine.

Plaintiffs *not only* did not seek to meet and confer, they 1) led Defendants to believe prior to trial that there were no unresolved issues with the deposition testimony once Defendants provided DMV information as requested, and 2) refused additional depositions offered by the Court. By failing to raise the issue until Day 5 of trial, failing to file any motion until after trial,

8

failing to file a motion to compel as to the concerns regarding inadequate responses, and refusing remedial measures, the OD Plaintiffs waived any right to seek sanctions regarding the perceived inadequacies of the 30(b)(6) testimony.

To the extent that there were inconsistencies between the 30(b)(6) testimony and the testimony of individual witnesses, the correct (and only) remedy for Plaintiffs is cross-examination. *Echavarria v. Roach*, Civil Action No. 16-cv-11118-ADB, 2022 U.S. Dist. LEXIS 84042, at *27 (D. Mass. May 10, 2022) ("testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes"). Short of a situation "tantamount to a complete failure of [a party] to appear at its deposition," sanctions are not warranted. *Neponset Landing Corp. v. Nw. Mut. Life Ins. Co.*, 279 F.R.D. 59, 61 (D. Mass. 2011) (quotations omitted); citing *Berwind Prop. Group, Inc. v. Envtl. Mgmt. Group, Inc.*, 233 F.R.D. 62, 65 (D. Mass. 2005) (while corporation should have done a better job preparing a witness, his failure or inability to testify fully did not warrant sanctions).

## II.    OD Plaintiffs Fail to Identify Discovery Deficiencies Pursuant to 26(e)

The OD Plaintiffs request the Court give "lesser weight to testimony which was based on undisclosed responsive information," but fails to identify which testimony and which "undisclosed responsive information" they are referring to.

It is axiomatic that to seek sanctions, there must first be a rule violation. Even once there is a violation, the court considers, among other factors, the "adequacy of lesser sanctions" and "prejudice to the other party." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 435 (1st Cir. 2015); *see also All. Communs. Techs., Inc. v. AT&T Corp.*, 245 F. App'x 583, 585 (9th Cir. 2007) (exception to discovery rule if failure to disclose is harmless).

9

While the OD Plaintiffs refer to discovery requests and responses as exhibits to their motion and discussed discovery disputes that occurred prior to trial, they did not identify any specific document or information that the Defendants were required to produce, but failed to produce, other than generalized references to the entire structure of SVRS. The OD Plaintiffs' allegations are strong on rhetoric, but little on substance. For example, the OD Plaintiffs claim that the Defendants "omitted key information about the implementation HB 464 [sic] and its resulting changes to the SVRS, information Defendants ambushed Plaintiffs with at trial." ECF 167 at 10. Plaintiffs still fail to specify what "key information" they are referring to and what information they were "ambushed" by.

By failing to adequately put Defendants on notice of the purported deficiencies and the problematic testimony in their motion, Defendants are placed at a severe disadvantage in their objection. In response to OD Plaintiffs' Motion, Defendants cannot identify portions of deposition transcripts or other discovery responses that can rebut Plaintiffs' overly broad allegations. For example, Plaintiffs, in trial, argued that they were unaware that State users had different privileges on SVRS and could perform partial searches. However, once Defendants were placed on notice of this particularized concern, Defendants identified deposition testimony in which Director Piecuch, as a 30(b)(6) witness, explained differing search capabilities between local and state users. Tr. Day 6 p.m. 45:7-46:13.

Plaintiffs' unspecified allegations not only prejudice Defendants' ability to address each allegation, but also fails to fulfil the Court's request for additional information regarding any purported discovery deficiency. Tr. Day 6 p.m., 125:22-24 ("I don't have enough information about what requests they didn't respond to, why you think this fits into or is appropriate for

10

sanctions…"; Tr. Day 6 p.m., 126:12-14 ("I can't order any sanctions unless I'm positive that there's been a violation of something.").

### III.    Failure to Identify Prejudice; Waiver

Plaintiffs cannot argue that they suffered prejudice where they cannot even identify the testimony that is apparently prejudicial to them. They argue vaguely that they were prevented from "fully probing" testimony regarding HB 464. OD Plaintiffs' perceived prejudice could have been resolved by further depositions, but they refused that intermediate sanction.

### IV.    Requested Relief is Unprecedented

Plaintiffs have not set cited to any case that stands for the proposition that, due to purported vague arguments regarding failure to supplement discovery, the Court should deem certain fact witnesses that Plaintiffs have decided are more harmful to their case as less credible. A request to find the Secretary's purported lack of knowledge *more* credible than other fact witnesses makes little sense. Rather, it is up to the fact-finder to identify which testimony is more credible.

Adverse inference instructions are typically reserved as sanctions for bad faith destruction of relevant evidence. *Nation-Wide Check Corp. v. Forest Hills Distribs., Inc.*, 692 F.2d 214, 218 (1st Cir. 1982). Defendants are unable to find a scenario in which a court imposed an adverse inference against the testimony of fact witnesses under remotely similar circumstances. For example, in the case cited by the OD Plaintiffs regarding an adverse inference instruction against a witness, the witness intentionally deleted files and used a "file-cleaning software" on two laptops after the defendants in the case filed a motion to compel. *Rockwood v. SKF USA, Inc.*, 2010 U.S. Dist. LEXIS 108792, at *3 (D.N.H. Sept. 30, 2010). Outside of the unusual circumstance in which a particular witness engaged in discovery conduct that called into

11

question that witness's credibility, an adverse inference instruction typically is regarding a document, not testimony. *See, e.g.*, *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 20 (1st Cir. 2009). Surely, Plaintiffs are not alleging that these witnesses, or any witnesses, had bad faith in destroying documents.

While the Defendants agree that the Court has wide discretion in fashioning remedies, a remedy in which the Court deems that certain unidentified testimony be treated as less credible or be given less weight is not one that is appropriate or supportable by the OD Plaintiffs' Motion.

<div style="margin-left:40%">

Respectfully submitted,

DEFENDANTS DAVID M. SCANLAN, in
H is official capacity as New Hampshire
Secretary of State, and
JOHN M. FORMELLA, in his official capacity as
New Hampshire Attorney General

By their attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

</div>

Date: March 9, 2026

<div style="margin-left:40%">

/s/ Catherine A. Denny
Michael P. DeGrandis, N.H. Bar No. 277332
Assistant Attorney General
Matthew T. Broadhead, N.H. Bar No. 19808
Associate Attorney General
Catherine A. Denny, N.H. Bar No. 275344
Assistant Attorney General
Laurie S. Young, N.H Bar No. 266185
Assistant Attorney General
Office of the Attorney General, Civil Bureau
1 Granite Place South
Concord, NH 03301
(603) 271-3650
michael.p.degrandis@doj.nh.gov
matthew.t.broadhead@doj.nh.gov
catherine.a.denny@doj.nh.gov
laurie.s.young@doj.nh.gov

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all parties of record through the Court's e-filing system.

Date: March 9, 2026              /s/ Catherine A. Denny
                                 Catherine A. Denny

13