## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| NEW HAMPSHIRE YOUTH MOVEMENT,<br><br>    *Plaintiff*,<br><br>    v.<br><br>DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State,<br><br>    *Defendant*. | Consolidated Cases<br>Case No. 1:24-cv-00291-SE-TSM |
| COALITION FOR OPEN DEMOCRACY, LEAGUE OF WOMEN VOTERS OF NEW HAMPSHIRE, THE FORWARD FOUNDATION, McKENZIE NYKAMP TAYLOR, DECEMBER RUST, MILES BORNE, A.M., by his next friend Russell Muirhead, and L.M., by her next friend Russell Muirhead,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State, and JOHN M. FORMELLA, in his official capacity as New Hampshire Attorney General,<br><br>    *Defendants*. | |

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF STAY PENDING APPEAL

Pursuant to Fed. R. Civ. P. 62, Defendants New Hampshire Secretary of State David M. Scanlan and New Hampshire Attorney General John M. Formella, each in their official capacities (collectively, the "Defendants"), by and through counsel, the Office of the Attorney General, move for a stay of the Order by this Court in its May 28, 2026 Order (ECF No. 176).

Because the Defendants meet all of the stay factors, a stay of this Court's Order is warranted until the appellate process has been completed and the parties have certainty regarding the Order.

## INTRODUCTION

This case lies at the intersection of New Hampshire voter's sovereign authority to administer elections under Article I, Section 4 of the United States Constitution, and protections afforded New Hampshire's voters by the First and Fourteenth Amendments. The Court misapplied controlling U.S. Supreme Court precedent this this matter. None of the Plaintiffs in this matter have proven that they have standing. The Court's Order is based on hypothetical and speculative factual assertions that are insufficient to establish a case or controversy warranting adjudication. The Organizational Plaintiffs have not established that they have direct or associational standing. They have not identified a single member who has been or would be incapable of registering to vote. The individual plaintiffs also lack standing because all of them possess documentary proof of citizenship; one of them registered to vote while this case was pending using it; and the other two cannot legally execute the Qualified Voter Affidavit because it requires them to swear that they are not in possession of documentary proof of citizenship. Even assuming, *arguendo*, that some plaintiff has standing, that plaintiff cannot possibly sustain a facial constitutional challenge on the facts contained in this record. One individual was able to register to vote without any difficulty before trial and the remaining two individuals already possess documentary proof of citizenship and can produce it without difficulty. Speculating that hypothetical people exist somewhere in some small amount who will experience some burden, the magnitude of which cannot be measured or tested through the adversarial process, falls far short of the evidence required to sustain a facial challenge to a duly enacted state voting law and fails the applicable constitutional test established under Supreme Court precedent.

2

Moreover, the Order does not merely enjoin Defendants' implementation and enforcement of discrete provisions of state election law.  It mandates that New Hampshire restore state-issued forms and procedures that the New Hampshire legislature repealed through House Bill 1569 ("HB 1569").  In other words, the Order does not surgically excise portions of a law that the Court found constitutionally infirm and issue targeted prospective injunctive relief. Instead, it mandates that State officials adhere to a statutory provision that the Court has ordered to be resurrected from the dead. The breadth of the Order's equitable relief violates Supreme Court precedent, substitutes a federal court's preferred state policy views for that of the New Hampshire legislature, and substantially impairs New Hampshire's policy goals of continuing same-day registration and voting, encouraging voter participation, and safeguarding the franchise from unlawful and mistaken dilution.

Accordingly, for reasons stated above and explained in further detail below, this Court should issue a stay of its Order pending appeal.

## BACKGROUND & PROCEDURAL POSTURE

Between February 9 and 20, 2026, the Court held a nine-day bench trial in this consolidated action.  At trial, both *N.H. Youth Movement v. Scanlan*, No. 1:24-cv-00291-SE-TSM ("Youth Movement"), and *Coalition for Open Democracy, et al. v. Scanlan, et al.*, No. 1:24-cv-00312-SE-TSM ("Open Democracy"),[1] challenged the facial constitutionality of HB 1569's repeal of the Qualified Voter Affidavit.  First Am. Compl., *N.H. Youth Movement v. Scanlan*, No. 1:24-cv-00291-SE-TSM, ECF No. 50, ¶¶ 76-81 (Mar. 18, 2025) ("*YM* Compl."); First Am. Compl., *Coalition for Open Democracy, et al. v. Scanlan, et al.*, No. 1:24-cv-00312-

---

[1] At the time of trial, the Open Democracy Plaintiffs consisted of three organizations and three individuals: Coalition for Open Democracy, League of Women Voters of New Hampshire, The Forward Foundation, Miles Borne, A.M. (by next friend Russell Muirhead), and L.M. (by next friend Russell Muirhead).

SE-TSM, ECF No. 85, ¶¶ 92-99 (Oct. 6, 2025) ("*OD* Compl."). Plaintiffs asserted that QVA-repeal violated the First and Fourteenth Amendments to the United States Constitution by imposing an undue burden on the right to vote. *See YM* Compl. ¶¶ 76-81; *OD* Compl. ¶¶ 92-99. The QVA was a state-issued self-verification form. Defs.' Ex. SS at 315 (entered into evidence by Joint Stip., ECF No. 136, ¶ 3). It permitted a registering voter to swear and affirm that the applicant was not in possession of the documents necessary to prove citizenship or other voter qualifications. *Id.* Plaintiffs facially challenged QVA-repeal only as it relates to proof of citizenship. *See* ECF No. 176 at 3 n.3.

Open Democracy also challenged the facial constitutionality of HB 1569's repeal of the Challenged Voter Affidavit under two theories.[2] First, Plaintiff asserted that HB 1569's repeal of the Challenged Voter Affidavit violated the First and Fourteenth Amendments by imposing an unjustifiable burden on the right to vote. *OD* Compl. ¶¶ 100-104. Second, Plaintiff asserted that HB 1569's CVA-repeal violated the Fourteenth Amendment by denying procedural due process to eligible voters. *Id.* ¶¶ 105-116. The CVA was a state-issued self-verification form. Defs.' Ex. SS at 315 (entered into evidence by Joint Stip., ECF No. 136, ¶ 3). It permitted an individual to swear or affirm that he or she was a duly qualified and legally domiciled voter in that specific town or ward. *Id.* Plaintiff did not challenge CVA-repeal as it applied to self-verification of identity. *See* ECF No. 176 at 3 n.3. Rather, Plaintiff asserted that CVA-repeal was facially unconstitutional because voters could no longer self-verify their voting qualifications if the validity of their ballot was challenged at the polls. *OD* Compl. ¶¶ 100-116.

The Court issued its Order on May 28, 2026. As it relates to this Motion to Stay, the Order declared that the provisions of HB 1569 that repealed the QVA (RSA 654:12 and

---

[2] The Court permitted only the Coalition for Open Democracy to challenge CVA-repeal. Order, ECF No. 93 at 13 (July 29, 2025).

RSA 654:7) to self-verify citizenship are facially unconstitutional. *See* ECF No. 176 at 97. The Court permanently enjoined Defendants from giving force or effect to HB 1569's QVA-repeal, and it required Defendants to provide state-issued QVA forms and procedures as an option for voting registrants to establish citizenship. *See id.* The Order also declared that the provisions of HB 1569 that repealed the CVA (RSA 659:27, RSA 659:27-a, RSA 659:30, RSA 659:31, and RSA 659:32) to self-verify voter eligibility in response to successful voter challenges are facially unconstitutional. *Id.* The Court permanently enjoined Defendants from giving force or effect to HB 1569's CVA-repeal, and it required Defendants to provide state-issued CVA forms and procedures as an option for voting registrants to establish citizenship. *See id.* Defendants have noticed their appeal simultaneously with this Motion to Stay Pending Appeal.

## STANDARD OF REVIEW

A party may move the district court for a stay pending appeal of a district court order or final judgment. *See* Fed. R. Civ. P. 62(d). A stay suspends operation of the injunctive relief awarded until the appellate court has ruled on the merits of the appeal. *See id.* The Supreme Court has outlined four factors to determine if a court should stay an Order pending appeal. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

"To obtain the stay, the Defendants bear the burden of satisfying a most familiar test. They must: (1) make a 'strong showing that [they are] likely to succeed on the merits' in their appeal; (2) show that they 'will be irreparably injured absent a stay'; (3) show that 'issuance of the stay will [not] substantially injure the other parties interested in the proceeding'; and (4) show that the stay would serve 'the public interest.'" *New York v. Trump*, 133 F.4th 51, 65 (1st Cir. 2025) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987))). The most critical factors are the likelihood of success and irreparable injury to the movant, absent a stay. *New York v. Trump*, 133 F.4th 51, 66 (1st Cir. 2025).

**ARGUMENT**

Defendants' appeal presents complex constitutional questions that could affect each state's legal authority to establish the qualifications, parameters, and procedures of voting. The interplay between New Hampshire's Article I, Section 4 constitutional prerogative to administer its elections and the First and Fourteenth Amendments to the United States Constitution, warrants a stay of the Order until the appellate process has been completed. Defendants will prevail on appeal because the Court's Order rests on legal errors that stand in stark contrast to established Supreme Court precedent. New Hampshire will also be irreparably harmed if it must revive portions of a statutory scheme that its voters' elected representatives chose to reform. Furthermore, a stay will not harm Plaintiffs or any other party because the trial produced no admissible evidence of an identifiable person who would be unable to vote under New Hampshire's current election scheme. Lastly, the public interest warrants a stay pending appeal. The public expresses its interests in the policies its elected representatives make into law, and New Hampshire law does not currently permit self-verification of voter qualifications.

I.    **Defendants Are Likely to Succeed on the Merits of Their Appeal Because the Order Departs from Settled Supreme Court Precedent at Each Stage of the Analysis and It Exceeds the Court's Remedial Authority**

Defendants are likely to succeed on the merits of their appeal at the First Circuit for at least five independent reasons. First, the Court erred in finding that Plaintiffs' evidence satisfied the requirements set forth in well-established Supreme Court Article III standing jurisprudence. Second, the Court misapplied the Supreme Court's standard for resolving Plaintiffs' facial constitutional challenges. Third, the Court's identification of Plaintiffs' purported burdens is inconsistent with the Supreme Court's direction that burdens must be viewed across the entire electorate, not a subset of it. Fourth, the Court discounted New Hampshire's interest in ensuring that only the ballots of eligible voters are counted, contrary to Supreme Court precedent. Fifth,

the Court exceeded its constitutional authority in the equitable relief it awarded.  For all these reasons, Defendants are likely to succeed on appeal.

**A.      The Court's Ruling on Plaintiffs' Article III Standing Conflicts with Settled Supreme Court Precedent**

Defendants are likely to succeed on appeal to the First Circuit because the organizational and individual Plaintiffs do not have standing, which is an essential prerequisite to a federal court's subject matter jurisdiction.  *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016).

**1.      The Organizational Plaintiffs Do Not Have Direct or Associational Standing**

The Court held that Open Democracy satisfied its burden to establish organizational standing.  ECF No. 176 at 52.  It found that HB 1569's QVA- and CVA-repeal perceptibly impaired Open Democracy's ability to provide core services and caused the organization to divert resources.  *See id.* at 50-52.  Similarly, the Court held that Youth Movement, the League of Women Voters, and The Forward Foundation satisfied their burdens to establish organizational standing.  The Court found that HB 1569's QVA-repeal perceptibly impaired the organizations' abilities to provide their core services and caused them to divert resources.  *See id.* at 53-55.  Finding that Youth Movement had organizational standing, the Court did not address Youth Movement's claim to associational standing.  ECF No. 165 at 54 n. 19.  Defendants are likely to succeed on appeal because these conclusions run counter to Supreme Court precedent regarding the limits of direct organizational standing.

The Court's standing analysis began from an unduly expansive reading of *Havens Realty Corp. v. Coleman*.   The Supreme Court unanimously held that "*Havens* was an unusual case, and this Court has been careful not to extend the *Havens* holding beyond its context."  *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393-94 (2024).  In *FDA v. Alliance for Hippocratic*

*Medicine*, the Supreme Court considered whether pro-life medical associations and doctors had standing to challenge the FDA's relaxed regulatory requirements for an abortion drug. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 373 (2024). The associations alleged that the FDA "'forced' the associations to 'expend considerable time, energy, and resources' drafting citizen petitions to FDA, as well as engaging in public advocacy and public education." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024). The plaintiffs asserted that this would result in considerable resource reallocation "to the detriment of other spending priorities." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024). The associations did not have standing because "[a] plaintiff must show 'far more than simply a setback to the organization's abstract social interests.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024). (quoting *Havens Realty Corp. v. Coleman*, 455 U. S. 363, 379, n.19 (1982)). Organizational standing may only be achieved where a challenge law *directly* affects and interferes with core *business* activities. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024).

Here, the organizational Plaintiffs' evidence in this case is materially indistinguishable from the *Hippocratic Medicine* plaintiff. The Court found that the organizations "spent money and devoted staff time to updating and creating new materials" that diverted funds from other activities, after HB 1569's passage. *See* ECF No. 176 at 50-51 (describing Open Democracy's alleged resource diversion); see also ECF No. 176 at 53 (describing Youth Movement's "mission-critical" activities), 54-55 (describing HB 1569's impact on League of Women Voters and The Forward Foundation). The Court did not address, however, uncontroverted evidence that each organization continues to engage in the core business activities that pre-existed HB 1569. Instead, the Court equated "perceptible impairment" to the organizations' core business activities with purportedly greater difficulty in assisting registering voters. *See, e.g.*,

8

ECF No. 176 at 50-52.  This is a fundamental mistake of law.  "[C]onflict between a defendant's conduct and an organization's mission is alone insufficient to establish Article III standing. Frustration of an organization's objectives is the type of abstract concern that does not impart standing." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1429 (D.C. Cir. 1996) (quotations and citations omitted).

The *Havens Realty* plaintiff had standing because the landlord's actions were like a manufacturer who sells defective goods to a retailer.  *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024).  The plaintiff could not continue business activities under the conditions created by the defendant.  *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024).  But here, the record reflects that the organizations' post-HB 1569 activities are responses to changes in the law—they are not consequences of it.  The organizational Plaintiffs cannot assert organizational standing because their core business activities related to voter registration assistance continues as it did prior to HB 1569.

The Court did not decide the issue, but if the First Circuit examines Youth Movement's claim to associational standing, it will find that Youth Movement has not satisfied its burden. Youth Movement has not demonstrated that (a) at least one of its members would otherwise have standing to sue in his or her own right; (b) its claim is germane to its purpose; and (c) neither its claim nor the relief it seeks requires its members to participate individually.  *See Equal Means Equal v. Ferriero*, 3 F.4th 24, 27-28 (1st Cir. 2021) (citing *Hunt* v. *Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)) (citations omitted); *Housatonic River Initiative v. United States EPA*, 175 F.4th 248, 265 (1st Cir. 2023).  Defendants are likely to succeed on each of these elements, but the first, a member with standing in his or her own right, is particularly striking. Each of Youth Movement's named members is registered to vote.  *See, e.g.*, ECF No. 154 at

9

11:6-11, 19:2-20:8 (Montagano testimony); ECF No. 154 at 29:4-9; 37:23-38:21 (Sumner testimony). For the reasons explained below regarding Mr. Borne's lack of standing, the Youth Movement members will never use a QVA because they cannot be required to prove citizenship when re-registering to vote. *See* RSA 654:12, II.

**2.      The Individual Plaintiffs Do Not Have Standing or Their Claims Are Moot**

The Court held that A.M., L.M., and Mr. Borne satisfied their burdens to establish individual standing. ECF No. 176 at 55. Defendants are likely to succeed on appeal because these findings are incorrect on the facts and the law. Regarding A.M. and L.M., the Court's theory is that HB 1569 will require them to produce documentary proof of citizenship, which would not be required if New Hampshire law permitted their execution of a QVA. ECF No. 176 at 55. This is not supported by the evidence, as neither A.M. nor L.M. need a state-issued QVA form to prove citizenship. *See, e.g.*, Joint Stip., ECF No. 132, ¶¶ 27, 28. Indeed, neither could validly execute a QVA. A QVA would require A.M. and L.M. to swear and affirm that they are "not in possession of some or all of the documents necessary to prove … citizenship[.]" Defs.' Ex. SS at 315. Since the evidence showed that they possess proof of citizenship as required by HB 1569, A.M. and L.M. cannot swear to the contrary.

But even if they could validly execute a QVA, A.M. and L.M. did not offer evidence that executing a QVA would be less burdensome than retrieving their passports or birth certificates kept in their safe at home, or less burdensome than providing other reasonable documentation. *See* ECF No. 132, ¶¶ 27, 28. Perhaps most importantly of all, the Court did not address that HB 1569, as amended by HB 464, will require neither A.M. nor L.M. to produce documentary proof of citizenship because each has a New Hampshire-issued driver's license. *See* ECF No. 132, ¶¶ 23-24, 25-26; RSA 654:12, VI. In other words, under the current law, state databases

will confirm their citizenship without A.M. or L.M. doing more than asking a local election official to check the Motor Vehicle database. *See id.* So, A.M. and L.M. cannot establish injury-in-fact, trace their alleged injuries to HB 1569, or demonstrate that a revived QVA would redress their purported injuries. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

Mr. Borne lacks standing for the same reasons that A.M. and L.M. lack standing. Mr. Borne cannot use a QVA to prove citizenship because he possesses a United States passport and a birth certificate. Joint Stip., ECF No. 132, ¶¶ 1-2, 4. He also failed to introduce evidence that were he eligible to use a QVA, executing a QVA would be less burdensome than retrieving his passport of birth certificate from his safe at home, or less burdensome than producing his New Hampshire-issued Real ID driver's license, or producing other reasonable documentation. *See* Joint Stip., ECF No. 132, ¶¶ 4, 7-8; RSA 654:12, VI; RSA 654:12, I(d). He cannot establish injury-in-fact, trace his alleged injury to HB 1569, or demonstrate that a revived QVA would redress his purported injury. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

But unlike A.M. and L.M., Mr. Borne is a currently registered voter. The Court found that although Mr. Borne registered to vote while this case was pending, his claim is not moot. ECF No. 176 at 57-58. Defendants are likely to succeed on appeal because this is incorrect as a matter of law, for at least three reasons. First, Mr. Borne will never be required to provide documentary proof of citizenship again. Evidence of Mr. Borne's prior registration in New Hampshire is evidence of Mr. Borne's citizenship, if he re-registers in New Hampshire sometime in the future. RSA 654:12, II. Second, Mr. Borne has not maintained a personal stake in the outcome of this case for the reasons stated above. *See Steir v. Girl Scouts of the USA*, 383 F.3d 7, 15 (1st Cir. 2004). Third, the mootness exception of "capable of repetition yet evading review" cannot apply to Mr. Borne. The material similarity of his situation to others is (1)

11

possession of documentary proof of citizenship, (2) a record of New Hampshire birth in Vital Records, and (3) a record of a Real ID-compliant driver's license in the Motor Vehicle's database. *See Davis v. Coakley*, 802 F.3d 128, 133 (1st Cir. 2015) (explaining that "similarly situated" does not require exact correlation, but "apples should be compared to apples"). For the reasons stated above, a similarly situated person would not have standing in this lawsuit, were that person a named plaintiff.

Accordingly, no plaintiff has proven standing to maintain this case. The defendants are therefore likely to succeed on the merits. This Court should stay its Order pending appeal on this basis alone.

### B.    The Court Misapplied the Supreme Court's Standard for Facial Constitutional Challenges

Defendants are also likely to succeed on the merits of their appeal to the First Circuit because this Court did not apply the correct standard for considering facial challenges. "[A] plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). While some members of the Supreme Court have criticized that formulation of the standard, "all agree that a facial challenge must fail where the statute has a 'plainly legitimate sweep.'" *Id.* In determining whether a law is facially invalid, a court may not go beyond the law's facial requirements—it must not "speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange*, 552 U.S. at 449-50 (citing *United States v. Raines*, 362 U.S. 17, 22 (1960)).

The Supreme Court disfavors facial challenges because they often rely upon speculation and barebone facts, they risk premature statutory interpretation, they may cause a court to

12

anticipate constitutional questions or to formulate broader constitutional rules than necessary, and they threaten to short-circuit the democratic process. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008) (collecting cases). So, where plaintiffs ask a court to invalidate a state law in all its applications, plaintiffs "bear a heavy burden of persuasion." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 200 (2008). Defendants are likely to succeed on appeal because the Court did not apply the Supreme Court's rigorous standard governing facial constitutional challenges.

The Supreme Court has consistently held that where a law has broad application to all voters, "it imposes only a limited burden on voters' rights." *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 202-03 (2008) (quoting *Burdick v. Takushi*, 504 U.S. 428, 439 (1992)) (internal quotations omitted). On its face, HB 1569 applies to all voters—no one is permitted to self-verify through QVAs or CVAs. *See* ECF No. 176 at 67 (noting QVA-repeal "impacts voters as a whole"). The trial did not produce any evidence of an identifiable individual or group who cannot register to vote or overcome a voter challenge. To the extent that Plaintiffs offered evidence of harm caused by HB 1569, the harm reflected ordinary and widespread inconveniences, *i.e.*, voters being required to locate and produce documentary proof of their eligibility to vote. This was essentially the very same subject of the United States Supreme Court's decision in *Crawford*. And as the Court acknowledged, Defendants offered evidence of the state's legitimate interest in ensuring election integrity, safeguarding voter confidence, and protecting the public fisc are legitimate state interests. ECF No. 176 at 72-73. The Court should have ended the inquiry here, because even if there were a small subset of the population that could experience burdens greater than the general public, that would be insufficient to invalidate the entirety of a duly enacted law on its face. *See Crawford v. Marion*

13

*Cnty. Election Bd.*, 553 U.S. 181, 203 (2008) ("Finally we note that petitioners have not demonstrated that the proper remedy—even assuming an unjustified burden on some voters— would be to invalidate the entire statute.").

Nevertheless, the Court examined a small subset of voters who may hypothetically experience a unique burden under HB 1569. *See, e.g.*, ECF No. 176 at 67 ("Although HB 1569's elimination of the QVA to prove citizenship impacts voters as a whole, it places an especially heavy burden on certain groups of voters."). It drew a distinction between "the group for whom the law is a restriction, not the group for whom the law is irrelevant." ECF No. 176 at 60 n.20 (quoting *City of L.A. v. Patel*, 576 U.S. 409, 418 (2015) (analyzing the application of a law permitting warrantless searches)). The Court's approach may be consistent with some facial Fourth Amendment challenges, but this is not a Fourth Amendment case and HB 1569's provisions apply to **all** New Hampshire voters. *Compare City of L.A. v. Patel*, 576 U.S. 409, 418 (2015) ("The '[l]egislation is measured for consistency with the Constitution by its impact on those whose conduct it affects.'") (internal citations omitted) *with* RSA 654:12, I. In the context of a facial constitutional challenge to a generally applicable election law, the *Anderson-Burdick* framework does not permit the Court to select only a subset of voters for inclusion on the burden-side of the analysis. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 206 (2008) (Scalia, J., concurring). Indeed, "[t]hat was essentially the approach of the *Burdick* dissenters, who would have applied strict scrutiny to the laws because of their effect on 'some voters.'" *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 206 (2008) (Scalia, J., concurring) (quoting *Burdick v. Takushi*, 504 U.S. 428, 446 (1992) (Kennedy, J., dissenting)). Consequently, because this case "involves a facial challenge," this Court cannot strike down HB

14

1569 on its face "based on the mere possibility" that a certain subset of voters may face an indeterminable and untested level of burden. *See Wash. State Grange*, 552 U.S. at 455.

The Order reflects the very dangers that make facial challenges disfavored. The record shows that the vast majority of eligible voters can satisfy HB 1569's citizenship requirements—more than 98.33%, according to Plaintiffs' expert Prof. Michael Herron. *See* ECF No. 157 at 13:2-6, 20:11-15 (explaining that 1.67% non-possession rate includes eligible voters who are already registered to vote). Since the state has an indisputable interest in counting only the votes of eligible voters, HB 1569 must have at least *some* constitutional applications. The Court, however, relied on speculative burdens experienced by third parties where the facts of those purported burdens were undeveloped in the record. The Court also decided the case while a critical amendment to HB 1569 (HB 464) was being implemented, and the Court presumed that voters do not know the law, a presumption contrary to well-settled law. *See United States v. Hodson*, 77 U.S. 395, 409 (1870) ("Every one is presumed to know the law. Ignorance standing alone can never be the basis of a legal right."). The factual record also lacks contextual comparators. For example, much of the data regarding the organizational Plaintiffs' registrations related to high-turnout elections which have not occurred since HB 1569 or HB 464 went into effect.

The Supreme Court requires district courts to analyze facial challenges by examining "the laws and their reasonably foreseeable effect on *voters generally*." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 205-06 (2008) (Scalia, J., concurring) (citing *Burdick v. Takushi*, 504 U.S. 428, 439, 436-37 (1992) (emphasis in original). In other words, where voters experience an ordinary and widespread burden caused by a nondiscriminatory voting law, the burden cannot be severe, regardless of how the requirement may affect any single voter. *See Crawford v. Marion*

*Cnty. Election Bd.*, 553 U.S. 181, 206 (2008) (Scalia, J., concurring) (citing *Clingman v. Beaver*, 544 U.S. 581, 590-91 (2005)).  Defendants will likely prevail on appeal because the First Circuit will apply the Supreme Court's standard for evaluating facial constitutional challenges across New Hampshire voters, generally.

> **C.      The Court Assigned Plaintiffs' Asserted Burdens Greater Constitutional Weight Than the Record and Supreme Court Precedent Permit**

Defendants are likely to succeed on the merits of their appeal to the First Circuit because the Court examined individualized burdens, contrary to the Supreme Court's direction to consider HB 1569's reasonably foreseeable effect on the whole of the electorate.  The Supreme Court's *Anderson-Burdick* framework uses a two-track approach to determine the validity of a state election law.  *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 204-05 (2008) (Scalia, J., concurring) ("Although *Burdick* liberally quoted *Anderson*, *Burdick* forged *Anderson*'s amorphous 'flexible standard' into something resembling an administrable rule…. Since *Burdick*, we have repeatedly reaffirmed the primacy of its two-track approach.") (internal citation omitted).  A court must first ascertain whether the burden on the plaintiff's right to vote is merely inconvenient, or whether it is severe.  *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 205 (2008) (Scalia, J., concurring) (citing *Clingman v. Beaver*, 544 U.S. 581, 586-87 (2005)).

The Supreme Court directs that if a challenged election law causes severe burdens on voters, burdens must be placed on the strict scrutiny track for comparison with the state's interests in the restriction.  *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 205 (2008) (Scalia, J., concurring) (citing and quoting *Clingman v. Beaver*, 544 U.S. 581, 591, 592 (2005)). The Supreme Court defines "severe burdens" as those that go beyond that which is merely

inconvenient.  *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 205 (2008) (Scalia, J., concurring) (citing *Storer v. Brown*, 415 U.S. 724, 728-729 (1974)).

A generally applicable election law that requires nominal effort imposes ordinary and widespread burdens.  *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 205 (2008) (Scalia, J., concurring) (citing *Clingman v. Beaver*, 544 U.S. 581, 591, 593-597 (2005)).  Such a law is merely inconvenient, so it does not warrant strict scrutiny.  *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 205 (2008) (Scalia, J., concurring) (citing *Clingman v. Beaver*, 544 U.S. 581, 591, 593-597 (2005)).  Applying *Anderson-Burdick* to an inconvenient restriction does not require an extensive record or analysis of burdens.  *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 208-09 (2008) (Scalia, J., concurring).  This is so, because courts must identify the burdens experienced by the whole electorate—not a portion of it.  *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 205-06 (2008) (Scalia, J., concurring) (citing *Burdick v. Takushi*, 504 U.S. 428, 439, 436-37 (1992)).  A court cannot select a subset of voters who may have greater difficulty complying with requirements, to turn a nominal burden into a severe one.  *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 205 (2008) (Scalia, J., concurring).  Individualized or idiosyncratic "light and heavy burdens are no more than the different ***impacts*** of the single burden that the law uniformly imposes on all voters.  *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 205 (2008) (Scalia, J., concurring) (emphasis in original).  The Supreme Court has routinely "refute[d] the view that individual impacts are relevant to determining the severity of the burden it imposes."  *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 205-06 (2008) (Scalia, J., concurring) (collecting cases).

Here, the Court found that repeal of QVAs to prove citizenship will significantly burden some New Hampshire voters—particularly those who choose to wait until election day to

17

register.  *See* ECF No. 176 at 61.  It also found that there is no evidence of voters' reliance on CVAs to overcome eligibility challenges, but hypothesized that there could be future burdens experienced by some.  *See* ECF No. 176 at 78, 87. These findings are inconsistent with the Supreme Court's two-track approach to the *Anderson-Burdick* framework.  The Court should not have attributed the personalized and idiosyncratic burdens of subsets of the general population to the entire New Hampshire electorate.  *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 205-06 (2008) (Scalia, J., concurring).

The Court correctly noted that New Hampshire voters cannot self-verify their eligibility to vote after HB 1569, but the Supreme Court has explained that "every voting rule imposes a burden of some sort[.]" See *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 670 (2021). For example, lawful voting foreseeably requires compliance with rules, time and attention, travel, following directions, and completing forms, among other things.  *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 670 (2021).  The Supreme Court has described these tradeoffs as the "usual burdens of voting" that voters must tolerate.  *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 670 (2021) (citing *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 198 (2008) (plurality opinion)).  As a matter of law, the Court erred in finding that an incremental increase in New Hampshire voters' foreseeable and usual voting burdens qualified as a significant burden that required a strict scrutiny analysis track.  *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 198 (plurality opinion) (2008) (plurality opinion).  Defendants will likely prevail on appeal because the First Circuit will apply the Supreme Court's two-track approach to a generally applicable, nondiscriminatory law that imposes nominal burdens on the electorate as a whole.

**D.        The Court Discounted New Hampshire's Important Regulatory Interests Contrary to Supreme Court Precedent**

Defendants are likely to succeed on the merits of their appeal at the First Circuit because, as a matter of law, the Court should have held that New Hampshire's interest in counting only the ballots of eligible voters is, at a minimum, important.  "There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008).  "Consequently, there is a strong state interest in regulating all phases of the electoral process, including ballot access." *Perez-Guzman v. Gracia*, 346 F.3d 229, 238 (1st Cir. 2003) (citing *Storer v. Brown*, 415 U.S. 724, 730 (1974); *Libertarian Party of Me. v. Diamond*, 992 F.2d 365, 370 (1st Cir. 1993)).

The Court acknowledged that election integrity, safeguarding voter confidence, and protecting the public fisc are legitimate state interests.  ECF No. 176 at 72-73.  Nevertheless, the Court scrutinized New Hampshire's interests in QVA-repeal in the context of whether HB 1569 provided a "safety valve" to mitigate voters' burdens.  *See* ECF No. 176 at 73 (citing *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 194-98 (2008); *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 678-86 (2021).  The Court fundamentally misapprehended the Supreme Court's dicta in the cases the Court cited.  According to the Supreme Court, the entire statutory election scheme must be analyzed because no provision (such as repeal of QVA or CVA) can be understood outside the context of the whole.  *See, e.g.*, *Burdick v. Takushi*, 504 U.S. 428 (1992). The Supreme Court does not require election laws to have safety valves for unique individual circumstances where a law is generally applicable and nondiscriminatory.  *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 206 (2008).

Controlling precedent required the Court to value New Hampshire's interest in regulating ballot access as "strong" (First Circuit) or "important" (Supreme Court), but it did not do so.  *See*

19

ECF No. 176 at 73 (describing interest in QVA-repeal as "abstract"), 82 (describing interest in CVA-repeal as "not advanced at all").  The Supreme Court has been clear that the right to vote "can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."  *Rucho v. Common Cause*, 588 U.S. 684, 731 (2019) (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)).  The First Circuit is likely to correct the Court's misperception of the law, which led to its underweighting of the state's interest in election integrity.

### E.    The Order's Remedies Exceed the Limits of the Court's Federal Equitable Authority

Defendants are likely to succeed on the merits of their appeal to the First Circuit because the Court exceeded its authority by mandating the use of state-issued QVAs and state-issued CVAs.  Without a doubt, federal courts may vindicate federal rights by commanding state actors to refrain from violating federal law.  *Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 255, 131 S. Ct. 1632, 1638 (2011)* (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).  That command, however, "must closely tailor injunctive relief to the specific harm alleged."  *DraftKings Inc. v. Hermalyn*, 118 F.4th 416, 423 (1st Cir. 2024) (citing *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 487 (1st Cir. 2009).  Equitable relief also cannot extend further than necessary to afford a plaintiff with complete relief.  *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025).  "Under this principle, the question is not whether an injunction offers complete relief to ***everyone*** potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief ***to the plaintiffs before the court***."  *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) (emphasis in original) (citing and quoting *Califano v. Yamasaki*, 442 U. S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief ***to the plaintiffs***." (emphasis added by *CASA* Court)).

20

Here, the Court went much further than simply declaring HB 1569 unconstitutional and enjoining Defendants from implementing and enforcing it. The permanent injunction effectively reenacts provisions of a law that was duly repealed through New Hampshire's legislative process. ECF No. 176 at 97. It compels the state to issue defunct QVA and CVA forms and resuscitate repealed processes that make the forms available for public use. ECF No. 176 at 97. Even if HB 1569 were unconstitutional, the Order entirely displaces the policy choices made by New Hampshire's elected representatives. This equitable relief exceeds the Court's authority for at least two reasons.

First, not a single individual Plaintiff (including the named Youth Movement members) will need a QVA to register or re-register to vote, so the injunction does not remedy Plaintiffs' alleged harms. *See infra* Sec. I(A) (noting that each is registered voter or has a birth certificate, passport, and New Hampshire-issued ID). The individual Plaintiffs will also never use a CVA to overcome a challenge. *See id.* So, requiring the availability of QVAs and CVAs is not necessary because the forms do not afford the Plaintiffs any relief.

Second, it is New Hampshire's constitutional prerogative to establish the time, places, and manner of holding elections. *See* U.S. Const. art. I, § 4. New Hampshire therefore regulates voter registration because it has a strong state interest in doing so. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013); *Perez-Guzman v. Gracia*, 346 F.3d 229, 238 (1st Cir. 2003). These are public policy choices where elected officials "weigh the costs and benefits of possible changes to their election codes, and their judgment must prevail unless it imposes a severe and unjustified overall burden upon the right to vote, or is intended to disadvantage a particular class." *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 208 (2008) (Scalia, J., concurring).

If "other reasonable documentation," assistance from the Vital Records and Motor Vehicles databases, or other statutory fail safes are constitutionally insufficient in the context of New Hampshire's statutory scheme, the Court may so declare. But the Court cannot resurrect and impose *repealed* state law, an act that effectively substitutes this Court's preferred state policy for the New Hampshire legislature's. Perhaps the Court could order the Defendants to accept registrants who bring notarized sworn affidavits as proof of citizenship or proof that a challenged voter's ballot is valid. Such a ruling would certainly be more narrowly tailored to the alleged injury and such documents could be taken in as "other reasonable documentation" under the current law. But the current Order impermissibly interferes with election administration by resurrecting repealed state policy and reimposing it without deliberating on or assessing its impact on the entire statutory scheme. The First Circuit is likely to correct the Court's overreach of its equitable authority.

## II.    New Hampshire Will Suffer Irreparable Harm Absent a Stay Because the Order Displaces the State's Constitutional Prerogative to Administer Elections

Defendants will suffer irreparable harm absent a stay because the Order invalidates a duly enacted state law and reimposes a repealed state law. It prohibits New Hampshire from executing or enforcing certain state election law provisions that HB 1569 amended to repeal the Qualified Voter and Challenged Voter Affidavits. ECF No. 176 at 97. As noted above, it is New Hampshire's constitutional prerogative to establish the time, places, and manner of holding elections, and it must choose how to verify the integrity of its elections. *See* U.S. Const. art. I, § 4; *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013); *Perez-Guzman v. Gracia*, 346 F.3d 229, 238 (1st Cir. 2003). "[A]ny time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aero. Workers Local Lodge 207 v.*

22

*Raimondo*, 18 F.4th 38, 47 (1st Cir. 2021) (collecting cases and quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)).  Here, the injunction is more intrusive and harmful than a typical order enjoining enforcement of a state law.

New Hampshire adopted a flexible, open-ended statutory requirement for verifying voters' eligibility.  *See* RSA 654:12, I(a) ("or any other reasonable documentation which indicates the applicant is a United States citizen").  It must balance its same-day polling location registration and voting with its inability to recall or discount ballots later discovered to be invalidly cast.  The Order does not simply prohibit implementation and enforcement of the affidavit repeal.  It mandates reinstituting the affidavit system that the voters (through their elected representatives and executives) chose to abandon and requires the State to provide voters with a repealed state form on which to do it.

### III.    Plaintiffs Will Not Be Harmed by a Stay Because the Order Affords Plaintiffs Relief They Will Never Need

As discussed above, the individuals in this case, Miles Borne, A.M., and L.M., will never need a QVA to register or a CVA to vote, so they cannot be harmed by a stay pending appeal. Plaintiff Miles Borne is a registered voter already.  *See* ECF No. 176 at 56.  Plaintiffs A.M. and L.M. are not currently registered to vote, but each possesses both a passport and a birth certificate.  Joint Stip., ECF No. 132, ¶ 27.  If he or she chooses to register, A.M. and L.M. will do so without executing a QVA.  *See* RSA 654:12, I(a).

A voter challenge to any Plaintiff's future ballot is improbable and purely hypothetical. Notwithstanding, none of the individual Plaintiffs will use a CVA to overcome a voter challenge. Mr. Borne's, A.M.'s, and L.M.'s names must appear on a voter checklist, to be the subject of a challenge.  RSA 659:13, I(a)-(b); RSA 659:27, I.  The individual Plaintiffs' names on the voter checklist is *prima facie* evidence of their eligibility to vote.  *See* RSA 654:12, III (voter

23

registration in the SVRS is evidence of age and citizenship).  A challenger must overcome that presumption for an election official to deem a challenge well-grounded.  *See* RSA 659:27, II; RSA 659:27-a, II (a) (requiring personal knowledge or other basis of probable cause to include one or more of 10 enumerated "specific facts").

That should be the end of the inquiry, but even were it not, the individual Plaintiffs would still not use a CVA to vote in the face of a challenge.  Mr. Borne was born in New Hampshire and he has a New Hampshire Real ID.  ECF No. 176 at 47; Joint Stip., ECF No. 132, ¶¶ 1-8. Both the New Hampshire Vital Records and Motor Vehicles databases will confirm Mr. Borne's eligibility, if his ballot is challenged.  RSA 654:12, III; RSA 5-C:9, X; RSA 263:40-a, V. Neither A.M. nor L.M. were born in New Hampshire, but they each have a New Hampshire Real ID.  ECF No. 176 at 46; Joint Stip., ECF No. 132, ¶¶ 24-25.  So, in the unlikely event that their ballots are challenged sometime in the future, the Motor Vehicles database will confirm A.M.'s and L.M.'s voter eligibility.  RSA 654:12, III; RSA 263:40-a, V.  Even if the Court were inclined to look beyond the individual Plaintiffs to non-party individuals, Plaintiffs did not offer any admissible evidence of any identifiable person who would be unable to vote without a QVA or a CVA.  Accordingly, Plaintiffs will not suffer any harm from a stay.

IV.    **The Public Interest Favors a Stay Because Federal Courts Should Not Displace Duly Enacted State Election Laws Before Appellate Review**

The public expresses its interests in the laws its representatives enact, as the public did here in HB 1569 and HB 464.  *See Atkin v. Kansas*, 191 U.S. 207, 223 (1903).  The public interest is not abstract—it is moored to duly enacted law.  *See Virginian Ry. Co. v. Sys. Fed.*, 300 U.S. 515, 552 (1937).  When a legislature enacts a statute, that enactment itself reflects a judgment about public policy and the public interest.  *See Virginian Ry. Co. v. Sys. Fed.*, 300 U.S. 515, 552 (1937) ("The fact that Congress has indicated its purpose to make negotiation

24

obligatory is in itself a declaration of public interest and policy which should be persuasive in inducing courts to give relief.").

The Court's Order, which relied heavily on the work of Plaintiffs' expert, Prof. Michael Herron, provides further confirmation that the public interest lies in granting a stay. Prof. Herron set the upper bounds of all voting-eligible New Hampshire residents who do not possess birth certificates, passports, naturalization papers, or certificates of citizenship, at just 18,362. Ex. 15, ¶ 130 (1,099,485 voting-eligible residents); Ex. 15, ¶ 176; Tr. Day 5 p.m., 15:22-25. (1.67%). This small subset—less than 2% of the eligible population—vastly overstates who will require a QVA or CVA to vote before the appellate process is complete. Prof. Herron's 18,362 total includes voting-eligible residents who: (1) are currently or who have previously been registered to vote in the state; (2) are New Hampshire-born; (3) have a New Hampshire-issued ID; (4) have marriage certificates or have been married in New Hampshire; (5) have adoption records or were adopted in New Hampshire; (6) have a divorce decree or were granted a divorce by a New Hampshire court; (7) have a court order granting a name change or were granted a name-change petition by a New Hampshire court; and/or (8) have other reasonable documentation of citizenship. Tr. Day 5 p.m., 16:5-17; Tr. Day 5 p.m., 20:6-15; Tr. Day 5 p.m., 17:7-10; Tr. Day 2 p.m., 16:18-20:10; Tr. Day 5 p.m., 20:6-15; Tr. Day 5 p.m., 105:6-20; Tr. Day 5 p.m., 16:18-17:10; Pl. Ex. 15 at 59-62. For the fraction of the population that cannot satisfy HB 1569's requirements, the people have chosen a flexible system to account for unique circumstances.

"[T]he public interests imperatively demand – that legislative enactments should be recognized and enforced by the courts as embodying the will of the people, unless they are plainly and palpably, beyond all question, in violation of the fundamental law of the Constitution." *Atkin v. Kansas*, 191 U.S. 207, 223 (1903). The plaintiffs have not shown that

25

HB 1569 is, on its face, "plainly and palpably, beyond all question" unconstitutional, let alone that they have standing to maintain this case. The public interest thus weighs heavily in favor of a stay pending appeal.

**CONCLUSION**

For all of the reasons stated above, Defendants respectfully request that the Court stay its Order (ECF No. 176) until the appellate process has resolved the important questions of constitutional law presented in these consolidated cases.

Respectfully submitted,

DEFENDANTS DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State and JOHN M. FORMELLA, in his official capacity as New Hampshire Attorney General

By their attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

Date: June 19, 2026

*/s/ Matthew T. Broadhead*
Matthew T. Broadhead, N.H. Bar No. 19808
Associate Attorney General
Michael P. DeGrandis, N.H. Bar No. 277332
Assistant Attorney General
Catherine A. Denny, N.H. Bar No. 275344
Assistant Attorney General
Laurie S. Young, N.H. Bar No. 266185
Assistant Attorney General
Office of the Attorney General, Civil Bureau
1 Granite Place South
Concord, NH 03301
(603) 271-3650
michael.p.degrandis@doj.nh.gov
matthew.t.broadhead@doj.nh.gov
catherine.a.denny@doj.nh.gov
laurie.s.young@doj.nh.gov

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all parties of record in the consolidated cases, *New Hampshire Youth Movement v. Scanlan* (1:24-cv-00291-SE-TSM) and *Coalition for Open Democracy, et al. v. Scanlan, et al.* (1:24-cv-00312-SE-TSM), through the Court's e-filing system.

 */s/ Matthew T. Broadhead*
Matthew T. Broadhead